UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:25-00115 |
| ) | |
| KILMAR ARMANDO ABREGO GARCIA, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S MOTION FOR DETENTION AND
MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION UNDER 18 U.S.C. § 3142**

The United States of America, by and through its attorney, the Acting United States Attorney for the Middle District of Tennessee, moves for detention of the defendant and respectfully files this memorandum in support of pretrial detention in the above captioned case. At the defendant's initial appearance in the Middle District of Tennessee, the United States will request that the defendant be held in pretrial custody because he poses a danger to the community and a serious risk of flight, and no condition or combination of conditions would ensure the safety of the community or his appearance in court.

Over the past nine years, the defendant has played a significant role in an undocumented alien smuggling ring that has resulted in thousands of undocumented aliens being illegally transported into and throughout the United States, including members and associates of La Mara Salvatrucha ("MS-13"), a recently designated Foreign Terrorist Organization, as well as unaccompanied minor children.

On May 21, 2025, a Grand Jury in this District returned a Sealed Indictment (the "Indictment") charging the defendant with alien smuggling and conspiracy to commit alien

- 1 -

smuggling, in violation of Title 8, United States Code, Section 1324(a). If convicted at trial, the defendant faces a maximum punishment of 10 years' imprisonment for "each alien" he transported.[1] Accordingly, the sentencing exposure for the defendant – given the number of undocumented aliens involved – goes well beyond the remainder of the defendant's life. The Grand Jury alleges, among other troubling facts, the defendant: (1) smuggled thousands of undocumented aliens throughout the United States; (2) is a member and associate of MS-13, a Foreign Terrorist Organization; (3) transported numerous MS-13 gang members into and throughout the United States from Central America; (4) used his status in MS-13 in furtherance of the alien smuggling conspiracy when it benefited him; (5) transported children throughout the United States in an unsafe manner to maximize profits; (6) abused undocumented alien females under his control while transporting them throughout the United States; and (7) trafficked firearms and narcotics from Texas to Maryland on multiple occasions. The evidence that the defendant committed the offenses charged in the Indictment is overwhelming. Additional evidence that the Government has uncovered as part of its investigation, discussed further below, regarding the defendant's past violence and attempted solicitation of child pornography also calls for pretrial detention, and militates against release.

---

[1] 8 U.S.C. § 1324(a)(1)(B). *See United States v. Ortega-Torres*, 174 F 3.d 1199 (11th Cir. 1999). The plain language of the statute indicates the penalties are intended to be applied "for each alien in respect to whom a violation of this paragraph occurs." *Id*. (emphasis added). The use of the terms "each alien" and "violation" together in the introductory sentence of § 1324(a)(2) make clear that courts should count each alien as a separate violation for sentencing purposes. Although we find the plain language of the statute conclusive, our reading of § 1324 is bolstered by its legislative history. *See also, United States v. Stuart*, 2024 WL 914027 (11th Cir, Mar. 4, 2024) (affirming the holding in *Ortega-Torres*).

In summary, the whole bent of the defendant's adult life demonstrates a complete disregard for the law and establishes that he is a significant threat to the community. Because no condition or combination of conditions will reasonably assure the safety of the community or the defendant's appearance as required, the Government moves pursuant to Title 18, United States Code, Section 3142(e) and (f) for pretrial detention of the defendant.

## I. THE FACTS

On Wednesday, November 30, 2022, the defendant was stopped for speeding by the Tennessee Highway Patrol ("THP") on Interstate 40 East, in Putnam County, Tennessee. The THP captured the interactions with the defendant during the traffic stop on body worn camera ("BWC") footage. The defendant drove a Chevrolet Suburban (the "SUV") that had been altered with an after-market third row of seats designed to carry additional passengers. The defendant had nine Hispanic males packed into the SUV. The defendant told the THP that he and his passengers had been in St. Louis for the preceding two weeks doing construction work.

During the course of its investigation, the Government learned that the defendant's conduct at the traffic stop was linked to a complex conspiracy to illegally traffic undocumented aliens into and throughout the United States. The SUV the defendant was driving on November 30, 2022, was owned by a co-conspirator and convicted alien smuggler. Cellphone location information for the cellphone used by the defendant – as well as License Plate Reader ("LPR") data for the SUV – showed that the defendant lied to the THP when he told them he had been working a construction job in St. Louis for the past two weeks. Specifically, the defendant had been in Texas earlier that same morning and had not been close to St. Louis within the prior two weeks. Moreover, none of the individuals in the vehicle had luggage or even tools consistent with construction work. The Government also learned, after obtaining the defendant's

cellphone records, that at the exact minute on the BWC footage that the defendant told the THP officer that the defendant was going to call his "boss," the defendant placed a call on his cellphone to the owner of the SUV and one of his fellow co-conspirators (a previously convicted alien smuggler).

As part of its investigation, the Government interviewed a number of the defendant's co-conspirators as well as other witnesses who personally knew the defendant. Those co-conspirators and witnesses will establish at trial that the November 30, 2022 traffic stop was not a one-off transaction for the defendant. Rather, the evidence will show that the defendant's actions in November 2022 were part of a larger and sustained pattern of alien smuggling. Specifically, the defendant had been in the alien smuggling business for years, since at least 2016, and it was his primary source of income. Testimony at trial will establish that the defendant transported approximately 50 undocumented aliens throughout the United States per month for several years. The evidence will also establish the defendant's longstanding membership and association with MS-13 and how he used his association with the gang to further the alien smuggling conspiracy. The alien smuggling conspiracy transported gang members from Central America, through Mexico, into and throughout the United States.

## II.     The Bail Reform Act – Section 3142(g) Factors

The Bail Reform Act ("BRA"), 18 U.S.C. § 3141 *et seq.*, sets forth the rules governing pretrial detention in federal court. Under the BRA, if the United States moves to detain a defendant, a detention hearing "shall" be held if the case involves a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B). The required detention hearing "shall be held

- 4 -

Case 3:25-cr-00115    Document 8    Filed 06/06/25    Page 4 of 12 PageID #: 41

immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." *Id.* § 3142(f)(2).

The BRA provides four factors to guide a court's determination as to whether a defendant is a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community posed by the defendant's release. 18 U.S.C. § 3142(g). A judge "shall order" the "detention of the [defendant] before trial," if, after a detention hearing held under 18 U.S.C. § 3142(f), and upon consideration of "the available information concerning" the four enumerated factors, *id.* § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* § 3142(e)(1). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

### 1. *Nature and Circumstances of the Offense*

As the factual summary demonstrates, the offenses charged in this case are severe. Section 3142(g)(1) instructs this Court to consider "the nature and circumstances of the offense charged, including whether the offense" falls within one of the enumerated categories of offenses that Congress designated as especially serious: "a crime of violence, a violation of section 1591,

- 5 -

a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." The above categories, in Congress's judgment, capture "the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987).

Alien smuggling is an incredibly dangerous enterprise that imposes grave risks to the aliens being smuggled and the general public. One of the most prolific suppliers of undocumented aliens for the conspiracy was co-conspirator 6 ("CC-6"), who was located in Central America. CC-6 coordinated the delivery of at least 50 undocumented aliens per month with the defendant and his co-conspirators. The defendant picked up the undocumented aliens in Texas and transported them to Maryland through Tennessee and other states after CC-6 smuggled them into the United States. The defendant made at least one trip per week over the course of several years. As detailed in the Indictment, CC-6 was responsible, along with other co-conspirators, for the death of more than 50 migrants when a tractor trailer overturned in Mexico carrying migrants bound for the United States. The evidence will show that CC-6 was associated with Mexican drug cartels, which were used to further the alien smuggling conspiracy.

The Grand Jury also alleged that many of the undocumented aliens transported by the defendant and his co-conspirators into and throughout the United States were MS-13 gang members. The defendant's MS-13 status was particularly important when transporting MS-13 gang members. MS-13 had a large presence in Maryland, where the defendant resided, and as many as thirty percent of the undocumented aliens transported by the conspiracy were gang members.

The defendant also transported minors in an unsafe way – not restrained in car seats, but on the floor-board – recklessly and selfishly designed to maximize the number of undocumented

- 6 -

Case 3:25-cr-00115    Document 8    Filed 06/06/25    Page 6 of 12 PageID #: 43

aliens being transported and therefore increase profits. These representative acts demonstrate the danger of alien smuggling both to the undocumented aliens as well as the general public. For all these reasons, the nature and circumstances of the offense warrant detention.

### 2. *Weight of the Evidence*

The weight of the evidence against the defendant is overwhelming. The November 30, 2022 traffic stop by the THP was captured on BWC footage and the defendant is readily identifiable. The Government, as part of its proffer of evidence to the Court, will provide a copy of the BWC footage of the November 30, 2022 traffic stop to the Court for review. Put simply, it will not be credible for the defendant to argue to a jury that someone else is depicted in the BWC footage. Moreover, the defendant's statements to the THP, also captured clearly on the BWC footage, that he was in St. Louis for the past two weeks doing construction work, is a demonstrable and unequivocal lie designed to conceal his criminal activity—proven by the LPR records of the SUV and his own cellphone records. Not to mention the fact that the SUV he was driving belonged to a convicted alien smuggler who the defendant referred to as his "boss" on the BWC footage—the same "boss" the defendant then called during the traffic stop based on his own cellphone records.

At trial, co-conspirators and witnesses will corroborate what the jurors will plainly see from the BWC footage—that the defendant had been smuggling aliens for years, earning well over $1,000 for every trip. The evidence will also show that the co-conspirators had no other source of employment – only alien smuggling – and that the defendant was one of the most prolific smugglers in the conspiracy.

### *3.     History and Characteristics of the Defendant*

The defendant is 29 years' old and, according to the allegations in the Indictment, has spent his entire adult life committing crime.   In addition to nearly a decade of alien smuggling, the defendant is a member and associate of MS-13, a Foreign Terrorist Organization.   MS-13 has terrorized those inside and outside the United States for decades, committing horrific acts of violence across the country.   MS-13 is a criminal enterprise engaged in, among other activities, acts and threats involving murder, extortion, narcotics trafficking, firearms trafficking, alien smuggling, and money laundering.   MS-13 operates throughout North and Central America, including in El Salvador, Guatemala, Honduras, Mexico, the United States, including in Texas, Maryland, New York, Tennessee, and elsewhere.

On March 28, 2019, the defendant was arrested in Prince George's County, Maryland with other known MS-13 gang members.   Based on where the defendant was, who the defendant was with (other known members of MS-13), his clothing, and the fact that he appeared to be selling marijuana, led those involved in the arrest of the defendant to determine that the defendant was a member or associate of MS-13.   In substance, unless the defendant had status in the gang, the MS-13 gang members arrested with the defendant would not have allowed the defendant to represent MS-13 in their presence – with his clothing and hat representing the gang and selling drugs – without severe consequences.   In the Government's investigation, the defendant's status in MS-13 was corroborated by multiple witnesses and co-conspirators who personally knew the defendant.

One of the most troubling facts the Government learned in its investigation was how the defendant got into MS-13.   According to a co-conspirator, the defendant stated that he participated in the murder of a rival gang member's mother in El Salvador—specifically the

- 8 -

Case 3:25-cr-00115   Document 8   Filed 06/06/25   Page 8 of 12 PageID #: 45

mother of an 18th Street gang member. Later, as part of his immigration proceedings in the United States, the defendant claimed he could not return to El Salvador because he was in fear of retribution from the 18th Street gang. While partially true – the defendant, according to the information received by the Government, was in fear of retaliation by the 18th Street gang – the underlying reason for the retaliation was the defendant's own actions in participating in the murder of a rival 18th Street gang member's mother.

The defendant's treatment of undocumented aliens is also very troubling. Although more worried about curtailing demand for their illegal business, other co-conspirators were so concerned about the defendant's abuse towards the undocumented alien females that they confronted him about it on multiple occasions and and told him to stop.

Finally, the defendant's conduct towards his own family members demonstrates that he is violent in his personal life as well. In August 2020, the defendant's wife filed a petition for a protective order against him in Prince George's County, Maryland. The defendant's wife, in her own words, detailed a string of alleged abuse that the defendant inflicted on her and their own children between 2019 and 2020. In the August 3, 2020 petition, the defendant's wife reported, among other troubling allegations, that he locked his kids in their room, grabbed her and slapped her, and broke her phone. She went on to write that the abuse on August 3, 2020, was part of a pattern for the defendant, i.e., that he had broken her phones before, broken TVs, and even her son's tablet. The petition documented four other instances of abuse within the past year of being filed, all troubling and violent. She reported that she had documented bruises on her body left by the defendant, and that she and her kids were scared of the defendant. The defendant also claimed that he could kill his wife with impunity. Court filings in Prince George's County reveal more abuse by the defendant the next year during 2021. In May 2021, the District Court

in Prince George's County found reasonable grounds to believe that the defendant "punched and scratched [his wife], ripped off [her] shirt, grabbed and bruised [her]."

Taken in totality, the history and characteristics of the defendant reveal the life of a violent man, with no control of his temper, no regard for the rule of law, and no basis for the Court to have any confidence that the community, including his own family, will be safe if he were released.

### 4. *Nature and Seriousness of the Danger to the Community*
#### *a. Danger to the Community*

The Government's investigation has revealed that the defendant has a long history and association with MS-13, a violent criminal organization committed to terror with thousands of members throughout the United States and Central America. As detailed at length above, he personally participated in violent crime, including murder, and, in addition to alien smuggling, the indictment alleges he also trafficked drugs and firearms. Although the defendant had multiple encounters with law enforcement in his past, instead of reforming his ways he chose to continue on in criminal activity. Time and again, week after week, the defendant chose to continue his integral role in smuggling aliens for nine years, all to earn a profit. The Government learned in its investigation that the defendant, on many occasions over the course of several years, tried to recruit others to engage in alien smuggling with him, promising lucrative payments for riding to Texas with the defendant to pick up undocumented aliens.

In addition to the myriad of illegal conduct spanning nearly a decade outlined in the Indictment and herein, the Government also learned that the defendant solicited nude photographs and videos of a minor, beginning in approximately 2020. The Government's investigation into the defendant's solicitation of child pornography is ongoing, and no charges

- 10 -

against the defendant regarding child pornography have been filed, but it demonstrates the danger the defendant poses to the community not just with respect to alien smuggling.

In summary, with respect to the defendant's dangerousness to the community, he has spent his entire adult life engaging in criminal activity. He has shown a complete disrespect for the rule of law from the moment he illegally entered the United States. The totality of factors the Court is to consider clearly show the defendant is a danger to the community and should therefore be detained.

### b. Defendant's Risk of Flight

The defendant's only ties to the Middle District of Tennessee are directly related to his criminal activity. The defendant chose to smuggle undocumented aliens through Tennessee nearly every week during the course of the conspiracy. The defendant and his co-conspirators chose to travel through Tennessee for multiple reasons, including the route being the most direct course between Houston, Texas and Maryland. The defendant and his co-conspirators also felt that traveling through Tennessee provided less chance of scrutiny from law enforcement. Despite the defendant repeatedly availing himself of the highways in this District, he has no other ties to the area. The defendant has never resided in or been employed in the Middle District of Tennessee. The defendant does not have any connection to the region outside of his illegal activities.

Additionally, the penalties the defendant faces, including a lengthy prison sentence, give him a powerful motive to flee, and his position within the conspiracy provides the ready means. The facts of this case demonstrate that the defendant was an instrumental part of a large and complex undocumented alien smuggling conspiracy. The defendant and his co-conspirators successfully smuggled thousands of aliens into and throughout the United States. The defendant

and his co-conspirators have access to a large network of resources that aided members of the conspiracy in avoiding apprehension and detection for years.

## III. CONCLUSION

In light of all these factors, the Government submits that the defendant poses a significant danger to the community, as well as a risk of flight, and that no condition or combination of conditions will reasonably assure the safety of the community or the presence of the defendant in court. Accordingly, the Government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

*/s/ Robert E. McGuire*_____
Robert E. McGuire
Acting United States Attorney


*/s/ Jacob Warren*_____
Jacob Warren
Christopher Eason
Co-Directors, Joint Task Force Vulcan
Jeremy I. Franker
Deputy Director, Joint Task Force Vulcan
United States Department of Justice