UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:25-CR-00115 |
| | ) | |
| | ) | JUDGE HOLMES |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR DETENTION

COMES NOW the United States of America, by and through the undersigned Acting United States Attorney, Robert E. McGuire, and submits the following Supplemental Memorandum in support of the Government's previously filed Motion for Detention. (DE # 8.) At the initial appearance, the United States submitted that it would provide the Court and opposing counsel with specific references to the sections of 18 U.S.C. § 3142 that the Government would be traveling under at the hearing.

The United States respectfully submits that the Government is entitled to a detention hearing by operation of 18 U.S.C. § 3142(f)(1)(E) because the offense alleged in Count One of the Indictment involves a minor victim; this is an enumerated section of the detention statute that entitles the Government to a detention hearing on its own motion.

The United States also respectfully submits that the Government is also entitled to a detention hearing by operation of 18 U.S.C. § 3142(f)(2)(A) because there is a serious risk that the Defendant will flee. Finally, the United States respectfully submits that the United States is entitled to a detention hearing by operation of 18 U.S.C. § 3142(f)(2)(B) because there is a serious risk that the Defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a prospective witness. Pursuant to Judge Richardson's

finding in *United States v. White*, 2021 WL 2155441 (M.D. Tenn. 2021) under these non-enumerated sections, the Government can demonstrate that they are entitled to a detention hearing by offering proof as to those factors.

The United States submits that if the Court determines that the Government is entitled to a detention hearing under either § 3142(f)(1)(E) or either prong of § 3142(f)(2) then the Court must determine if the Government has established that the Defendant is a flight risk by preponderance of evidence or is a danger the community by clear and convincing evidence.

## ANALYSIS AND ARGUMENT

*A. The Government is entitled to a detention hearing under 18 U.S.C. § 3142(f)(1)(E) because the conduct of the conspiracy that the Defendant is charged with in Count One of the Indictment "involves a minor victim".*

In Paragraph 23 of the Indictment (DE #3, ¶ 23), the grand jury alleged that members of the conspiracy, including the Defendant, "transported children on the floorboards of vehicles to maximize profits". At the hearing, the United States anticipates calling Special Agent Pete Joseph with Homeland Security Investigations (HSI). The United States anticipates that Agent Joseph will testify that he interviewed at least one co-conspirator who described that members of the conspiracy transported undocumented, unaccompanied children during the course of the conspiracy. The United States expects that Agent Joseph will also testify that he learned during the course of the investigation that the Defendant and other members of the conspiracy transported minors in an unsafe manner. For example, a co-conspirator described that the Defendant would sometimes travel with young children and/or family members as "cover" for his illegal trafficking scheme so, if stopped by law enforcement, it would appear that the transportees were on a family trip instead of being smuggled.[1] On these occasions, the co-conspirator described, the children

---

[1] A similar "cover" scheme was adopted by the Defendant when he was stopped in Putnam County, Tennessee on November 30, 2022. On that occasion, as reflected in the body worn camera footage, he told a Tennessee Highway

were often seated on the vehicle's floorboard so that the alien transportees, who had paid other co-conspirators for the travel, could have seats. This would allow more paying aliens to be transported and increase the financial gain of the conspiracy. On these occasions, it was clear to the co-conspirator that the Defendant was simply using children to cover up his illegal actions as part of the overall conspiracy and the presence of those children did not accomplish any legitimate travel purpose. For the reasons stated below, the United States submits that these allegations, when (as here) they are alleged as part of the overall § 1324 conspiracy charge, entitles the Government to a detention hearing.

It is true that involvement of a minor victim is not an element of § 1324 nor does the statute reference minors but, within federal law, it is well understood that conspiracies to smuggle illegal aliens regularly involves the smuggling of unaccompanied minors.

As an example, the United States Sentencing Guidelines provides for a two-level sentencing enhancement for members of conspiracies that transport unaccompanied alien minors. U.S.S.G. § 2L1.1(b)(4). Indeed, several federal circuits have held that such an enhancement can be applied to a co-conspirator in an alien smuggling scheme even if that co-conspirator takes the position at sentencing that he didn't know the conspiracy transported unaccompanied minors. *See e.g. United States v. Rodriguez*, 525 F. App'x 268, 269–70 (5th Cir. 2013); *United States v. Cordova-Briseno*, 2022 WL 542240 (5th Cir. 2022). *See also United States v. Reyes, 772 F.3d 1152, 1159 (9th Cir. 2014)* ("Coupled with the size of this organization, Gamez Reyes's significant role within it, the lack of any screening mechanism to prevent unaccompanied minors, and Gamez Reyes's intimate knowledge of the circumstances in the Compton stash house, it was plausible for

---

Patrol trooper that the men he had been transporting had been in St. Louis for the preceding two weeks doing construction work. Both license plate reader data and phone records later showed this to be false. This story was fabricated by the Defendant to avoid detection while he was actually illegally transporting aliens as alleged in Count Two of the Indictment.

the district court to conclude that Gamez Reyes could reasonably have foreseen that other members of this smuggling ring might smuggle unaccompanied minors, either by act or omission. Accordingly, the district court did not clearly err by imposing this enhancement.") and *United States v. Lewis*, 2024 WL 2862595 (9th Cir. 2024).

In other words, it is not so far afield that a scheme to transport illegal aliens would also potentially involve the transportation of minors; it is so routine that the Guidelines contemplate enhanced punishment for the practice. The United States anticipates that the testimony at the hearing will establish that this conspiracy did, in fact, involve the transport of unaccompanied minors and that the Defendant used other minors to attempt to cover up his illegal activity on smuggling trips.

As it relates to a § 3142(f)(1)(E) analysis, federal courts have determined that judges can look past the elements of a charged offense to the underlying facts of the case to determine if the matter "involves" either a minor child or a firearm. There is a dearth of case law on this specific issue in the Sixth Circuit. However, other courts have regularly looked to the analysis of this specific issue by the Second Circuit in *United States v. Watkins*, 940 F.3d 152, 165–67 (2d Cir. 2019).

In *Watkins*, the Second Circuit evaluated the appropriateness of the Government's reliance on § 3142(f)(1)(E) as it related to a specific set of facts and dealt explicitly with an interpretation of the word "involves." In *Watkins*, as here, the aspect of what the matter "involve[d]" (here a "minor victim") was not an element of the charged offense. However, the Second Circuit noted:

> By using the phrase "that involves" in this subsection, Congress clearly intended for courts to pierce the veil of the charged offense and consider the conduct underlying the offense, including who was harmed and whether any firearms were used in the course of committing the offense. If courts could not do so, felons who clearly pose the risks contemplated by the Adam Walsh Act (*i.e.*, by targeting minors or employing firearms) might not be subject

to detention hearings unless the involvement of a minor or possession or use of a firearm was an element of the charged crime.

*Watkins* at 166.

The Second Circuit went on to say:

> [T]he phrase "any felony ... that involves" in § 3142(f)(1)(E) refers to a "minor victim" or "the possession or use of a firearm." These phrases suggest factual details surrounding the charged conduct. Accordingly, when analyzing whether the Government is entitled to a detention hearing under § 3142(f)(1)(E), we may consider the actual conduct at issue in the specific case…
>
> Our interpretation of the phrase "that involves" is confirmed when we consider another section of the Bail Reform Act amended by the Adam Walsh Act: § 3142(c)(1)(B). Section 3142(c)(1)(B) now mandates that "[i]n any case *that involves a minor victim* under [certain enumerated statutes], any release order shall contain, at a minimum, a condition of electronic monitoring." While most of the enumerated statutes in this list expressly criminalize conduct with minors, some do not. Thus, Congress must have intended for judicial officers to look beyond the elements of the charged offense to determine whether any minors were "involved" in the particular offense committed. In sum, the phrase "that involves" in § 3142(f)(1)(E) warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense.
>
> *Id.* at 166-167.

The Second Circuit's *Watkins* opinion has been cited by multiple district courts around the country who also used the same fact-based analysis to determine if an offense "involves a minor victim or involves the possession or use of a firearm" such that it entitles the Government to a detention hearing under § 3142(f)(1)(E). *See e.g. United States v. Syed,* 634 F.Supp. 3d 1036, 1043 (D.N.M. 2022); *United States v. McAnally*, 2025 WL 53343, at *3 (N.D. Okla. Jan. 8, 2025) ("Moreover, to the extent § 3142(f)(1)(E) is ambiguous, the Court is persuaded by the reasoning of the Second Circuit in *United States v. Watkins*...As the Second Circuit noted, the enumerated statutes include offenses that categorically involve minor victims—e.g., § 2251 (sexual exploitation of children)—and offense that do not—e.g., § 1201 (kidnapping). *Id.* In these circumstances, it is reasonable to read the language "involves a minor victim" and, by extension,

the language "involves the possession or use of a ... dangerous weapon" as looking to the underlying facts of the crime charged and not the elements of the offense.") *United States v. Elizondo,* 2024 WL 1546488, at *2 (S.D. Tex. Apr. 9, 2024) ("The Court agrees with the Second Circuit's interpretation of the text and will look beyond the elements of the charged offense here and "consider the actual conduct underlying [Defendant's] charged offense."); *United States v. Chokr*, No. 23-20037, 2023 WL 375336, at *4–5 (E.D. Mich. Jan. 24, 2023) (charge of attempted possession of a firearm involves a firearm where defendant held the firearm in the store); *United States v. Clark*, No. 22-cr-20041 (E.D. Mich. Apl. 5, 2022) (possession of ammunition involves possession of a firearm because defendant possessed a firearm containing ammunition with which he was charged).

There is even a line of federal cases where district courts have determined that an offense "involved a minor" when the facts did not involve an *actual* minor but were sufficiently dangerous to entitle the Government to a detention hearing. In *United States v. Kirkpatrick*, the district court determined that the "involved a minor" language in § 3142(f)(1)(E) applied to the Government's motion for a detention hearing despite the fact that the offense involved a defendant who attempted to make sexual conduct with an adult undercover officer who the defendant believed was a minor (but was, in fact, an adult). *United States v. Kirkpatrick*, WL 4846620, at *12 (D. Kan. July 28, 2023). If an offense that categorically, by its own facts, did not involve an actual minor was held to "involve a minor" under § 3142(f)(1)(E), surely an offense that *did* involve *actual* minors as a part of a larger smuggling conspiracy should as well.

Moreover, at least one federal circuit has concluded that minor children transportees can be considered "victims" for the purpose of a "vulnerable victim" sentencing enhancement under U.S.S.G. § 3A1.1, reinforcing the idea that federal courts treat children smuggled in these schemes

as victims. *See e.g. United States v. Miguel*, 86 Fed. App'x. 342, 344-345 (9th Cir. 2004) ("Young children may be more vulnerable to illegal transportation because they do not appreciate the danger involved or are too frightened to assert themselves…Furthermore, the defendants did not need to target young children for the enhancement to apply; Section 3A1.1(b)(1) only requires that they should have known that the young children were vulnerable.") The United States notes that other circuits have found even adult transportees of smuggling schemes to be victims based on the circumstances of their transportation (i.e. whether the conditions of their transport were unsafe or overly arduous). *See e.g. United States v. Dock,* 426 F.3d 269 (5th Cir. 2005). In this case, for the reasons described by the Ninth Circuit in *Miguel*, it is reasonable for this Court to consider minor children transported as part of an alien smuggling scheme as "victims" of the scheme. This consideration is in line with the intent of Congress in passing § 3142 to give children more protection from criminal activity and allow for the pre-trial detention of those putting them at risk.

      Finally, the United States would respectfully submit that the word "involved" was chosen by Congress to be broad. As the above cases illustrate, a minor victim does not have to be the object of the criminal scheme, nor does a minor victim even have to be the predominant feature of the criminal scheme (or, in one case, even be actually present in a criminal scheme). Rather, the word "involved" in the § 3142(f)(1)(E) context connotes a legitimate connection to risk to a child even if that risk is not the overriding purpose of the scheme. Here, the smuggling of children or the use of them as "cover" for illegal activity, as the Government and grand jury has alleged, was part of the regular course of the conspiratorial business that the Defendant is charged with participating in. Just as in a sentencing analysis under U.S.S.G. § 3A1.1(b)(1), under a § 3142(f)(1)(E) analysis, the facts should determine the outcome as to whether minor victims were involved in the criminal offense. The United States submits that the relevant testimony at the

detention hearing will establish by a preponderance of evidence that undocumented, unaccompanied children were transported as part of the conspiracy and other children were used in in unsafe ways to avoid detection and achieve the ends of the conspiracy. For all of these reasons, the United States respectfully submits that Count One of the Indictment "involves a minor" and entitles the United States to a detention hearing under § 3142(f)(1)(E).

>    B. *The United States is entitled to a detention hearing under § 3142(f)(2)(A) because a preponderance of the evidence shows that the Defendant is a serious risk of flight.*

The United States respectfully submits that, under § 3142(f)(2)(A), the evidence at the hearing will show that the Defendant poses a serious risk of flight. The United States understands that, in this District, this is different from a risk of "non-appearance", but rather involves a "serious" risk that the defendant will flee and that such prospect must be established by preponderance of evidence. *United States v. White*, 2021 WL 2155441, * 7 (M.D. Tenn 2021) (J. Richardson).

First, the United States submits that the Defendant faces a potentially lengthy sentence. While each count carries a statutory maximum of ten years, the United States has previously cited two cases (which, albeit not binding before this Court but are persuasive authority) which stand for the proposition the Defendant may face the maximum sentence per alien transported in Count Two. *See United States v. Ortega-Torres*, 174 F 3.d 1199 (11th Cir. 1999). *See also, United States v. Stuart*, 2024 WL 914027 (11th Cir, Mar. 4, 2024) (affirming the holding in *Ortega-Torres*). Given that the indictment alleges that the Defendant transported nine aliens on November 30, 2022, this punishment could be considerable to say the least.

This Court has previously noted that defendants facing a lengthy sentence have a great potential for flight. *See e.g.* No. 3:22-cr-00335, DE 20, *United States v. Suiters* (M.D. Tenn 2022) ("[S]ubstantial penalties the defendant is facing if convicted demonstrate by a preponderance of

the evidence a risk of flight or nonappearance that, likewise, cannot be mitigated by conditions of release.") (J. Holmes)[2], *citing United States v. Khraizat*, 2000 WL 17669637, at *2 (6th Cir. Nov. 17, 2000) (the panel considered defendant's "length[y] sentence if convicted"); *United States v. Xiaorong You,* 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) (defendant facing a potentially lengthy prison sentence possesses a strong motive to flee).

While, practically, the parties understand that if the Court denies the Government's detention motion, the Defendant will likely be placed in the custody of Immigration and Customs Enforcement pending further proceedings in immigration court. However, for the purposes of this analysis, assume *arguendo* that this was not the case. Were the Defendant to be released from custody on this offense (and was not immediately taken into ICE custody), he would have an enormous reason to flee. While the Defendant was previously found to be deportable, an order of "withholding of removal" was apparently applied to him in 2019. Pursuant to 8 CFR § 208.22, an alien with a withholding of removal order may have that order terminated pursuant to 8 CFR § 208.24(b)(3) if the alien "has committed any other act that would have been grounds for denial of withholding of removal under section 241(b)(3)(B) of the [Immigration Reform and Control] Act [of 1986] had it occurred prior to the grant of withholding of removal."

Pursuant to 8 U.S.C. § 1231(b)(3) (which codified the INA in the United States Code), an alien cannot be granted withholding of removal if "(ii) the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." The same statute explains: "[f]or purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of

---

[2] Undersigned counsel understands that in *Suiters* the Court made the cited comments when considering conditions after making a finding under § 3142(f)(1) that the Government was entitled to a detention hearing. However, the United States submits that the point remains valid: defendants facing substantial prison sentences are more likely to flee.

imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." Under 8 U.S.C. § 1101(a)(43)(N), the offenses that the Defendant is charged with in the indictment—violations of 8 U.S.C. § 1324—qualify as an "aggravated felony" under the INA were he to be convicted of them.

Therefore, when observing the entire regulatory scheme, the serious risk of flight the Defendant poses if released becomes abundantly clear: if the Defendant is convicted as charged in the Indictment, his withholding of removal order would be in serious jeopardy and the chances that he would face deportation to El Salvador would increase to a near certainty. However, were he to flee and become a fugitive—thus stymying the criminal case that may lead to his deportation—he would have far more of an opportunity (albeit an illicit one) to remain in the United States *ad infinitum*.

Respectfully, this is where the United States submits that the Defendant's flight risk is both serious and cannot be controlled by conditions. In addition to the substantial prison sentence he faces, he also faces (with a conviction) the near certainty of being deported with no legal pathway to return to the United States. If he is convicted, with the conviction prompting the revocation of the withholding of removal order, the Defendant could no longer enter the United States and make asylum adjacent claims; he would be barred from eligibility for such relief by the terms of federal statutory scheme. It is not simply that he would face serious prison time. It is that, if convicted, he would likely lose forever the opportunity to remain lawfully in the United States. This motivation is substantially different from a citizen defendant who, while he may face prison time, does not face that permanent expulsion from a country where his family currently resides. This potential motivation on behalf of the Defendant makes his flight risk far more serious than the average defendant charged with similar offenses.

Finally, the Defendant has been used to living in the shadows. The United States submits that the evidence at the hearing will show that he operated in the illicit world of an international smuggling ring for years. Such a world requires secrecy and repeated contacts with individuals used to operating outside the law. The evidence will show that the Defendant drove thousands of miles with illicit human cargo while risking discovery at every turn and did so dozens and dozens of times. In short, the Defendant is not simply charged with a single incident of wrongdoing. Rather, his long-term commitment to the secret transport of individuals (who were themselves breaking the law) significantly raises the likelihood that he would flee. The evidence will show that the Defendant had little compunction about working in an illicit business while dodging the efforts of law enforcement; it does not take much imagination for him to commit to a similar course, only this time for himself. This circumstance alone places him in a separate category of serious flight risk. As noted below, the Defendant has membership in a notorious international street gang, now a designated Foreign Terrorist Organization. These connections, which were described by witnesses to federal law enforcement during the investigation of this matter, and later relayed to the grand jury resulting in the relevant language in the returned Indictment (DE # 3, ¶ 5-7, 16-18), only amplify the risk of flight. The Defendant is not only used to shadowy dealings, but he is also a member of what is now a Foreign Terrorist Organization which could assist him even further in attempting to permanently evade law enforcement as a fugitive. The Defendant's new-found prominence also puts in him in a unique (and unignorable) position to potentially use the sympathy of misguided strangers to further his evasion of the United States government, were he to be released.

Should the Court conclude that the United States has established by a preponderance that the Defendant is a serious risk of flight then, the Court can consider his non-appearance under the

normal course of a § 3142(g) analysis. In other words, once the United States is entitled to a detention hearing (even under § 3142(f)(2)(A)), the Government is not then required to hurdle a higher burden as it relates to a defendant's non-appearance; the Government would still have to establish the risk of non-appearance by preponderance. *See e.g. United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 597 (E.D. Ky. 2023). Once established, the Defendant's immigration status can be considered as it relates to his non-appearance. While a defendant's immigration status is not a *per se* bar to release, the prospect that a defendant may be removed from the United States is a factor the Court can consider.

> [T]he United States has shown that Cobix-Espinos's release on bond would very likely lead to his prompt removal from this country, creating a significant risk—a near certainty but for the possibility of asylum—that Cobix-Espinosa will not appear for proceedings as required in this matter. This fact weighs heavily in favor of detention, and it alone nearly compels a finding that the United States has demonstrated by a preponderance of evidence that no release condition can assure Cobix-Espinosa's future appearance in this matter. *See United States v. Lucas*, No. 4:08CR3139, 2008 WL 5392121, at *3 (D. Neb. Dec. 19, 2008) ("An outstanding order of removal would be strong evidence of likely nonappearance"). *See also United States v. Vasquez*, No. 09-14(DSD/JJG), 2009 WL 150661, at *1 (D. Minn. Jan. 21, 2009) (detaining a defendant who was an aggravated felon subject to an outstanding deportation order upon its finding that defendant "presents a risk of nonappearance because he is currently in the United States illegally, has been deported once before and is subject to a pending deportation order[ ]").

*Id* at 597.

In conclusion, the Defendant faces a substantial sentence, has exceptional motivation to flee, and has tremendous experience in committing criminal offenses (for years) while (largely successfully) avoiding law enforcement detection. For all of these reasons, the United States submits that a preponderance of evidence establishes that he is a serious risk of flight. Should the Court determine that he is a serious flight risk, his risk of non-appearance due to his potential deportation is a substantial factor that the Court can consider to detain him pending further proceedings.

> C. *The United States is entitled to a detention hearing under § 3142(f)(2)(B) because a preponderance of the evidence shows that release of the Defendant poses a serious risk of obstruction or witness intimidation.*

As the Court will hear at the hearing in this matter, federal law enforcement has interviewed multiple witnesses about the criminal conspiracy alleged in Count One of the Indictment as well as the events in November 2022 alleged in Count Two of the Indictment. These witnesses will be critical to the Government's case. Even if the United States takes appropriate steps to shield these witnesses from disclosure that would put them at risk, the Defendant will almost certainly be able to deduce their identities from the context of the facts (indeed, he may have done so already from a review of the facts described in the Indictment).

The United States anticipates that the Court will hear evidence about the Defendant's membership in and association with MS-13. A defendant's association with a criminal street gang has long been referenced by district courts in a § 3142(f)(2)(B) analysis. *United States v. Destine*, 2022 WL 2181453, at *4 (E.D.N.Y. June 16, 2022); *United States v. Irizzary*, 2020 WL 1705424, at *3 (S.D.N.Y. Apr. 8, 2020); *United States v. Choudhry*, 941 F. Supp. 2d 347, 359 (E.D.N.Y. 2013); *United States v. Valles*, 2008 WL 2262620, *6 (E.D. Ca. 2008); *United States v. Mendez*, 478 F.Supp.3d 152 (D. Mass. 2020); *United States v. Beard*, 528 F.Supp.3d 764, 773 (N.D. Ohio 2021); *United States v. Heffington*, 2009 WL 112375 (E.D. Ca. 2009); *United States v. Baldazo*, 2012 WL 12947283 (N.D. Ind. 2012); *United States v. Gallardo-Alvarez*, 2022 WL 2339421 (D.P.R. 2022); *United States v. Cureton*, 2013 WL 4496276 (E.D. Mich. 2013). The United States respectfully submits that this is an appropriate factor to consider when evaluating the danger that a defendant may pose to witnesses and his capacity, desire, and ability to obstruct justice and/or intimidate witnesses against him. The United States would submit that at least one co-conspirator has described that the Defendant has previously used his membership in MS-13 not just to facilitate

his illegal activity in the smuggling conspiracy but also to intimidate others in the conspiracy who attempted to confront him about the treatment of female smuggling victims and his smuggling of firearms and drugs which added to the conspiracy's risk of detection and were not a goal of the overall conspiracy.

The United States notes that it is not simply that the Defendant could potentially put critical witnesses at risk personally but that he is involved with an organization with an unequivocal and extensive history for violence, intimidation, and obstruction. The Defendant is nationally well-known in a high-profile case. This risk cannot be blithely ignored. The Government depends on witnesses to prove the allegations in the Indictment and there is a serious risk that those witnesses will be intimidated should the Defendant be released. The United States has cataloged the danger that the Defendant has posed to others in its previously filed memorandum in support of detention and needs not to repeat those facts here.

## CONCLUSION

The United States respectfully submits this supplement in addition to the previously filed Motion for Detention and Memorandum in Support of same. The United States respectfully submits that the Government is entitled to a detention motion on the enumerated ground described in 18 U.S.C. § 3142(f)(1)(E) because the conspiracy offense charged in Count One involves a minor victim. The United States additionally submits that it is entitled to a detention hearing under 18 U.S.C. § 3142(f)(2)(A) and (B) because the Defendant poses a serious flight risk and there is a serious risk that he and/or persons acting on his behalf will obstruct justice and/or intimate the witnesses against him.

Should the Court grant the United States a detention hearing, the United States would submit that the majority of the factors in § 3142(g) favor his detention pending trial. At the hearing,

the United States would rely on this filing, the prior filing, and testimony and argument at the hearing itself.

                                               Respectfully submitted,

                                               */s/ Robert E. McGuire*
                                               ROBERT E. MCGUIRE
                                               Acting United States Attorney
                                               719 Church Street, Suite 3300
                                               Nashville, Tennessee 37203

                                               */s/ Jacob Warren*
                                               Jacob Warren
                                               Christopher Eason
                                               Co-Directors, Joint Task Force Vulcan
                                               Jeremy I. Franker
                                               Deputy Director, Joint Task Force Vulcan
                                               United States Department of Justice