UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:25-cr-00115 |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| | ) | |
| KILMAR ABREGO GARCIA | ) | |

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION FOR A DETENTION HEARING

With no legal process whatsoever, the United States government illegally detained and deported Kilmar Abrego Garcia and shipped him to the Center for Terrorism Confinement (CECOT) in El Salvador, one of the most violent, inhumane prisons in the world. The government now asks this Court to detain him further. As the Fourth Circuit Court of Appeals has held, the government's treatment of Mr. Abrego Garcia "should be shocking not only to judges, but to the intuitive sense of liberty that Americans far removed from courthouses still hold dear." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, *1 (4th Cir. Apr. 17, 2025).

Mr. Abrego Garcia asks the Court for what he has been denied the past several months – due process. Under 18 U.S.C. § 3142, as well as basic principles of fairness, this Court should deny the government's motion.

1

# ARGUMENT

As the Supreme Court recognized nearly four decades ago, "liberty is the norm" in "our society," and "detention prior to trial" – "or without a trial" – "is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Consistent with that understanding, the Bail Reform Act of 1984 (BRA), 18 U.S.C. § 3141 *et seq.*, permits pretrial detention only when the government proves: (1) that the defendant's "case . . . involves" one or more of the circumstances listed at § 3142(f); and (2) that no condition or combination of conditions will reasonably assure the defendant's appearance (and, in some cases, "the safety of any other person and the community"). 18 U.S.C. § 3142(f), (g); *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *4-5 (M.D. Tenn. May 27, 2021).

In its pleadings, the government claims that it has satisfied or can satisfy the BRA's strictures and that, consequently, Mr. Abrego Garcia should be detained. But as shown below, the government isn't even entitled to a detention *hearing* in this case—much less detention. Mr. Abrego Garcia should be released.

The BRA "does not authorize [detention or] a detention hearing whenever the government thinks detention [or a detention hearing] would be desirable." *United States v. Ploof*, 851 F.2d 7, 10 (1st Cir. 1988); *White*, 2021 WL 2155441, at *4-5.

Instead, it permits detention hearings – and, as a corollary, detention itself – only in cases that involve one or more of the circumstances described at § 3142(f). *White*, 2021 WL 2155441, at *5; *see also Ploof*, 851 F.3d at 11 ("Congress did not

2

intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists).

This means that, if the defendant's case does *not* involve one of § 3142(f)'s enumerated circumstances, the government is not entitled to a detention hearing, and the Court cannot detain the defendant. *Id.* (noting that, if none of the § 3142(f) "circumstances are . . . present, a detention hearing (and, thus, detention) is simply unauthorized"); *United States v. Hardon*, 149 F.3d 1185 (6th Cir. 1998) (vacating detention order because none of the circumstances described at § 3142(f) existed); *United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716, 718 (E.D. Tenn. 2019) (same).

Here, perhaps recognizing that it failed to address § 3142(f)'s threshold inquiry in its opening motion (DE 8), the government filed a supplemental brief (DE 14) arguing that it's entitled to a detention hearing for three reasons. None have merit.

### 1. Mr. Abrego Garcia's case does not "involve[]" a minor victim.

First, invoking § 3142(f)(1)(E), the government asserts that it's entitled to a detention hearing because Mr. Abrego Garcia has been charged with a non-violent "felony that involves a minor victim." (DE 14, Supplemental Mot., PageID #58-64).

As support, it submits that a felony "involves a minor victim" anytime the facts underlying the offense show that the defendant put a child's safety at risk, "even if that risk is not the overriding purpose of the" crime. (*Id.*, PageID #63).

It then claims that Mr. Abrego Garcia's crime—alien smuggling under 8 U.S.C. § 1324 – fits that bill because, according to an unidentified co-conspirator, Mr. Abrego Garcia "would *sometimes*" (during the course of an alleged nine-year conspiracy)

3

"travel with young children" who were *sometimes* "seated on the vehicle's floorboard" (rather than in a passenger's seat). (*Id.*, PageID #58-59 (emphasis added)).

As a matter of law, the government is wrong. The felony at issue here (alien smuggling) does not "involve[]" minors – much less minor "victims." Accordingly, the government's reliance on § 3142(f)(1)(E) is misplaced.

### a. This case does not involve minors.

An initial problem with the government's "involves-a-minor-victim" theory is that it's premised on the mistaken assumption that the term "involves" (as used in § 3142(f)(1)(E)) means something other (and broader) than "requires."[1]

To be sure, the word "involve" has many definitions, some of which are narrow (like "requires") and others of which are broad (like "implicates"). *United States v. Fields*, 53 F.4th 1027, 1058 (6th Cir. 2022) (Murphy, J., concurring) (noting that the meaning of "involves" ranges from "requires" to "implicates" to "relates to").

Accordingly, what the term "involves" actually means in any given setting (statutory or otherwise) is highly dependent on how it's used. *Id.* (providing examples of how the context in which the word "involve" appears dictates its breadth).

Here, as is the case with many statutes, § 3142(f)(1)(E) uses the word "involve" to connect an intangible subject ("felony") to a direct object ("minor victim").

And as Supreme Court and Sixth Circuit precedent show, when the word "involves" is used in *that* way, it takes on a narrow meaning. Specifically, it means: "to include as a necessary circumstance, condition, or consequence." *Id.* (quoting

---

[1] The government doesn't specify *what* it believes "involves" means—instead, it generally claims that it means something broader than "requires." (DE 14, Supplemental Mot., PageID #62-63).

4

Random House Dictionary of the English Language 1005 (2d ed. 1987)). Or, to put it succinctly, "involves" (when used the above-described manner) means *requires*.

*Kawashima* is illustrative. The issue in that case was whether a particular "offense" qualified as a crime that "*involve[d]* fraud or deceit." *See Kawashima v. Holder,* 565 U.S. 478, 480 (2012). And true to the rule that "involves" means "requires" when it connects an intangible subject ("offense") to a direct object ("fraud or deceit"), the Supreme Court ruled that an offense "involves fraud or deceit" only when it has "elements that *necessarily entail* fraudulent or deceitful conduct." *Id.* at 484 (emphasis added); *see also Fields*, 53 F.4th at 1046 (majority op.).

*Fields* helps, too. There, the Sixth Circuit ruled that, for an "offense under State law" to "*involv[e]*" the manufacturing or distribution of a controlled substance under 18 U.S.C. § 924(e)(2)(A)(ii), the offense's elements had to "necessarily entail" such conduct. *Fields*, 53 F.4th at 1045-49. And notably, in doing so, it overruled prior precedent holding that an offense "involves" the manufacture or distribution of a substance as long as it "relates to or [is] connect[ed] with" that conduct. *Id.* (overruling *United States v. Eason*, 919 F.3d 385 (6th Cir. 2019)).[2]

In light of these principals, the word "involves" (as used in § 3142(f)(1)(E)) means "requires"—hence, for a felony to "involve[] a minor victim," harm to a minor must be a necessary circumstance, condition, or consequence of the crime. *Id.* at 1058 (quoting Random House Dictionary of the English Language 1005 (2d ed. 1987)).

---

[2] Consider also a commonplace example: "[I]f an employer told a prospective employee that 'the job would *involve* travel,'" the employee would surely understand that his job *requires* travel—not that it *relates* to (or *implicates*) travel. *Fields*, 53 F.4th at 1058 (Murphy, J., concurring). As such, as a matter of common usage, when "involve" connects a subject to an object, it means requires.

5

And since the government concedes that the felony at issue here (alien smuggling) does *not* necessarily entail harm to a minor, (DE 14, Supplemental Mot., PageID #59), the government is not entitled to a hearing under § 3142(f)(1)(E).

Should there be any doubt about that construction (and outcome), two additional points—one jurisprudential, the other textual—warrant attention:

- *First*, in-line with *Fields* and *Kawashima*, both the Central District of Illinois and the Southern District of Indiana have interpreted the term "involves," as used in § 3142(f)(1)(E), to mean requires. *See United States v. Schuetz*, No. 12-MJ-3046, 2012 WL 2923171, at *4 (C.D. Ill. July 18, 2012) (holding that the phrase 'involves a minor victim' . . . is a categorical term that refers to [a[ *category* of crimes"); *United States v. Hart*, 2020 U.S. Dist. LEXIS 174639, at *1 (S.D. Ind. Sep. 23, 2020).

- *Second*, reading the word "involves" (as used in § 3142(f)(1)(E)) narrowly aligns with the consistent-usage canon. Like § 3142(f)(1)(E), the prefatory clause of § 3142(f)(1) also uses the word "involves." And there's no dispute that, as used there, the term "involves" means necessarily entails. *United States v. Watkins*, 940 F.3d 152, 164 (2d Cir. 2019). Since the general rule is that a term in a statute "bears a consistent meaning throughout," *see Azar v. Allina Health Servises*, 587 U.S. 566, 576 (2019), both uses "involves" should mean "requires."

To that end, the meaning of "involves"—as used in the phrase a "felony . . . that involves a minor victim"—is *requires*. And since the felony charged here (alien smuggling) does not necessarily entail harm to a minor, § 3142(f)(1)(E) does not apply.

### b. No minor implicated in the charged crime is a victim.

A second problem with the government's § 3142(f)(1)(E) claim is that the felony charged here (again, alien smuggling) does not involve a minor *victim*. Consider: The gist of the government's argument is that the word "involves" means *implicates* and that the minors who were allegedly implicated in the yet-to-be-proven alien-

6

smuggling conspiracy are victims of that crime because the crime put them at "*risk*" of harm. (*See* DE 14, Supplemental Mot., PageID #58, 63 (emphasis added)). Why? Because they were allegedly seated on the floorboard of Mr. Abrego Garcia's vehicle.[3]

In this way, the government's theory of detention presents a question of statutory interpretation: Is a person who is merely exposed to a *risk* of harm a victim of a crime, or must the person actually suffer harm to be considered a crime victim?

The answer is the latter. In common usage, a "victim" is a person *harmed* by a crime. Black's Law Dictionary, *Victim* (12th ed. 2024) (defining "victim"); *see also* 18 U.S.C. § 3663A(a)(2) (defining "victim," for criminal restitution purposes, as "person directly and proximately harmed as a result of the commission of an offense").

Accordingly, for a minor (or any person, really) to be dubbed a "victim" of a crime, the minor must suffer harm—not merely be exposed to a risk of injury.

*Dock*—a Fifth Circuit case cited in the government's supplemental motion—proves the point. The defendant in that case was involved in an alien-smuggling conspiracy. *United States v. Dock*, 426 F.3d 269, 271 (5th Cir. 2005). During the course of it, he loaded "fifty illegal Mexican immigrants" into "a two to three-foot space above the cargo in the trailer" of a truck and padlocked the door to the trailer shut. *Id.* This space "was not equipped to transport living beings." *Id.* And during the heat of the day, it reached "an estimated 150 degrees Fahrenheit." *Id.* Given those conditions, many of the smuggled aliens passed out, one went into a coma, and two others died. *Id.* Given those facts, the defendant was charged with and pled

---

[3] The government has not alluded to any facts suggesting that an implicated minor suffered harm.

guilty to alien smuggling (and other offenses). And at sentencing, the court found that the transported aliens were "vulnerable victims" within the meaning of a sentencing enhancement and thus enhanced his sentence. *See id.* at 271-72.

Here, unlike in *Dock*, none of the government's pleadings evenly remotely suggest that any of the minors who Mr. Abrego Garcia allegedly transported were actually harmed in transit—rather, at best, such minors were merely (and allegedly) subjected to a *risk* of harm insofar as they were (allegedly) seated on the floorboard.

Consequently, under the government's own theory, none of the supposed "minors" who Mr. Abrego Garcia allegedly transported were harmed.

In light of the above, the felony at issue here (alien smuggling) does "involve[] a minor"—much less a minor *victim*—so § 3142(f)(1)(E) is simply inapplicable.

### c. The government's contrary arguments lack merit.

Hoping for a different result, the government seeks salvation from the Second Circuit's decision in *Watkins*—a case in which the court expressed that the government may be entitled to a detention hearing under § 3142(f)(1)(E) even if the charged felony does *not* necessarily require harm to a minor.

But *Watkins* is no saving grace. Its construction of "involves"—which is plainly at odds with *Fields* and *Kawashima*—is supported by only a couple lines of dicta.[4] *See id.* at 164 (concluding that different provision of BRA authorized hearing), 166.

---

[4] To be clear, *Watkins* seems to suggest that the term "involves" means "implicates"—i.e., anytime a felony somehow implicates "minor victim" a detention hearing is warranted. But as Judge Murphy has explained, "[w]hen 'involve' is used" to mean "implicates," the subject that precedes [it] typically connects a direct object . . . *to an indirect object.*" *Fields*, 53 F.3d at 1058 (Murphy, J., concurring) (emphasis added). Here, § 3142(f)(2) does not follow that pattern.

8

And even more importantly, the principal the government gleans from *Watkins*—i.e., that the government is entitled to a detention hearing under § 3142(f)(1)(E) for *any* felony which in *any* way subjects a minor to *any* "risk" of harm, (*see* DE 14, Supplemental Mot., PageID #63-64)—turns the BRA on its head.

When Congress enacted the BRA, it intended to limit the availability of detention hearings (and the prospect of detention) to individuals who had been "arrested for" certain "extremely serious offenses."[5] *Salerno*, 481 U.S. at 750. If the government is correct that the phrase "involves a minor victim" encompasses any felony that poses some risk of harm to a minor—irrespective of whether the minor is actually harmed, and irrespective of whether the offense targets minors—then the exception (detention) has swallowed the general rule (freedom).

In light of these considerations, it should come as no surprise that courts applying § 3142(f)(1)(E)'s "involves-a-minor-victim" prong typically only do so in cases where the underlying felony necessarily entails harm or attempted harm to a minor (such as, for instance, in child pornography cases). *See, e.g., United States v. Livingood*, No. 5:21-MJ-5375-MAS, 2021 WL 5918553, at *1 (E.D. Ky. Dec. 15, 2021) (holding hearing under the "involves-a-minor" prong when the defendant was charged with producing and distributing sexually explicit images of a minor); *see also Schuetz*, 2012 WL 3185905, at *1-*4 (holding hearing under § 3142(f)(1)(E) when defendant was charged with attempting to transfer obscene images to a minor).

---

[5] Alien smuggling is not one of the "extremely serious offenses" enumerated in § 3142(f)(1)(E), which is why the government is proceeding on the free-wheeling "involves-a-minor-victim" theory.

And it should also come as no surprise that the government has not cited a single case holding that a generic alien-smuggling charge provides grounds for a detention hearing under § 3142(f)(1)(E). (*See generally* DE 14, Supplemental Mot.).

This case should not be the first. The ordinary meaning of the term "involves," as used in § 3142(f)(1)(E) is *requires*—not implicates—and the BRA's legislative history supports this narrow construction. Since the government admits that the felony charged here (alien smuggling) does not require the existence of a "minor victim," alien smuggling is not a "felony . . . that involves" a minor victim. Accordingly, § 3142(f)(1)(E) does not entitled to the government to a hearing.[6]

### 2. There is no "serious risk" that Mr. Abrego Garcia will flee.

Second, citing § 3142(f)(2)(A), the government says that it's entitled to a detention hearing because there's "a serious risk" that Mr. Abrego Garcia "will flee."

In doing so, the government points to *zero* facts suggesting that Mr. Abrego Garcia: (1) has a history of evading arrest,[7] (2) has systematically engaged in international travel in the recent past, (3) has strong relations in countries that would cause him to seek refuge there, or (4) has any prior felony convictions. (DE 14, Supplemental Mot.); *White*, 2021 WL 2155441, at *7, *13-*14; *United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding no serious risk of flight).

---

[6] If the Court rejects the legal arguments asserted herein, then it should hold a pre-detention-hearing hearing on the issue whether the charged felony "involves a minor victim." At that hearing, the Government will bear the burden of proving that circumstance, and this Court must make findings on that issue. *See Hardon*, 149 F.3d 1185.

[7] Quite the contrary, Mr. Abrego Garcia did not flee when local police pulled him over for speeding on November 30, 2022—rather, as best the undersigned can tell, he submitted to the show of authority.

Instead, it claims that a preponderance of reliable evidence shows a "serious risk" that Mr. Abrego Garcia will intentionally avoid court proceedings because: (a) if convicted, he faces a "lengthy sentence" and immigration consequences, and (b) according to the government, he's a serious criminal who is "liv[es] in the shadows."[8] (DE 14, Supplemental Mot., PageID #64-66). Neither theory holds water.

### a. Mr. Abrego Garcia's sentencing exposure does not evince a serious risk of intentional bail-jumping.

As a general rule, a federal defendant's sentencing exposure is not a particularly strong indicator of his risk of flight. *White*, 2021 WL 2155441, at *13.

That's because most, if not all, federal criminal defendants face "serious penalties"—yet the BRA nonetheless "favor[s]" release "in federal criminal cases." *Id.* (observing that pretrial detention "should be something of a last resort").

It follows that, for a defendant's sentencing exposure to warrant much weight in the "serious risk of flight" analysis, the exposure must be extraordinary. *Id.* (observing that neither the seriousness of the defendant's offense nor the extent of his potential sentencing exposure were meaningful indicators of flight risk).

And despite what the government represents, Mr. Abrego Garcia's exposure is anything but. The crime he's been charged with has no mandatory minimum sentence. *See* 8 U.S.C. § 1324. And data published by the United States Sentencing Commission shows that, in Fiscal Year 2024, the "average sentence for alien smuggling was 15 months." *See* United States Sentencing Commission, *QuickFacts*,

---

[8] The government is not entitled to a detention hearing under § 3142(f)(2)(A) unless it proves by a preponderance of reliable evidence that there's a "serious risk" that the defendant will "intentionally avoid court proceedings." *White*, 2021 WL 2155441, at *7, *10. A risk of non-appearance is not enough.

11

Alien Smuggling, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Alien_Smuggling_FY24.pdf (last visited June 10, 2025).

On balance, then, Mr. Abrego Garcia's sentencing exposure is nowhere near extraordinary—in fact, when compared to the mine-run of federal criminal defendants, his sentencing exposure is actually quite low.[9]

In an effort to up the ante, the government speculates that, in addition to a custodial sentence, a guilty verdict could spell trouble for Mr. Abrego Garcia's immigration status, which, in turn, may motivate him to flee. (DE 14, Supplemental Memo., PageID #64-66). More specifically, it theorizes that, if convicted, "the chance that he [will be] deport[ed] to El Salvador would increase to near certainty." (*Id.*).

These assertions are baseless. True, an asylum officer "may terminate" an immigrant's grant of without of deportation if the immigrant commits certain types of crimes. 8 C.F.R. § 208.24. But the likelihood that that will happen here is not a "near certainty." Indeed, Mr. Abrego Garcia was recently illegally deported to El Salvador and confined in a notoriously inhuman Salvadorian prison. Thus, it appears he may now have a *new* basis (under either asylum law and/or the Convention Against Torture) to seek *additional* protection against deportation to El Salvador.[10]

---

[9] The cases the government cites in its Supplemental Motion are not to the contrary. For instance, the government cites *United States v. Xiaorong You*, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) for the proposition that a defendant facing a "lengthy sentence" is likely to flee. (DE 14, Supplemental Mot., PageID #65). But the defendant in *You* had a Guidelines range of 210 to 262 months, which is obviously much higher than what Mr. Abrego Garcia will likely face.

[10] To put this in context: Article 3 of the United Nations Convention Against Torture (CAT) "protects noncitizens from return to countries where they may face serious human rights abuses." *See* Deborah E. Anker, et al., *Law of Asylum in the United States* § 7:4 (2024 ed.). And, notably, the CAT does not exclude convicted criminals from its ambit. *Id.* In other words, the CAT's "non-return provision is absolute." *Id.* So even if Mr. Abrego Garcia stands guilty as charged, he may be entitled under the

12

All in all, Mr. Abrego Garcia's sentencing exposure is not extraordinary enough to permit a finding that he's a serious risk that he'll intentionally flee the country in order to avoid appearing at a required hearing. Release is warranted.

### b. The fact that Mr. Abrego Garcia is accused of a crime does not mean he poses a serious flight risk.

The government's second argument—i.e., that Mr. Abrego Garcia poses a serious flight risk because he allegedly lives in the secret "shadow" world of "international smuggling"—fairs no better. (DE 14, Supplemental Mot., PageID #67).

Indeed, in many ways, this argument is the same as the first: Because Mr. Abrego Garcia has been accused of a "serious" crime, he's a flight risk.

And so, in many ways, the response is the same: Because all "federal crimes are [somewhat] serious," the fact that Mr. Abrego Garcia has been charged with a crime is not a strong indicator of his flight risk. *White*, 2021 WL 2155441, at *13.

But to the extent the government suggests that Mr. Abrego Garcia's offense is somehow *more* serious than others (and that, consequently, he might flee), it bears mentioning that Congress did not identify alien smuggling as one of the "extremely serious offense[s]" that entitles the government to a detention hearing. *See Salerno*, 481 U.S. at 750; 18 U.S.C. § 3142(f)(1). Nor did it list alien smuggling as a crime for which a rebuttable presumption of detention arises. 18 U.S.C. § 3142(e).

To that end, and contrary to the government's suggestion, the Court cannot find that Mr. Abrego Garcia poses a serious risk of intentional flight simply because

---

CAT to protection from deportation to El Salvador given the circumstances surrounding his prior deportation and the national media attention it received and continues to receive.

13

he's charged with a crime that the government finds distasteful. Indeed, if that were the law, much of the BRA—including § 3142(f)(1)—would be superfluous.[11]

Accordingly, the government has not and cannot establish that Mr. Abrego Garcia presents a serious risk of intentionally failing to appear at required proceedings. As such, the government is not entitled to a detention hearing under § 3142(f)(2)(A). And as a corollary, Mr. Abrego Garcia is entitled to release.

### 3. There is no "serious risk" that Mr. Abrego Garcia will obstruct justice or intimidate witnesses.

Third, invoking § 3142(f)(2)(B) of the BRA, the government suggests that a detention hearing is warranted in this case because there's a "*serious* risk" that, if released, Mr. Abrego Garcia will "obstruct or attempt to obstruct justice, or threaten, injury, or intimidate, or attempt to threaten injure or intimidate, a prospective witness or juror." (DE 14, Supplemental Mot., PageID #69-70 (emphasis added)).

As support, it passively claims it has "evidence" suggesting that Mr. Abrego Garcia is either a "member[]" of or is "associat[ed]" with MS-13. (*Id.*, PageID #69).

And based solely on that supposed association, it concludes that Mr. Abrego Garcia (or others associated with MS-13) might harm one or more of the unidentified "witnesses" that "federal law enforcement has interviewed" about this case. (*Id.*).

Mr. Abrego Garcia obviously denies the government's baseless gang-affiliation allegations, but, even accepting them as true, they're insufficient as a matter of law to support a finding that he poses a "serious risk" of obstructive behavior.

---

[11] Unsurprisingly, the government cites no authority in support of its theory that Mr. Abrego Garcia poses a serious flight risk simply because he's been charged with alien smuggling.

14

To see why, simply compare the outcome in *Busbin* to the result in *Lamar*—two recent cases (one from this Court) addressing what the government must prove to establish eligibility for a detention hearing under § 3142(f)(B)(2). *Compare United States v. Lamar*, 600 F. Supp. 3d 714, 719-21 (E.D. Ky. 2022), *with States v. Busbin*, No. 3:23-CR-00182, 2024 WL 1313880, at *7 (M.D. Tenn. Mar. 27, 2024).

In *Busbin*, this Court found that the government had met its burden under § 3142(f)(B)(2) of proving a "serious risk" that the defendant would obstruct justice or intimidate a witness if released ahead of trial. *Busbin*, 2024 WL 1313880, at *6

Why? Because the government presented "strong evidence" showing that, "over the course of five to six months," the defendant "weaponized the Internet to launch a campaign of social media posts" that were specifically designed to intimidate and threaten at least four specific individuals. *Id.* And it also presented evidence that the defendant would persist in his efforts to intimidate those individuals (if released) because: (1) following a prior "arrest for harassment," he continued to make threatening "Facebook posts," and (2) after being detained, he evidently convinced his wife to continue his threatening and intimidating behavior "in his absence." *Id.*

Thus, the government carried its burden in *Busbin* by presenting concrete evidence showing that the defendant made specific threats toward specific witnesses and that he had a history of doing so while on pretrial release. No conjecture was required to reach the conclusion that he presented a "serious risk."

In *Lamar*, however, the Eastern District of Kentucky concluded that the government did *not* meet its burden under § 3142(f)(B)(2) of proving a "serious risk" that the defendant would obstruct justice or intimidate a witness if released.

Why? Because the government's theory of obstruction in *Lamar* was (at bottom) far too speculative. To put this in context: The government claimed that there was a "serious risk" that the defendant would destroy evidence because, while awaiting a detention hearing, he instructed an "unidentified individual" (on a recorded jail call, no less) to remove certain jewelry and a certain storage-unit key from his residence. *Lamar*, 600 F. Supp. 3d at 723. But after the hearing the proof, the court learned that the government had no idea whether the jewelry was evidence of crime or "what, if anything, was in the storage unit." *Id.* at 723-24. Thus, although the court deemed the contents of the recorded jail call suspicious, it ultimately concluded that the government had not proven a "serious risk" that the defendant would destroy evidence. *Id.* Indeed, the court observed: "the [g]overnment [failed to] point to a *single fact*" drawing a nexus between the defendant's alleged criminal conduct and the jewelry and/or storage unit. *Id.* (emphasis added).

With these principles in mind, what side of the obstruction-of-justice line does Mr. Abrego Garcia's case fall on? Has the government presented concrete evidence showing that Mr. Abrego Garcia has made a specific threat against a specific witness or that he has engaged in obstructive conduct in the past? Or is its obstruction theory based primarily (if not exclusively) on conjecture and assumptions?

The answer is the latter. Unlike in *Busbin*, nothing in the government's pleadings suggests that Mr. Abrego Garcia has threatened or attempted to threaten a witness. Indeed, the government's pleadings don't even contain allegations suggesting that he has engaged in behavior that *might* amount to obstruction.

To that end, if the proof in *Lamar* was too speculative to support a finding that of a serious risk that the defendant would likely engage in obstructive conduct, then there is no doubt that the government's allegations here are too.

Accordingly, the government has not and cannot establish a "serious risk" that Mr. Abrego Garcia will destroy evidence or intimidate witness if released pending trial, and, therefore, the government isn't entitled to a hearing under § 3142(f)(2)(B).

Seeking to convince the Court otherwise, the government represents that it has found *ten* cases establishing that a defendant's alleged gang membership is relevant to the § 3142(f)(2)(B) inquiry. (DE 14, Supplemental Mot., PageID #69).

But those cases say no such thing. Two of the government's cases don't say anything at all about the § 3142(f)(2)(B) analysis. *See United States v. Destine,* 2022 WL 2181453, at *2 (E.D.N.Y. June 16, 2022) (no analysis of § 3142(f)(2)(B) or whether alleged gang involvement is an indicator of obstructive behavior); *United States v. Irizzary*, No. 17-CR-283(LAP), 2020 WL 1705424, at *1 (S.D.N.Y. Apr. 8, 2020) (same). Two others don't say anything about gangs. *United States v. Choudhry*, 941 F. Supp. 2d 347 (E.D.N.Y. 2013) (no allegation that defendant was in a gang); *United States v. Gallardo-lvarez*, 2022 WL 2339421, at *2 (D.P.R. June 27, 2022) (same).

And four of the remaining six don't say anything about how a defendant's alleged status as a gang member is indicative of obstructive behavior. *See United States v. Beard*, 528 F. Supp. 3d 764, 773 (N.D. Ohio 2021) (no discussion of how gang involvement relates to evidence destruction or witness tampering); *United States v. Baldazo*, No. 2:11 CR 77, 2012 WL 12947283, at *2 (N.D. Ind. Apr. 19, 2012) (same); *United States v. Cureton*, 2013 WL 4496276, at *1 (E.D. Mich. Aug. 21, 2013) (same); *United States v. Valles,* 2008 WL 2262620, at *6 (E.D. Cal. June 2, 2008) (same).

That leaves only two remaining cases—*Mendez* and *Heffington*—both of which are consistent with *Busbin* and neither of which hold that a defendant's alleged involvement in a gang is sufficient by itself to show a serious risk of obstructive behavior. In *Mendez*, for instance, the government presented concrete proof that the defendant (and three other men) surrounded a car, slashed its tires, and "shot at the car's occupants." *United States v. Mendez*, 478 F.Supp.3d 152, 154 (D. Mass. 2020). It also produced evidence showing that the defendant had "spoken to the victims and that they were not going to testify" against the defendant and his accomplices, which established that he was "willing[] to intimidate witnesses." *Id.* Based on those specific, concrete facts, the court (as in *Busbin*) found that there was a "serious risk" that the defendant would obstruct justice if released. Similarly, in *Heffington*, the court concluded that there was a "serious risk" that the defendant would "obstruct justice" if released because (yet again) substantial objective proof—not rumored, unsubstantiated hearsay or conjecture—showed that the defendant had previously

18

engaged in efforts "to intimidate confidential witnesses and/or informants." *See United States v. Heffington*, 2009 WL 112375 (E.D. Ca. 2009).

Suffice it to say, the authority cited by the government simply confirms what this Court (per *Busbin*) already knows: To obtain a detention hearing under § 3142(f)(2)(B), the government must present concrete evidence demonstrating that the defendant has made a specific threat against a specific witness or has otherwise previously engaged in conduct designed to obstruct or conceal evidence.

Since (as explained above) the government has not carried—and cannot carry—that burden here, the government is not entitled to a detention hearing under § 3142(f)(2)(B), and, therefore, Mr. Abrego Garcia must be released.

## CONCLUSION

Because the government is not entitled to seek detention in this case, Mr. Abrego Garcia respectfully asks the Court to deny the government's motion for detention.

Respectfully submitted,

s/ *Dumaka Shabazz*
Dumaka Shabazz
Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
615-736-5047
E-mail: dumaka_shabazz@fd.org

<pre>
                              s/ *Will Allensworth*
                              Will Allensworth
                              Assistant Federal Public Defender
                              810 Broadway, Suite 200
                              Nashville, TN  37203
                              615-736-5047
                              E-mail: will_allensworth@fd.org

                              s/ *Richard Tennent*
                              Richard Tennent
                              Assistant Federal Public Defender
                              810 Broadway, Suite 200
                              Nashville, TN  37203
                              615-736-5047
                              E-mail: richard_tennent@fd.org

                              s/ *Richard Thomason*
                              Richard Thomason
                              Assistant Federal Public Defender
                              810 Broadway, Suite 200
                              Nashville, TN  37203
                              615-736-5047
                              E-mail: alex_thomason@fd.org

                              Attorneys for Kilmar Abrego Garcia
</pre>

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, I electronically filed the foregoing *Memorandum in Opposition to Government's Motion For a Detention Hearing* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Robert E. McGuire, Assistant U.S. Attorney, 719 Church St., Suite 3300, Nashville, TN, 37203.

<pre>
                              s/ *Will Allensworth*
                              WILL ALLENSWORTH
</pre>

20