IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:25-cr-00115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| | ) | |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

**MOTION FOR STAY OF RELEASE ORDER**

The United States of America, by and through Robert E. McGuire, Acting United States Attorney, hereby moves for a stay of the Magistrate Judge's Release Order as to Kilmar Armando Abrego Garcia (hereinafter "Defendant").

In support of the United States' Motion for a Stay, the United States submits on June 6, 2025, the Defendant was arrested on an Indictment previously issued by the Grand Jury. (DE # 10.) The United States moved for detention of the Defendant pursuant to 18 U.S.C. § 3142(f)(1)(E), (f)(2)(A) and (f)(2)(B). (DE # 8, 14.) On June 13, 2025, Magistrate Judge Holmes held a hearing to address the Government's Motion. At the hearing, the United States admitted into evidence the body worn camera (BWC) footage from a traffic stop conducted by the Tennessee Highway Patrol (THP) on November 30, 2022, which showed the Defendant driving a Suburban registered to a convicted alien smuggler and carrying nine additional passengers (including two in an after-market back row). None of the passengers had any visible luggage or construction tools. During the traffic stop, Defendant told the trooper that he and the passengers were coming from doing construction work in St. Louis.

One trooper asked the passengers to write down their names and birthdays on a piece of paper and, as depicted on the body camera footage, all appeared to do so. One trooper took a

1

picture of this "roster" which was also admitted as an exhibit during the hearing. On the "roster,"

one of the passengers listed his birth year as 2007 meaning he was barely fifteen years old at the

time he was being transported by the Defendant.

The Government called Homeland Security Investigations Special Agent (SA) Pete Joseph

to testify. Among other things, SA Joseph testified that license plate reader (LPR) data and cell

phone records showed that the Defendant had not been traveling from St. Louis like he told the

trooper. Nor did it appear that had he been in St. Louis for the preceding two weeks (as he also

stated to law enforcement) because the vehicle had been captured by LPR data while traveling in

Texas, Louisiana and Georgia in the days prior to the traffic stop. SA Joseph also testified that,

based on the information on the passenger "roster" of passengers at the November 30, 2022, traffic

stop, they were able to confirm that several of those passengers were in the United States illegally.

Additionally, two of those passengers were encountered by law enforcement at the U.S. Southern

border just a few weeks before being in the Defendant's car in Putnam County, Tennessee.

SA Joseph also testified about the statements of interviewed witnesses and co-conspirators,

four of whom testified under oath before federal grand juries investigating the matter. Those

individuals informed law enforcement that the Defendant had been involved in alien smuggling

since approximately 2016, that the conspiracy had transported unaccompanied minors, that the

Defendant had used his own family members as a "cover" to avoid detection on smuggling trips,

that he was a member of the street gang MS-13, and that Defendant had occasionally smuggled

guns and drugs when transporting aliens. Further, they stated that during the conspiracy, Defendant

was sexually aggressive with minor females who were being transported. The United States

submitted into evidence copies of two separate protective orders, obtained by the Defendant's

current wife, which alleged that he had committed multiple acts of domestic violence against her.

The defense offered no live witnesses, and only admitted an affidavit from a third-party custodian (who did not testify subject to cross examination), a letter from a social service agency in Maryland, and a copy of the Defendant's 2019 immigration order. The defense cross-examined the government's witness but offered no rebuttal evidence to the allegations described in the hearing. Nevertheless, Judge Holmes denied the Government's Motion for Detention via Memorandum Opinion (DE # 43) and, in that order, stated that she intends to issue a future order "directing Abrego's release on conditions." *Id* at PageID # 195.[1] Therefore, the United States submits that the issues is ripe for review by this Court.

The United States has moved for revocation of the Release Order pursuant to 18 U.S.C. § 3145(a)(1). (DE # 45.) Whether detention of a defendant pending trial is warranted is a mixed question of law and fact subject to *de novo* review. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The United States has already requested the expedited preparation of a transcript of the detention hearing to provide to the Court as a part of the Court's consideration of the United States' Motion for Revocation of Release Order. The United States also anticipates filing a memorandum in support of that Motion with citations to the transcript and legal analysis. The Defendant must also have the opportunity to review the transcript, the United States' Motion for Revocation and anticipated memorandum in support of that Motion, and time to file any responsive pleadings if they wish.

Therefore, the United States is requesting a stay of the Magistrate Judge's impending Release Order. In addition to the United States' concerns regarding the Defendant's danger to the community and risk of flight (as described by the evidence offered at the hearing), the United

---

[1] Judge Holmes set the matter for a hearing on June 25, 2025, but only to "review conditions of release and otherwise address any necessary issues." (DE # 44.) Judge Holmes has already decided to release the Defendant therefore making the issue ripe for this Court.

States notes that because Defendant has an immigration detainer lodged against him by the Department of Homeland Security. Defendant could face potential deportation from the United States in the near future should Judge Holmes' impending release order remain in effect. Granting this Motion for Stay would return the parties to the status quo placing them in their respective positions prior to the detention hearing held on June 13, 2025. The United States would submit that the prejudice to the Defendant is limited because he will remain in custody pending deportation and Judge Holmes' release order would not immediately release him to the community under any circumstance. Most importantly, a stay will give this Court the opportunity to conduct meaningful review of the evidence with little prejudice to the Defendant who will be in custody regardless.

For the foregoing reasons, the United States respectfully requests this Court grant its motion and stay the impending release order.

Respectfully Submitted,

*/s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN  37203


*/s/ Jeremy Franker*
Jeremy Franker
Deputy Director, Task Force Vulcan

Jake Warren & Chris Eason
Co-Directors, Task Force Vulcan

4