IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:25-cr-00115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| | ) | |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

**REPLY TO DEFENDANT'S RESPONSE**
**TO UNITED STATES' MOTION FOR STAY OF RELEASE ORDER**

The United States of America, by and through Robert E. McGuire, Acting United States Attorney, makes the following Reply to the Defendant's Response to the United States' Motion to Stay Release Order (DE # 49), pursuant to this Court's order (DE # 51.)

As an initial matter, it is clear from the Magistrate Judge's memorandum opinion that she will order release of the Defendant. (DE # 43). Her memorandum opinion denies the Government's Motion for Detention which, therefore, grants the Defendant release. *Id* at PageID #: 195. ("A hearing will be set by separate order to review conditions of release with Abrego and *to provide for his release*") (emphasis added). Moreover, the Magistrate Judge, in her memorandum opinion, has already determined that conditions can, and (in her estimation) will, secure the safety of the community and lower risk of non-appearance in court. *Id.* ("[T]he Court finds that it can impose conditions of release to reasonably assure the safety of others and the community and Abrego's appearance.") In other words, the Magistrate Judge has already decided that the Defendant *will* be released on conditions *and* that those conditions (even if those conditions have yet to be fully determined) can assure the safety of the community and lower risk of non-appearance. To argue that the issue is not ripe for review simply because the forecast release order has not been posted

1

to the docket is overly technical and misses the plain reading of Magistrate Judge Holmes' memorandum opinion.

In the Government's initial Motion for Stay, the United States described that despite strong evidence to the contrary, the Magistrate Judge found that the Government was not entitled to a detention hearing under 18 U.S.C. § 3142(f)(1)(E) and that—in any event—placing conditions on him would assure the safety of the community or cure the risk of non-appearance; that there was (among other concerns) a legitimate concern that the Defendant would be deported from the United States if a stay was not granted leaving the public irreparably injured; that any injury or prejudice to the Defendant (who, if released, will go into custody of the Department of Homeland Security pending his deportation) was minimal; and that the public's interest in an evidence-based adjudication of this issue and this case was significant. (DE # 46.) In other words, despite the Defendant's allegations to the contrary, the United States has already adequately described its grounds for a stay under *United States v. Fox*, 2017 WL 11546291 (6th Cir. 2017) with the understanding that this Court was already well-grounded in the case law concerning detention appeals under 18 U.S.C. § 3145 and stays during those appeal.

In her memorandum opinion, the Magistrate Judge acknowledged and rejected the Second Circuit's holding in *United States v. Watkins*, 940 F.3d 152 (2nd Cir. 2019) despite the fact that *Watkins* has been followed in multiple other districts and deals squarely with an interpretation of the word "involves" (as in "involves a minor child") used in 18 U.S.C. § 3142(f)(1)(E). The Magistrate Judge, in declining to follow *Watkins,* which has been recognized as persuasive authority across the United States, essentially created her own standard for whether a case "involves" a minor victim in a way that is contrary to what Congress intended, contrary to the most relevant and persuasive precedent, and is, respectfully, clear error before this Court. (DE # 43,
2

PageID #: 163) ("In the Court's view, 'involves' as used in § 3142(f)(1)(E) means something more than 'related to' and something less than 'necessarily entails.'") The United States respectfully submits that there is no federal precedent for this specific assessment by the Magistrate Judge, nor did she cite any, and that this assessment is an erroneous departure from the most relevant and persuasive case law.

In reaching this conclusion, the United States respectfully submits that the Magistrate Judge placed a larger burden on the Government than the law requires or is even common practice in detention hearings both in this district and across the United States. There is no question that the Government bears the burden at a detention hearing. *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010). The United States has not proceeded otherwise. However, the Federal Rules of Evidence carve out detention hearings from the ordinary evidentiary strictures that would apply in other proceedings, such as a jury trial, by making those Rules non-applicable in a hearing "consider wither to release on bail or otherwise". Fed. R. Evid. 1101(d). Evidentiary rules concerning hearsay, foundation, character evidence and the like have no application in a detention hearing under a plain reading of the rules themselves. *Id*. Witnesses called by either party may testify about matters to which the normal Federal Rules of Evidence would otherwise prohibit. The United States, with a full understanding of those rules, proceeded accordingly at the detention hearing.

Case law also makes plain that "the rules of evidence do not apply in a detention hearing." *United States v. Murphy*, 2021 WL 5750435, at *1 (W.D. Ky. Dec. 2, 2021) *See also United States v. Baker*, 2023 WL 3612430, at *1 (S.D. Ohio May 24, 2023) ("The Federal Rules of Evidence do not apply at a pretrial detention hearing and the Court may consider both hearsay and evidence provided by proffer."); *United States v. Cobix-Espinoza*, 655 F.Supp.3d 584 (E.D. Ky Feb. 9, 2023); *United States v. Kent*, 2024 WL 3338024 (S.D. Ohio July 9, 2024); *United States v.*

3

*Ramirez-Vaca*, 570 F.Supp.3d 507 (E.D. Ky. Mar. 23, 2021); *United States v. Dillard*, 2023 WL 313856 (S.D. Ohio Jan. 19, 2023); *United States v. Hutten*, 2024 WL 306654 (S.D. Ohio June 20, 2024); *United States v. Comberger*, 2021 WL 1725516 (E.D. Ky. Apr. 30, 2021); *United States v. Peters*, 2024 WL 3066125 (S.D. Ohio June 20, 2024). The United States, cognizant of the overwhelming case law on this issue, proceeded accordingly at the detention hearing.

Indeed, the Government need not call any witnesses at all at a detention hearing but can even proceed by proffer, a scenario that Magistrate Judge Holmes has previously called "generally accepted practice." *United States v. Khatiwada*, No. 3:24-MJ-1277, 2024 WL 4906487, at *4 (M.D. Tenn. Nov. 27, 2024). *See also United States v. Salerno*, 481 U.S. at 743 (discussing government's proffered evidence); *United States v. Tawfik*, 852 F. App'x 965, 966-67 (6th Cir. 2021) (holding that detention was warranted based on government's proffered evidence); *United States v. Caldwell*, No. 1:24-cr-70, 2024 WL 2080985, at *1-2 (N.D. Ohio, May 9, 2024) (discussion of evidence proffered by government); *United States v. Foster*, No. 3:23-CR-36-TAV-DCP-6, 2021 WL 4355331, at *1 (E.D. Tenn. July 5, 2023) (discussion of evidence proffered by government); *United States v. Baldinger*, No. 3:85-0031, 1985 WL 2043, at * n.2 (M.D. Tenn. May 8, 1985) (acknowledging that government may proffer evidence at a detention hearing). The Government, despite having the ability to proffer, attempted to provide the Magistrate Court with even more competent evidence by calling a federal agent who the case agent on this case, thereby subjecting that agent to cross-examination and in an effort to exceed what the rules allow.

Despite this well accepted precedent regarding evidence at detention hearings, which even Magistrate Judge Holmes has recognized may include unsworn proffers not subject to cross examination, the Magistrate Judge found that while the Government had admitted primary evidence (in the BWC footage and a photograph of the "roster" of passengers) through the sworn

4

testimony of a federal agent who was then subject to cross examination and *not* through unsworn proffer statements which could not be cross examined, the Government functionally still should have called *more* witnesses. (DE # 43, PageID #: 166-167.) This is because, "in the Court's view there is a direct correlation between the importance of the evidence and the level of reliability. The more critical the evidence is, the more demanding the measure of reliability." *Id*. Respectfully, this "sliding scale" for the Government's evidence[1] is not the legal standard for acceptance of evidence at a detention hearing. The Magistrate Judge cited no precedent for this "sliding scale" proposition; the United States could not find any. The United States would respectfully submit this application is without precedent and is error.

The United States, at a detention hearing, must prove by *preponderance* of evidence that an offense "involved a minor victim" to gain a detention hearing under 18 U.S.C. § 3142(f)(1)(E). To be sure, the evidence a detention hearing must be competent and reliable: such as video recording of the Defendant committing the crime alleged in Count Two of the Indictment and testimony of a federal agent about a photograph taken by a trooper who can be *seen on the video* obtaining said roster. But evidence at a detention hearing need not be the equivalent of evidence that would be offered at a jury trial. Indeed, at a detention hearing such evidence need not even be offered via testimony to be a basis for detention; a proffer can be sufficient. There is no support in the relevant federal case law for the proposition that a failure by the Government to call one witness at a detention hearing can be used to depreciate other evidence offered by another witness under the appropriate standards of federal law surrounding detention hearings. A detention hearing is not

---

[1] Notably, the Defendant's evidence was not held to this level of scrutiny. The Defendant called no witnesses but offered an affidavit of a third party custodian and an unsworn letter from a social service agency working on behalf of the Defendant. And yet, based on this showing, the Magistrate Court determined a critical issue: that there were conditions of release that could assure the safety of the community and lower the risk of non-appearance.

5

a jury trial. To consider the Government's evidence as the Magistrate Judge did was, respectfully, clear error before this Court.

The United States has cited above two examples of how the Magistrate Judge declined to follow the clear weight of federal precedent on an issue of statutory interpretation and held the Government to an inappropriate evidentiary standard (and one devoid of precedent). The United States would submit that this list of errors is not exhaustive, and the Government intends to supplement that record of errors in a forthcoming memorandum in support of its Motion to Revoke Release order. But even just these errors are, respectfully, the kind of "strong showing" that the Government is likely to prevail on the merits that *Fox* contemplates. It is exactly what the United States was referencing in its initial Motion to Stay.

At the detention hearing, the United States argued that, laying aside the fact that the Defendant would almost certainly be taken into immigration custody if released, he was a serious risk of flight because—while on this theoretical release—he would have a monumental incentive to flee: to avoid deportation to El Salvador. The United States stands by that argument before this Court that, in the universe where the Defendant is released at liberty (and not to immigration custody), he has—according to the testimony offered at the detention hearing—connections to an international smuggling ring and an a transnational criminal organization, both of whom could be positioned to assist the Defendant in evading trial, conviction, and deportation to El Salvador. Should the Defendant be at liberty and successfully flee, the Government's interest in bringing him to trial will be irreparably injured. The United States cannot try a fugitive.

However, it is an accepted fact in this case that if the Defendant is released from U.S. Marshals Custody, he will not be released at liberty but rather, into the custody of Immigration and Customs Enforcement (ICE). (DE # 43, PageID #: 145) ("Perhaps the sole circumstance about

6

which the government and Abrego may agree in this case is the likelihood that Abrego will remain in custody regardless of the outcome of the issues raised in the government's motion for detention.") Nevertheless, a release of the Defendant into ICE custody poses potentially irreparable problems for the prosecution in this case and, therefore, for the public at large whose interests the Government serves. Should this Court not order a stay, and the Defendant is moved to ICE custody and deported from the United States, the prosecution would lose the meaningful opportunity to try its case. This would be irreparable harm to the public. How fast the Defendant could or would be deported remains to be seen. In candor with the Court, such a potential deportation of the Defendant would not be instantaneous. How fast such proceedings could move are difficult to predict. Yet, these immigration proceedings exist as real, potential, substantial and irreparable harm to the United States.

To the contrary, a stay does not "substantially injure" the Defendant. *Fox* at * 1. The United States does not contemplate that the stay will be lengthy. The Defendant proposes a reasonable briefing schedule: that the Government's Memorandum be due on July 2, 2025, with the Defendant's Response being due on July 9, 2025. (DE # 49, PageID #:451.) Obviously, the Court would need time to review the parties briefing and rule on the Government's Motion to Revoke. However, even if the Court ruled on the Government's Motion to Revoke Release Order some two weeks after the close of the briefing, the length of the stay would then be only approximately 30 days. Should the Government be unsuccessful in its Motion to Revoke and Magistrate Judge Holmes' impending release order stands, any delay in the imposition of that order would be measured in weeks not months. And the parties will only be maintained in the status quo, at the district court level, while this Court reviews the Magistrate Judge's opinion on the Government's Motion for Detention and for no longer than that review requires by this Court. This length of stay

7

is not unreasonable and, other than a general argument about defendants who are ordered released should be released (DE # 49, PageID# 450-451), the Defendant offers nothing specifically injurious to him should this Court grant a stay.

This Court has previously issued stays of release orders to "preserve the status quo and allow the Court to review the decision to release pursuant to 18 U.S.C. § 3145". *See e.g. United States v. Dejuan Reed*, Case No. 3:22-cr-00095, Docket Entry 30, PageID #: 68; *United States v. Gabryelle Watson*, 3:24-cr-00098, Docket Entry 11, PageID#: 38. In those matters, the Court recognized that a stay was important for the Court's due consideration of the Government's motions to revoke release orders. The United States submits that the Court exercised wise judgment in those matters and similar wisdom is called for here. In this matter, the transcript of the hearing before Judge Holmes has been prepared and is available for the Court's review, the matter will be fully briefed on an expeditious schedule and the Court will be able to promptly rule on the Government's Motion to Revoke without additional proceedings in the district court.

Finally, the United States respectfully submits that the public interest lies in a resolution of not only whether the analysis of the Magistrate Judge is sound but also in a resolution of the case itself. Should the Defendant be deported by another agency following what they believe to be relevant federal law and agency guidance, the public would be deprived of a resolution of the charges. A meaningful resolution of these charges based on the evidence is important to the public at large. It is worth this Court staying the release order for a period of weeks to grant the public a greater chance of that evidence-based, meaningful resolution of these charges.

For the foregoing reasons, the United States respectfully requests this Court grant its motion and stay the impending release order.

Respectfully Submitted,

8

Case 3:25-cr-00115   Document 54   Filed 06/24/25   Page 8 of 9 PageID #: 468

 */s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN  37203

*/s/ Jacob Warren*
Jacob Warren
Co-Director, Task Force Vulcan

*/s/ Christopher Eason*
Christopher Eason
Co-Director, Task Force Vulcan

*/s/ Jeremy Franker*
Jeremy Franker
Deputy Director, Task Force Vulcan