IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Barbara D. Holmes

**SUPPLEMENTAL SUBMISSION REGARDING COORDINATION
BETWEEN THE DEPARTMENT OF JUSTICE AND THE
DEPARTMENT OF HOMELAND SECURITY**

In March, the Executive Branch—specifically the Department of Homeland Security ("DHS")—unlawfully arrested and renditioned Kilmar Armando Abrego Garcia ("Mr. Abrego") to a notorious Salvadoran prison where he was certain to be tortured. A court had previously ruled, however, that Mr. Abrego could not be deported to El Salvador. A lawyer working for the Department of Justice ("DOJ"), defending DHS, confessed error, only to be fired for his candor to the court.[1] On April 10, the Supreme Court then ruled in plain language that the Executive Branch had acted unlawfully and ordered it to facilitate Mr. Abrego's return.[2]

Instead of complying with that order, the government pivoted, delaying Mr. Abrego's return and working through Joint Task Force Vulcan, including its DOJ and DHS partners, to concoct this criminal case. DOJ and DHS promised extraordinary benefits to undocumented people who had committed crimes to provide evidence, however unreliable, in support of this case. In short order, DHS, working hand in glove with DOJ, retrieved Mr. Abrego from El Salvador to stand trial in this District. This Court evaluated the government's evidence, such as it is, and found it to be unreliable and certainly insufficient to warrant pretrial detention. ECF 43. Judge Crenshaw agreed that the government was unlikely to show success on the merits of its motion for revocation. ECF 55. The Executive Branch, acting through the DOJ and Task Force Vulcan, now claims to be powerless to ensure that DHS will cooperate with any efforts to protect Mr. Abrego's rights during the pendency of this case. Such claims strain credulity.[3]

---

[1] *See* Gov't Accountability Project, *Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice* (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025__Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.
[2] *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).
[3] Given the DOJ and Task Force Vulcan's flimsy claims of impotence, Mr. Abrego's counsel in his civil action have moved in the District of Maryland for an order that Mr. Abrego be returned to that District after this Court releases him from pretrial custody. *See Abrego Garcia v. Noem*, No. 25 Civ. 951 (D. Md. June 26, 2025), ECF 203. As stated at yesterday's hearing, counsel have

1

Case 3:25-cr-00115   Document 60   Filed 06/26/25   Page 2 of 8 PageID #: 551

As Judge Crenshaw held yesterday, "the Executive Branch"—not DOJ or DHS in isolation, but the government as a whole—"is in control of where [Mr. Abrego] awaits trial in this case" and "whether to hold him for pending deportation proceedings or not." ECF 55 at 1. We agree. As the government's conduct in this case makes plain, DOJ has the power to coordinate with DHS to ensure that (1) Mr. Abrego is not deported while these charges are pending and (2) he is housed in a facility that allows him to adequately prepare for trial in this case. We welcome the Court's order that the DOJ—including the Acting United States Attorney in this District, as well as the Directors and Deputy Director of Task Force Vulcan—make "best efforts" to effectuate both of those goals.

First, the government has itself repeatedly acknowledged that this case results from extensive coordination between DOJ and DHS. On June 6, 2025, when announcing the indictment against Mr. Abrego, Attorney General Pamela Bondi specifically commended DHS, among other "partners," for its help in investigating and transporting Mr. Abrego back to the United States to face these charges.[4] That same day, Deputy Attorney General Todd Blanche lamented that the public was "complaining" that the DOJ and DHS had worked together to investigate Mr. Abrego.[5] The next day, Acting Director of Immigration and Customs Enforcement ("ICE"), Todd Lyons, lauded the interagency coordination, praising "the work the men and women of ICE, FBI and DOJ" and the contributions of Homeland Security Investigations ("HSI").[6] And Lyons specifically called

---

no objection to Mr. Abrego being returned to his family in Maryland to await trial, and the civil motion requests that Mr. Abrego be returned to Tennessee whenever necessary to participate in his criminal case. *Id.* at 1. Accordingly, any relief afforded by the District Court in Maryland would comport with this Court's conditions of release.

[4] *Attorney General Bondi Announces Charges Against Abrego Garcia*, Dep't of Just. (June 6, 2025) [hereinafter Bondi], https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia.

[5] *Kilmar Abrego Garcia Was Indicted on 'Very Serious' Charges, US Deputy Attorney General Says*, Fox News (June 6, 2025) [hereinafter Blanche], https://www.foxnews.com/video/6373969491112.

[6] *Acting ICE Director Blasts Los Angeles Mayor over ICE Raid Resistance*, Fox News (June 7, 2025) [hereinafter Lyons], https://www.foxnews.com/video/6373996743112.

out DHS Secretary Kristi Noem, who "ha[d] said from the beginning that [Mr. Abrego] is a criminal" and an "MS-13 gang member." *Id.* It beggars belief that these Executive Branch leaders, who have all publicly affirmed their coordinated efforts to bring Mr. Abrego back to the United States apparently to "face justice,"[7] now suddenly expect to engage in no coordination whatsoever.

Second, this case was built on—and likely will continue to depend upon—the work of Joint Task Force Vulcan, which Attorney General Bondi herself has stated was "created in partnership with the Department of Homeland Security."[8] In multiple of its own press releases, the DOJ has recognized DHS's integral role in Task Force Vulcan.[9] In announcing charges against Mr. Abrego, DOJ specifically referenced Task Force Vulcan.[10] Members of that task force—including its co-directors and deputy director—have signed the indictment and multiple filings in this case. *See* ECF 3, 8, 14, 46, 54. And at the June 13 hearing, the government's sole witness, an HSI special agent, acknowledged that he used "the assistance of a joint task force" in marshaling agency resources to investigate Mr. Abrego. *See* ECF 47 at 87:23-88:3.

Third, and most critically, DOJ has already proven that it can coordinate with DHS to stay removal proceedings in the interest of prosecuting this case. As the HSI agent testified at the June 13 hearing, one of the government's cooperating witnesses has been granted deferred action on deportation because "he was a prospective witness" and relief was required "otherwise he would

---

[7] *See* Bondi, *supra* note 4; Blanche, *supra* note 5; Lyons, *supra* note 6.
[8] Memorandum from Pamela Bondi, Att'y Gen., to all Dep't Emps. (Feb. 5, 2025), https://www.justice.gov/ag/media/1388546/dl?i.
[9] *See* Press Release, *Three of the Highest-Ranking MS-13 Leaders in the World Arrested on Terrorism and Racketeering Charges* (Feb. 23, 2023), https://www.justice.gov/usao-edny/pr/three-highest-ranking-ms-13-leaders-world-arrested-terrorism-and-racketeering-charges; Press Release, *Homeland Security Investigations Announces Indictment of 3 MS-13 leaders on Terrorism, Racketeering Charges* (Feb. 24, 2023), https://www.ice.gov/news/releases/homeland-security-investigations-announces-indictment-3-ms-13-leaders-terrorism.
[10] *See* @TheJusticeDept, X (June 6, 2025), https://x.com/TheJusticeDept/status/1931100699690971342; *see also* Bondi, *supra* note 4.

be deported." *Id.* at 32:5-32:13.[11] That witness has two prior felony convictions, has been deported five times, and was serving a 30-month sentence for human smuggling, but he was released early to a halfway house as part of his cooperation—all of which shows the significant lengths to which DOJ has gone to secure cooperation from DHS to prosecute this case. *Id.* at 31:18-32:4; 80:19-81:4; 122:6-122:10; ECF 43 at 26. DHS is also contemplating granting two other cooperating witnesses deferred action on deportation. ECF 47 at 74:23-75:4; 122:11-122:15; ECF 43 at 26.

Only when it comes to Mr. Abrego does the government suddenly feign impotence, complaining that "the prosecution would lose the meaningful opportunity to try its case" because "[h]ow fast [Mr. Abrego] could or would be deported remains to be seen." ECF 54 at 7. That claim must not be credited, given the circumstances of this case. DHS has publicized its investigation of Mr. Abrego, including by releasing a purported "[b]ombshell [i]nvestigative [r]eport" about the traffic stop that led the government to pursue charges against him.[12] And DHS has lauded his return to the United States to face those charges.[13] If DHS were to then turn around and frustrate Mr. Abrego's prosecution while those very charges are pending by removing him from the United States, that would mean the Executive Branch has no confidence in this trumped up case.

At bottom, the government's claim that it cannot control where Mr. Abrego is detained or whether he is removed from the United States is based on a convenient fiction. DOJ and DHS are part of a single Executive Branch; they "wield significant authority, but that authority remains

---

[11] Under 8 U.S.C. § 1231(c)(2)(A), the Secretary of Homeland Security "may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution." *Johnson v. Guzman-Chavez*, 594 U.S. 523, 528 (2021). Apparently Secretary Noem has seen fit to do so already in this case for the government's witnesses *against* Mr. Abrego. Just not for Mr. Abrego himself.

[12] Press Release, Dep't of Homeland Sec., *DHS Releases Bombshell Investigative Report on Kilmar Abrego Garcia Suspected Human Trafficking Incident* (Apr. 18, 2025), https://www.dhs.gov/news/2025/04/18/dhs-releases-bombshell-investigative-report-kilmar-abrego-garcia-suspected-human.

[13] *See* @Sec_Noem, X (June 6, 2025), https://x.com/Sec_Noem/status/1931088689842782559.

4

Case 3:25-cr-00115    Document 60    Filed 06/26/25    Page 5 of 8 PageID #: 554

subject to the ongoing supervision and control of the elected President." *Seila Law LLC v. CFPB*, 591 U.S. 197, 224 (2020). Here, the White House has stated that Mr. Abrego was returned to the United States to "meet the full force of American justice."[14] It can no doubt act to ensure coordination among its constituent agencies, including DOJ and DHS. *See Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 249 (D.C. Cir. 2014) (Kavanaugh, J.) ("[The] President . . . is to ensure that such consultation and coordination occurs in the many disparate and far-flung parts of the Executive behemoth. The right hand should know what the left hand is doing.").

Indeed, as Judge Crenshaw has recognized, nothing prevents DOJ and DHS from coordinating with one another when a defendant is released from DOJ custody but is subject to an ICE detainer. *See United States v. Alvarado-Velasquez*, 322 F. Supp. 3d 857, 860 (M.D. Tenn. 2018) (Crenshaw, J.) (recognizing that "inter-agency cooperation should be the norm" in such circumstances); *see also United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1135-36 (M.D. Fla. 2015) (expressing disbelief that when DHS had referred the defendant to the U.S. Attorney's Office for prosecution, why suddenly "two Executive Branch agencies that began a concerted effort to deal with Defendant suddenly changed course"). Where, as here, DOJ and DHS have acted in concert since this case's inception, proclaiming with one voice that Mr. Abrego "will never go free on American soil,"[15] the government cannot credibly claim that DOJ is powerless to coordinate with DHS to ensure that Mr. Abrego's case proceeds without jeopardizing his constitutional rights and the fair administration of justice. As Judge Crenshaw explained, "[i]f the Government finds this case to be as high priority as it argues here, it is incumbent upon it to ensure that Abrego is held accountable for the charges in the indictment." ECF 55 at 14. "If the Department of Justice and DHS cannot do so, that speaks for itself." *Id.*

---

[14] @PressSec, X (June 6, 2025), https://x.com/PressSec/status/1931083870130040952.
[15] @TriciaOhio, X (June 22, 2025), https://x.com/TriciaOhio/status/1936929967423754665.

5

Dated: June 26, 2025
      New York, New York

Respectfully submitted,

 /s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203.

/s/ Sean Hecker