UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.   3:25-CR-00115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

## GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

Comes Now the United States of America, by and through the undersigned Acting United States Attorney, Robert E. McGuire, and hereby moves, pursuant to Federal Rule of Criminal Procedure 16(d)(1), for a protective order regarding discovery in this case, which includes charges of Conspiracy to Transport Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i); Unlawful Transportation of Undocumented Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i), and Title 18, United States Code, Section 2. Granting this motion will facilitate the prompt disclosure of information to the criminal defense team while also protecting the privacy rights and safety of victims and witnesses. A proposed protective order is attached hereto as Attachment A.

Counsel for the Government has conferred with counsel for the defendant regarding the proposed protective order, and they authorized the Government to report that defendant opposes this motion.[1]

---

[1] The United States is presently prepared to make a discovery production to the defendant and had attempted to negotiate an agreed protective order prior to that production. Once the Court rules on this Motion, the Government will be prepared to make a discovery production to the defendant.

1

In support of its motion, the United States sets forth as follows:

1. On May 21, 2025, a federal grand jury returned an Indictment charging the defendant with various violations of federal law, including Conspiracy to Transport Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i); and Unlawful Transportation of Undocumented Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i), and Title 18, United States Code, Section 2. As described below, these charges stem from the defendant's alleged involvement in a large-scale alien smuggling enterprise (the "Enterprise"), which, according to witness statements, potentially transported members of transnational criminal organizations to further the Enterprise's objectives. The Government submits that some members of the Enterprise have not yet been identified and/or are not in custody but may be referred to in the Government's discovery materials (either by name, nickname, or other identifier).

2. This prosecution is the product of a multi-agency investigation into the years-long activities of a human smuggling conspiracy in the Middle District of Tennessee and elsewhere. The discovery in this case includes reports prepared by law enforcement agents; statements and interviews of witnesses; audio/video recordings; photographs; search warrants; and other records.

3. Significantly, the discovery includes sensitive information, including information revealing the identity of potential minors and other individuals and witnesses. Indeed, the charges at issue by nature implicate the victims' privacy and safety rights. The federal Crime Victims' Rights Act, 18 U.S.C. § 3771 *et seq.*, imposes obligations on courts to ensure the rights of crime victims to be reasonably protected from the defendant and to be treated with dignity and respect for their privacy throughout the proceedings. 18 U.S.C. § 3771(a)(1), (8). A protective order

governing discovery dramatically minimizes the risk of unauthorized access and public exposure of the personal and sensitive information contained therein, particularly in a case involving the commercial smuggling of illegal aliens. Such exposure, even if inadvertent, significantly reduces a witness' willingness to testify at trial, dissuades other witnesses from coming forward, and negatively impacts the public's confidence that the legal system will treat crime victims with "fairness" and "respect to [their] dignity and privacy" as the law requires. *See* 18 U.S.C. § 3771(a)(8).

4. For the purposes of this Motion the defendant's "criminal defense team" includes only the attorneys listed as counsel of record in this case, their law firms, and investigators and/or experts retained by the defendant in his defense against the charges in the Indictment. The defendant's "criminal defense team" does not include any other attorney or other person working on his behalf on any other legal matter to which he is or may become a party.

5. The Government has concerns that if the defendant in this case is provided with copies of certain materials to retain for himself, these materials could be disclosed to or circulated among third parties inside or outside the facility where the defendant is currently being held or, to the extent the defendant is released pending trial in connection with this case, disclosed to or circulated among third parties not in custody. Dissemination of these materials outside the criminal defense team could result in the intimidation of, or retaliation against, potential Government witnesses.

6. Additionally, the Government is aware that this case has received significant media attention and is concerned that without a protective order, sensitive discovery materials may be

3

disseminated to the media which may impact the Government's and the defendant's right to a fair trial.

7. The Government therefore respectfully requests that the Court enter its proposed protective order permitting members of the criminal defense team to review the discovery materials with the defendant but preventing any member of the criminal defense team from providing the defendant, or anyone who is not a member of his criminal defense team, with copies of any discovery materials to retain for themselves.

8. The Government also respectfully requests that the Court enter its proposed protective order prohibiting the defendant or his criminal defense team in this case from otherwise disseminating any discovery materials to any other person outside of his criminal defense team.

9. The Government also respectfully requests that the Court enter its proposed protective order prohibiting the public filing of discovery materials as exhibits or attachments to public filings and prohibiting the naming of individuals contained in the discovery in public documents. The Government proposes that, should non-law enforcement witnesses, need to be discussed in public filings that initials be used with care taken not to identify the individual by other contexts such as (but not limited to) where they live, their relationship to other individuals (familial, romantic, etc.), or discussion of special characteristics that would lead a reader to readily discern their true identity.

10. The Government will provide discovery watermarked with the number "1" and the date it was produced.

11. Nothing in this proposed protective order prevents the criminal defense team from reviewing these materials with the defendant. As noted, however, no such materials may be left

4

with the defendant. The defendant shall be allowed to make handwritten notes during their review of these materials with his counsel. Any and all notes made by the defendant during his review of the discovery materials must be secured and maintained by the defendant's criminal defense team and cannot be left with the defendant or in any detention facility.

12. Federal Rule of Criminal Procedure 16(d)(1) provides, in pertinent part, that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." And it is settled that trial courts maintain significant flexibility in employing protective orders that restrict the use of materials produced in discovery. *See Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."); *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005) (observing that defendants "have no right to extended independent review of [Jencks Act] materials in the privacy of their cells"); *United States v. Salemme*, 978 F. Supp. 386, 389-90 (D. Mass. June 26, 1977) (limiting dissemination of discovery materials to certain authorized individuals). Trial courts, moreover, routinely tailor protective orders to limit the dissemination of discovery to minimize the risks that dissemination of such information poses to the safety of potential witnesses. *See*, *e.g.*, *United States v. Dent*, No. SACR 16-00029(B)-CJC, 2017 WL 1025162, at *3-5 (C.D. Cal. Mar. 15, 2017) (declining to lift protective order preventing counsel from providing copies of discovery to defendant for defendant's retention where government showed that potential dissemination of such discovery posed a threat to witnesses and their families); *United States v. Mitchell*, No. 1:15-cr-00040-JAW-3, 2016 WL 7076991, at *1-4 (D. Maine Dec. 5, 2016) (issuing protective order preventing counsel

5

from providing copies of discovery to defendant for defendant's retention, given concerns that such material could be disseminated by gang members and used to intimidate witnesses); *United States v. Johnson*, 191 F. Supp. 3d 363, 369-371 (M.D. Penn. May 11, 2016) (declining to rescind protective order in part to protect cooperating witnesses and confidential investigative techniques); *United States v. Cordova*, 806 F.3d 1085, 1090-91 (D.C. Cir. 2015) (defendant suffered no prejudice from the district court's protective order precluding defendant from possessing copies of Jencks material when defendant was allowed advanced receipt of, and defense counsel had full access to, the Jencks material); *United States v. Palmer*, No. 10 Cr. 910(JSR), 2011 WL 672412, at *1 (S.D.N.Y. Feb. 14, 2011) ("[Jencks material] is often copied, passed around prisons throughout the country, and used to retaliate against cooperators.") (citations omitted); *United States v. Guerrero*, No. 09 CR 339, 2010 WL 1506548, at *13 (S.D.N.Y. Apr. 14, 2010) (precluding defendant from possessing any Jencks material in any jail facility except that defendant may review Jencks material in the possession of defense counsel and in the presence of defense counsel in order to protect government witnesses.); *United States v. Barbeito*, No. 2:09-cr-00222, 2009 U.S. Dist. LEXIS 102688, at *7-8 (S.D. W. Va. Oct. 30, 2009) ("It is appropriate . . . to employ Rule 16(d) protective orders to curtail the public dissemination of sensitive discovery materials that may endanger witnesses or informants."); *United States v. Scott*, No. 1:05-CR-443-11, 2008 WL 4372814, at *1-2 (M.D. Pa. Sept. 19, 2008) ("[C]areful restriction on the use of [Jencks Act] material . . . warranted, considering the wide dissemination of [Jencks Act] materials within the prison system and the possibility that hard evidence of cooperation with the Government can facilitate witness intimidation or retaliation.").

13.     The Government thus respectfully requests that the Court exercise its discretionary power and issue the attached Protective Order restricting the dissemination of discovery in this case in a manner that preserves the defendant's ability to review discovery materials but also ensures the privacy and safety of potential witnesses in this case.

## CONCLUSION

WHEREFORE, for the reasons described above, the United States respectfully requests that this Court grant this motion and issue the attached proposed Protective Order.

Respectfully submitted,

*/s/ Robert McGuire*
ROBERT McGUIRE
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

7