IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:25-cr-00115 |
| | ) | |
| KILMAR ARMANDO ABREGO GARCIA | ) | JUDGE CRENSHAW |
| | ) | |

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTION FOR REVOCATION**

The United States submits this reply to Defendant Kilmar Abrego Garcia's Opposition to the Government's Motion for Revocation, (Docket No. 79). For the reasons outlined in the United States' opening brief (Docket No. 70), and as further emphasized herein, this Court should revoke the Magistrate Judge's release order, which denied the Government's motion for pretrial detention. (Docket No. 43).

Defendant Kilmar Abrego Garcia should be detained pending trial because there is no combination of bail conditions that can reasonably assure either the safety of the community or the defendant's appearance in future court proceedings. In finding to the contrary, the Magistrate Judge's opinion committed numerous factual and legal errors, and nothing in the defendant's opposition can justify the Magistrate Judge's flawed analysis. Rather, the defendant now asks this Court to adopt a wholly unprecedented legal standard that has never been applied in the bail hearing context, which even the Magistrate Judge declined to apply to this case. Additionally, the defendant tries and fails to justify the Magistrate Judge's problematic approach to the overwhelming evidence that the Government presented at the detention hearing, which compellingly demonstrated that the

defendant should be detained. For these reasons, the Court should revoke the Magistrate Judge's release order and grant the Government's motion for pretrial detention.

**A.  The Defendant's Requested Legal Standard for Detention Hearings is Wrong and Completely Unprecedented.**

To begin with, the defendant claims that *United States v. Fields*, 53 F.4th 1027 (6th Cir. 2022) is "recent" and "binding" precedent from the Sixth Circuit that "dictates a contrary result" here. (Docket No. 79 at 12). This claim about the applicable law is misleading and completely off the mark. The Sixth Circuit's statutory interpretation in *Fields* related to a completely different statute—the Armed Career Criminal Act, 18 U.S.C. § 924(e)—and applied an elements-based approach to the sentencing enhancement statute, finding that the term "involves" in 18 U.S.C. § 924(e) means "necessarily entails." 53 F.4th at 1048, 1056. Importantly, the Sixth Circuit has never extended *Fields* to cases involving the Bail Reform Act, and courts have continued to apply *Fields* within its limited scope to the sentencing context. *See, e.g., United States v. Jamison*, 85 F.4th 796, 800 (6th Cir. 2023) (citing *Fields* as precedent to use the categorical approach when determining whether a prior conviction qualifies as a violent felony or serious drug offense); *United States v. Brown,* No. 21-1663, 2023 WL 1861318, at *8-9 (6th Cir. Feb. 9, 2023) (analyzing a serious drug felony under the First Step Act and declining to apply *Fields* to a different sentencing enhancement). Other circuits and district courts have also referenced *Fields* in that same limited scope. *See United States v. Miles*, 75 F.4th 1213 (11th Cir. 2023) (citing *Fields* as an example to apply the narrower standard to determine what constitutes a serious drug offense); *United States v. Paladin*, No. 09-cr-186, 2024 WL 4851313 (D.N.H. Nov. 21, 2024) (citing *Fields* for distinctions between felony drug convictions and serious drug felony

2

convictions); *United States v. Ruiz*, No. 1:21-cr-00426, 2023 WL 3871721 (N.D. Ga., Mar. 27, 2023) (citing *Fields* for when increased punishments should apply in a drug case); *United States v. Delpriore*, 662 F. Supp. 3d 1021 (D. Alaska, Mar. 20, 2023) (citing *Fields* for the validity of the § 851 sentencing enhancement).  Not a single court in the country—not even Magistrate Judge Holmes in her release order—has adopted the strict elements-based approach of *Fields* for its analysis about what the term "involves" means as it pertains to 18 U.S.C. § 3142(f).  Meanwhile, courts across the country have routinely applied the persuasive analysis in *United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019).  To the Government's knowledge, not a single court has ever declined to follow *Watkins*'s reasoned analysis, until the Magistrate Judge's opinion in this case.

To accept the defendant's interpretation of the statute would lead to wildly inconsistent and absurd results, including different meanings of the term "involved" between 18 U.S.C. § 3142(c)(1)(B) and 18 U.S.C. § 3142(f)(1)(E).  940 F.3d at 166-67.  As *Watkins* rightly points out, if Congress wanted courts to apply an elements-based approach to 18 U.S.C. § 3142(f), it could have specifically done so.  *See id.* at 166 n.70 (explaining that other sections of the Bail Reform Act use the phrases "that has an element" or "that, by its nature, involves").  Additionally, if the Court were to accept the defendant's invitation to import an elements-based analysis into the Bail Reform Act, it would significantly hamstring the Court's ability to detain violent criminals who are charged with dangerous offenses. Importing the *Fields* rule into 18 U.S.C. § 3142(f), for example, would mean that the Government would be unable to seek detention for violent shooters who are charged with being a felon in possession of ammunition, 18 U.S.C. § 922(g), merely because the elements

of the offense do not "necessarily involve" a firearm. *See id* at 167. ("Here, the conduct underlying Watkins's possession-of-ammunition charge plainly involved the use of a firearm. After all, Watkins discharged no fewer than nine bullets from an illegally possessed firearm."). Or, perhaps more relevantly here, it would mean that a defendant who deliberately victimizes a minor—for example, by intentionally defrauding a child, *see* 18 U.S.C. § 1343—could argue that their crime did not "involve" a minor because the statutory offense does not require that the victim be a child. That result, which is irrational on its face, would also be contrary to the fact-based nature of the Bail Reform Act inquiry in every other respect. It would make no sense for factors like the defendant's family ties, medical history, employment, and so forth to turn on the real-world *facts* relating to those factors, whereas consideration of the offense conduct would be abstracted to the statutory elements. The Bail Reform Act asks courts to consider who the defendant is and what he or she is alleged to have done, and that inquiry is possible only if the Court looks beyond the bare elements of the charged statutes. This Court should reject the defendant's nonsensical and dangerous request to improperly restrict the Court's ability to detain defendants under the Bail Reform Act.

## B. The Evidence Overwhelmingly Shows that the Defendant Should be Detained

More fundamentally, the defendant's opposition fails to justify the Magistrate Judge's improper and speculative findings about the reliability of the Government's evidence and failure to evaluate the evidentiary record as a whole. The defendant argues that the Court in a bail proceeding need not credit evidence that is unreliable, or otherwise accept a "confluence of weak evidence that, even taken together, fails to reach a preponderance."

4

(Docket No. 79 at 16-17). But that is *not* the factual record that was put before the Magistrate Judge at the detention hearing in this case. Rather, the Government's proof at the detention hearing was overwhelming, corroborated, and otherwise uncontradicted by anything else in the record.

For example, the Magistrate Judge found that the Government failed to prove by a preponderance of the evidence that the human smuggling crimes charged in the Indictment involved any minor victims. But as the Government pointed out in its opening brief, there was a wealth of evidence demonstrating that this years-long human smuggling operation involved minor victims, including, among other things: (1) testimony from multiple cooperating witnesses who directly participated in the human smuggling operation with the defendant for years and discussed minor victims being transported; (2) specific testimony from cooperating witnesses about how the defendant acted sexually inappropriate towards female minor victims; (3) the defendant used his own children as cover during the trips; (4) testimony from NV, who told the Government that the defendant solicited nude images from her when she was only 15 years old and also solicited her to participate in the alien smuggling scheme; and (5) testimony and physical evidence from a traffic stop in Tennessee demonstrating that a 15-year old was being smuggled during that trip. (*See* Docket No. 70 at 21-23). Based on this proffered evidence, the Government at a minimum should have been granted the right to a detention hearing under 18 U.S.C. § 3142(f).

Like the Magistrate Judge's opinion, the defendant attempts to downplay the significance of perhaps the most powerful evidence against the defendant—multiple accomplice witnesses who will testify about participating in the human smuggling operation

with the defendant for years. (*See* Docket No. 79 at 17-18). But as the Court is well aware, testimony from accomplice witnesses can be highly probative given their ability to tell the jury about their first-hand knowledge of the defendant's participation in the charged offenses. For this reason, the Sixth Circuit has repeatedly held that "the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985); *see also United States v. Scott*, 716 F. App'x 477, 485 (6th Cir. 2017) (citing *Gallo*). Months in advance of a trial, the Magistrate Judge had no reason to discredit the proffered testimony from cooperating witnesses that the human smuggling operation involved minor victims, particularly given that the testimony on this point was corroborated in numerous respects, with no evidence in the record whatsoever to the contrary. (*See* Docket No. 70 at 26-29). The Magistrate Judge's opinion essentially faulted the Government for failing to call its cooperating witnesses to testify at a hearing, merely to be granted the right to seek a detention hearing.

Finally, in addition to be consistent with the evidence introduced at the hearing, it is also consistent with common sense that minor victims, including unaccompanied minors, were smuggled as part of this sprawling human smuggling operation. The Indictment alleges that the charged human smuggling operation began at least in or around 2016 and continued for nearly a decade until in or around 2025. (Docket No. 3 at ¶ 1). During this timeframe, the human smuggling operation smuggled "thousands of undocumented aliens" for profit. (Docket No. 3 at ¶ 7). The Magistrate Judge's opinion implies that not a single minor victim was ever smuggled as part of this operation for nearly a decade. Not a single minor victim, despite the hundreds of thousands of unaccompanied minors that have been

6

encountered at the southwest border during that time frame.[1]   On its face, that proposition

is facially incredible.   Simply put, the Magistrate Judge's factual findings were completely

inconsistent with the weight of the evidence and simple common sense.

The Magistrate Judge's findings regarding the defendant's danger to the community

and risk of flight suffered from the same flaws.   The Government presented evidence at the

detention hearing relating to the defendant's possession of guns during the smuggling

conspiracy, his sexual advances towards minor girls, his solicitation of child pornography

from a 15-year old girl, his disturbing history of domestic violence and abuse, obstruction-

related conduct during the course of the conspiracy, false statements to law enforcement,

and membership in MS-13—a violent and dangerous transnational criminal enterprise.

(*See* Docket No. 70 at 32-37).   Based on the full and complete record, the Court cannot be

reasonably assured here that the defendant will refrain from committing additional crimes

and otherwise appear for all court proceedings in this case, especially given the potential

penalties and likelihood of deportation that he faces.   In suggesting that the Court can rule

otherwise, the defendant attempts to explain away or downplay the impact of each individual

piece of evidence in isolation.   But the record here, when viewed in its totality, compellingly

shows that the defendant should be detained pending trial.   As the Government intends to

once again show during the hearing scheduled for July 16, 2025, the evidence shows that

---

[1] *See* CBP Data on Southwest Land Border Encounters, available at
https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-fy22 (last visited
on July 11, 2025) (indicating that there were 152,057 unaccompanied minors encountered
at the border in FY 2022 and 146,925 unaccompanied minors encountered at the border in
2021).

there is no set of bail conditions that can reasonably assure the safety of the community or the defendant's appearance in court.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court revoke the magistrate judge's order of release.

Respectfully Submitted,

 */s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN   37203

*/s/ Jacob Warren*
Jacob Warren
Co-Director, Task Force Vulcan

*/s/ Christopher Eason*
Christopher Eason
Co-Director, Task Force Vulcan

*/s/ Jeremy Franker*
Jeremy Franker
Deputy Director, Task Force Vulcan