# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

## KILMAR ARMANDO ABREGO GARCIA'S NOTICE OF SUPPLEMENTAL INFORMATION RELEVANT TO MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION

Kilmar Armando Abrego Garcia respectfully submits this supplemental notice, providing the Court with additional facts relevant to his recent motion to dismiss. These recent developments, which occurred after the motion was filed, offer further support for the motion.

On Tuesday, Mr. Abrego moved to dismiss the Indictment pending against him on grounds of vindictive and selective prosecution. (Dkt. 104).[1] In the days afterwards, the government took further coercive actions that leave little doubt that the entire federal government is engaged in a coordinated effort to punish Mr. Abrego for fighting back against its unlawful conduct.

On Wednesday, it became clear that Mr. Abrego would be released at the end of the week. At Judge Holmes's request, the government confirmed that it had no objection to the Court's permitting him 48 hours to travel home to Maryland upon the expiration of a stay of his release set for Friday, August 22, 2025. (*See* Dkt. 108). The government and Mr. Abrego then informed Judge Holmes of the plan to ensure Mr. Abrego's release and return to Maryland.

Late Thursday evening, in a last-ditch effort to forestall that release, the government informed Mr. Abrego's counsel that if Mr. Abrego agreed to extend the stay of his release to Monday, August 25, 2025, and plead guilty to both counts of the Indictment, then the government would promise to deport Mr. Abrego to Costa Rica after serving any sentence imposed by the Court. In conjunction with that proposal, the government produced a letter to Mr. Abrego's counsel confirming that he could live freely in that country, which would accept him as a refugee or grant him residency status, and promise not to refoul him to El Salvador. (*See* Ex. B).[2] Mr. Abrego did

---

[1] Capitalized terms and record citations have the meanings assigned in footnote 1 of Mr. Abrego's moving brief.

[2] The defense ordinarily would seek to seal documents like this, which would seem to be highly sensitive and confidential. But the government, as part of its retribution campaign against Mr. Abrego, has been freely leaking information to the press about its every move. *See, e.g.*, Camilo Montoya-Galvez, *Kilmar Abrego Garcia Could Be Deported to Uganda, Official Says*, CBS News (Aug. 22, 2025), https://www.cbsnews.com/news/kilmar-abrego-garcia-could-be-deported-to-

2

not agree to extend the stay, but counsel informed Mr. McGuire that it would, of course, communicate the government's proposal to Mr. Abrego.

Friday afternoon, Mr. Abrego was released. (*See* Dkt. 112). The government immediately responded to Mr. Abrego's release with outrage. DHS issued a press release blaming Judge Xinis—the District of Maryland Judge presiding over Mr. Abrego's civil case, the success of which precipitated this case—personally for "allowing…a known MS-13 gang member, human trafficker, wife beater, and child predator to walk free on U.S. streets," citing screenshots of random documents as evidence of its claims, and quoting Secretary Kristi Noem's separately issued statement promising that the government would "not stop fighting till this Salvadoran man faces justice and is OUT of our country."[3] And the same drive for retribution that fueled this criminal case evidently caused a dramatic change in the government's position with respect to third-country removal. Despite having requested and received assurances from the government of Costa Rica that Mr. Abrego would be accepted there, within minutes of his release from pretrial custody, an ICE representative informed Mr. Abrego's counsel that the government intended to deport Mr. Abrego to Uganda and ordered him to report to ICE's Baltimore Field Office Monday

---

uganda/ (reporting that a "senior Department of Homeland Security official" had informed CBS of the notice DHS sent to Mr. Abrego's counsel that he would be removed to Uganda); *see also* Laura Romero et al., *Trump Administration May Attempt to Deport Abrego Garcia to Uganda: Sources*, ABC News (Aug. 22, 2025), https://abcnews.go.com/US/costa-rica-accept-abrego-garcia-conclusion-criminal-sentence/story?id=124897725 (noting the Costa Rica letter was leaked to ABC News).

[3] Press Release, Dep't of Homeland Sec., Secretary Noem Condemns the Release of Kilmar Abrego Garcia, a MS-13 Gang Member, Human Trafficker, Wife Beater, and Child Predator (Aug. 22, 2025), https://www.dhs.gov/news/2025/08/22/secretary-noem-condemns-release-kilmar-abrego-garcia-ms-13-gang-member-human. These kinds of inflammatory and prejudicial statements violate Local Criminal Rule 2.01(a) and jeopardize Mr. Abrego's right to a fair trial. (*See* Dkt. 94, Dkt. 98).

morning. (*See* Ex. C, Ex. D).[4]

The only thing that happened between Thursday—Costa Rica—and Friday—Uganda—was Mr. Abrego's exercise of his legal entitlement to release under the Bail Reform Act and the Fifth Amendment. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Indeed, the government has done more than just offer these two options in isolation. On Friday evening, the government informed Mr. Abrego that he has until first thing Monday morning—precisely when he must report to ICE's Baltimore Field Office—to accept a plea in exchange for deportation to Costa Rica, or else that offer will be off the table forever. There can be only one interpretation of these events: the DOJ, DHS, and ICE are using their collective powers to force Mr. Abrego to choose between a guilty plea followed by relative safety, or rendition to Uganda, where his safety and liberty would be under threat.

Mr. Abrego has previously explained that this case was part of a larger strategy to retaliate against him for challenging his illegal deportation to El Salvador. (*See* Dkt. 104). That motion did nothing to chasten the government or forestall its retaliatory conduct. These latest moves punish Mr. Abrego further, this time for "exercising [his] constitutional and statutory right[]" to release from pretrial detention, which the Fifth Amendment forbids. *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort…and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional."). Heightening the

---

[4] The defense has been engaged in preliminary plea discussions with the government, in which the government has proposed that Mr. Abrego plead guilty to all counts in exchange for a promise to be deported to a safe country in the Western Hemisphere where he would have status and be at liberty. Mr. Abrego has had little choice but to participate in those discussions, because of the fear that the government would do exactly what it has now expressly proposed to do, and deport him somewhere far more dangerous absent his agreement to plead guilty.

4

constitutional concern, the government has engaged in these tactics through two agencies—DOJ and DHS—that it has previously represented were "separate agenc[ies] with separate leadership [and] separate direction" that could not control one another. (*See* Dkt. 62 at 49). But these two agencies are obviously working in lockstep to coerce Mr. Abrego into accepting a guilty plea in his criminal case, holding over his head the prospect of possible indefinite detention—or worse—in a country halfway across the world.[5] It is difficult to imagine a path the government could have taken that would have better emphasized its vindictiveness. This case should be dismissed.

---

[5] The blatant, coercive coordination between DOJ and DHS eviscerates the government's previous assertion that one agency cannot tell the other "what to do" and that each agency must "attend to their specific duties as governed by the appropriate law"—including DHS proceeding with detaining and removing Mr. Abrego. (Dkt. 65 at 2). The government made similar misrepresentations in the Maryland case, where it claimed that decisions about third countries are not and cannot be made until a person is taken into ICE custody. (D. Md. Dkt. 234).

In prior cases in this Circuit and elsewhere, courts have required the government to choose between prosecuting a criminal case and taking a defendant into immigration custody pending removal. *See, e,g.*, *United States v. Garcia*, No. 18-CR-20256, 2018 WL 3141950 (E.D. Mich. June 27, 2018). The Sixth Circuit rejected that practice in *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018), relying explicitly on the premise that there were "two Article II agencies navigating their own competing statutory requirements while an Article III adjudication commences," *id.* at 267. Given the seemingly unprecedented, coercive, and vindictive coordination among the nominally separate Article II agencies here, *Veloz-Alonso* may very well be distinguishable. As a result, Mr. Abrego is evaluating whether the conduct described here would support a supplemental emergency motion to forestall his removal or otherwise sanction the prosecutorial misconduct he is being subjected to.

Dated: August 23, 2025               Respectfully submitted,
       New York, New York

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker