**From:** Rascoe Dean <rdean@srvhlaw.com>
**Sent:** Tuesday, July 29, 2025 10:05 PM
**To:** McGuire, Robert (USATNM) <Robert.McGuire@usdoj.gov>
**Cc:** Sean Hecker <shecker@heckerfink.com>; Jenna Dabbs <jdabbs@heckerfink.com>; David Patton <dpatton@heckerfink.com>; Warren, Jacob (NSD) <Jacob.Warren2@usdoj.gov>; Eason, Chris (USATXE) <Chris.Eason@usdoj.gov>; Franker, Jeremy (CRM) <Jeremy.Franker@usdoj.gov>; Harley, Jason (USAOKW) <Jason.Harley@usdoj.gov>
**Subject:** [EXTERNAL] Kilmar Abrego Garcia: Updated Draft Plea Agreement

Hi Rob,

Thanks again for sending over a draft plea agreement last week. Attached for your review is an updated draft of the agreement, as well as a redline of our edits to the original draft. These documents reflect several substantive changes to the agreement. Specifically, we have edited the plea agreement as follows:

- As part of the agreement, Mr. Abrego will plead to Count Two, and the government will move to dismiss Count One at sentencing.
- We have narrowed the factual basis to reflect Mr. Abrego's plea to Count Two only.
- Instead of including no agreement as to the guidelines range, we have proposed a stipulated post-acceptance offense level of 11 and CHC of I, which yields a stipulated guidelines range of 8-14 months. Because we're contemplating a Rule 11(c)(1)(B) agreement, the stipulated guidelines range would obviously only be binding on the parties.
- We added language in Paragraph 18 regarding "diplomatic assurances" from any third country regarding Mr. Abrego having permanent resident status and being allowed to live safely and freely there. We may propose adding additional language to the "Immigration Consequences" section as third-country negotiations progress.

We welcome your feedback on these changes. Also, we will try to share a list of preferable North and Central American countries with you as soon as we can.

Thanks,

Rascoe



1600 West End Avenue, Suite 1750
Nashville, TN 37203

**Rascoe Dean**
rdean@srvhlaw.com
Direct: (615) 742-4536  Main: (615) 742-4200
Fax: (615) 742-4539

Sherrard Roe  |  V-Card



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:25-cr-00115 |
| v. | ) |
| | ) Judge Crenshaw |
| KILMAR ARMANDO ABREGO GARCIA | ) |

PLEA AGREEMENT

The United States of America, by and through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, and Department of Justice Joint Task Force Vulcan Attorneys Jacob Warren, Chris Eason, Jeremy Franker, and Jason Harley, and the defendant, Kilmar Armando Abrego Garcia, by and through the defendant's counsel, Sean Hecker, Jenna Dabbs, David Patton, and Rascoe Dean pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1. The defendant has been charged in the Indictment in this case with the following offenses which carry the following penalties:

    a. Count One: Conspiracy to unlawfully transport illegal aliens for financial gain in violation of Title 8, United States Code Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i) – a maximum term of ten years' imprisonment, a maximum fine of $250,000, and a maximum term of three years of supervised release.

    b. Count Two: Unlawful transportation of illegal aliens for financial gain in violation of Title 8, United States Code Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i) – a

GOVERNMENT
EXHIBIT
5

maximum term of ten years' imprisonment , a maximum fine of $250,000, and a maximum term of three years of supervised release.

2. The defendant must pay upon conviction a $100 special assessment for each felony count to which the defendant pleads guilty, pursuant to Title 18, United States Code, Section 3013.

3. As part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order the defendant to pay restitution to any victim of the offense, as required by law.

4. The defendant has read the charges against the defendant contained in the Indictment. Those charges have been fully explained to the defendant by the defendant's attorneys. The defendant fully understands the nature and elements of the crimes with which the defendant has been charged.

<u>Charges to Which the Defendant is Pleading Guilty</u>

5. By this Plea Agreement, the defendant agrees to enter a voluntary plea of guilty to ~~Counts One~~Count and Two of the Indictment. After sentence has been imposed on the ~~counts~~count to which the defendant pleads guilty as agreed herein, the government will move to dismiss Count One and the allegation of forfeiture in the Indictment.

<u>Factual Basis</u>

6. The defendant will plead guilty because the defendant is in fact guilty of the charges contained in ~~Counts One and~~Count Two of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish the defendant's guilt beyond a reasonable doubt:

> ~~As to Count One, beginning in approximately 2015, the defendant, Kilmar Armando Abrego Garcia, agreed with Co-Conspirator 1 ("CC1") and others to provide unlawful transportation to illegal aliens for financial gain in the Middle District of Tennessee and elsewhere.~~

2

~~During the course of the conspiracy, Co-Conspirator 6 ("CC6"), who was a foreign national living in Guatemala, would contract with the members of the conspiracy to transport aliens from Mexico, Central America, and other foreign countries, across the U.S.-Mexican border. The co-conspirators would then transport those aliens further within the United States. All of the aliens transported by this conspiracy entered the United States unlawfully.~~

~~Specifically, CC6 would contact CC1 or CC2 and inform them that aliens who had recently and unlawfully crossed the border into the United States were available to be picked up in Houston, Texas. Once alerted, CC1, CC2, and other members of the conspiracy would arrange for those aliens to be transported by car from Houston to further into the United States. As a part of the conspiracy, the defendant was paid to drive aliens from Houston, Texas further into the United States and regularly to Maryland. During the course of the conspiracy, the defendant and other co-conspirators transported minors who were not accompanied by a parent, adult relative, or legal guardian. During the course of the conspiracy, the defendant transported 100 or more unlawful aliens.~~

~~During the course of the conspiracy, the defendant knew that the aliens he conspired to transport and that he personally transported were unlawfully in the United States at the time of the transportation. Further, the defendant transported those aliens within the United States with the intent to further each alien's unlawful presence; that is, the defendant intended to transport the aliens from Texas to a location in the United States (i.e. Maryland) where those aliens would have more resources to further maintain their unlawful presence within the United States. Finally, during the course of the conspiracy, the defendant transported aliens for the purpose of financial gain because he was being paid by other members of the conspiracy to transport aliens unlawfully in the United States. During the course of and in furtherance of the conspiracy, the defendant regularly transported aliens through the Middle District of Tennessee.~~

Regarding Count Two in the Indictment, on November 30, 2022, the defendant was stopped for speeding by the Tennessee Highway Patrol (THP) on interstate I-40 in Putnam County, Tennessee which is in the Middle District of Tennessee. The defendant was transporting nine passengers all of whom he knew were aliens who were unlawfully present within the United States. The vehicle the defendant was driving had a additional row of seats that had been added ~~by the co-conspirators~~ after the vehicle was manufactured and this additional row did not have seatbelts. When confronted by the THP trooper about where he had been traveling from the defendant stated: "St. Louis, Missouri." This was a knowing false statement. The defendant also told the THP trooper that all of the men in the vehicle, including himself, were construction workers who had been doing a construction job in St. Louis, Missouri. This was also a knowing false statement. In fact, the defendant was transporting the passengers, all of whom he knew were unlawfully in the United States, from the Houston, Texas area to Maryland. To accomplish this, the defendant used a route that included travel through the Middle District of Tennessee – all ~~–~~to further the aliens' unlawful presence in the United States and for his own financial gain. During this traffic

3

stop, the defendant had $1400 in cash in an envelope on his person and this cash was his payment for the trip.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for the defendant's plea of guilty and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgement and Waivers Regarding Plea of Guilty: Trial Rights</u>

7. The defendant understands that by pleading guilty the defendant waives and surrenders certain trial rights, including the following:

   a. If the defendant persisted in a plea of not guilty to the charge(s), the defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if the defendant, the government, and the Court all agreed to have no jury.

   b. If the trial were a jury trial, the jury would be composed of twelve laypersons. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be instructed that the defendant is presumed innocent; that the government bears the burden of proving the defendant guilty of the charge[s] beyond a reasonable doubt; and that the jury must consider each count of the Indictment against the defendant separately.

c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses, and the defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e. At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from the defendant's refusal to testify.

8. The defendant understands that, by pleading guilty, the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights, and the consequences of the defendant's waiver of those rights, to the defendant.

Sentencing Guidelines Calculations

9. The parties understand that the Court is required to consider the United States Sentencing Guidelines (hereinafter "U.S.S.G~~.")~~," or "Guidelines"), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), in determining the defendant's sentence. ~~The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.~~

10. ~~The~~ Pursuant to U.S.S.G. § 6B1.4, the parties ~~have no agreement regarding the sentencing guidelines calculation~~hereby stipulate to the following:

a. Offense Level

5

i. The November 1, 2024 Guidelines manual applies in this case~~, other than that the defendant will be entitled to a reduction~~.

ii. The Guideline applicable to the offense charged in ~~the defendant's~~ Count Two of the Indictment is U.S.S.G. § 2L1.1. Pursuant to U.S.S.G. § 2L1.1(a)(3), the base offense level ~~for acceptance of responsibility.~~ is 12.

iii. Pursuant to U.S.S.G. § 2L1.1(b)(2)(A), a three-level increase is warranted because the offense involved the transporting of between six and 24 unlawful aliens.

~~10.~~iv. Assuming the defendant clearly demonstrates acceptance of responsibility~~, to the satisfaction of the government,~~ through ~~the defendant's~~ his allocution and subsequent conduct prior to the imposition of sentence, a ~~2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the defendant qualifies for a decrease under U.S.S.G. § 3E1.1(a), has an offense level of 16 or more prior to the operation of U.S.S.G. § 3E1.1(a), and has given timely notification of the defendant's intention to enter a plea of guilty, the United States will move for an additional one-level decrease in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1(b~~two-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a).

v. Pursuant to U.S.S.G. § 4C1.1(a), the offense level is decreased by two levels because the defendant has zero criminal history points and meets all the other criteria in that section.

vi. In accordance with the above, the applicable Guidelines offense level is 11.

b. Criminal History Category

i. The defendant has zero criminal history points, and the defendant's Criminal History Category is I.

c. Sentencing Range

i. Based upon the calculations set forth above, the parties stipulate that defendant's Guidelines range is 8 to 14 months' imprisonment (the "Stipulated Guidelines Range").

11. The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant is also aware that the Stipulated Guidelines range is binding on the United States, and on the defendant, but is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office.

Agreements Relating to Sentencing

7

12. <u>Sentencing Recommendation</u>. Each party is free to recommend whatever sentence it deems appropriate. The defendant understands that the defendant's request is not binding on the Court and, after considering the defendant's Sentencing Guidelines, the Court may impose the maximum penalties set forth above. The defendant understands further that the defendant will not be permitted to withdraw the defendant's guilty plea if the Court does not adopt the defendant's request. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and accept the plea agreement and enter an order reflecting the acceptance of both the plea and this plea agreement.

13. Additionally, and as part of the defendant's plea agreement in this case, the defendant and the United States agree that, upon completion of any ordered sentence, he will be deported to a third country as further described elsewhere in this agreement.

<u>Fines</u>

14. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

15. The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which the defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

Presentence Investigation Report/Post-Sentence Supervision

16. The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

Consequences of Certain Convictions: Immigration Consequences

18. As part of this plea agreement the United States has agreed, upon completion of any ordered sentence, to remove the defendant to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] and to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] only. The United

9

States represents and warrants that it has received diplomatic assurances from [THIRD COUNTRY/LIST OF THIRD COUNTRIES] that (a) the defendant will be at liberty and will have permanent resident status in [THIRD COUNTRY/LIST OF THIRD COUNTRIES] and (b) [THIRD COUNTRY/LIST OF THIRD COUNTRIES] will not remove the defendant to El Salvador or to any other third country without the defendant's consent.

19. The defendant, based on the agreements described above and at the time of the entry of his plea agreement, hereby agrees to consent to removal from the United States to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] upon completion of any ordered sentence. The defendant agrees to waive all rights relating to any and all forms of relief from removal to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] only, and to cooperate with the Department of Homeland Security during removal proceedings to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] only.

20. Defendant agrees to the entry of a stipulated judicial order of removal pursuant to Title 8, United States Code, Section 1182 to [THIRD COUNTRY/LIST OF THIRD COUNTRIES]. Specifically, defendant admits that he is not a citizen of the United States and that he is removable to a country other than El Salvador pursuant to Title 8, United States Code, Sections 1227(a)(2)(A)(iii) and consents to his removal to [THIRD COUNTRY/LIST OF THIRD COUNTRIES].

21. As part of this agreement, defendant specifically acknowledges and states that defendant has not been persecuted in, and has no present fear of persecution in [THIRD COUNTRY/LIST OF THIRD COUNTRIES] on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, defendant further

acknowledges and states that defendant has not been tortured in, and has no present fear of torture in [THIRD COUNTRY/LIST OF THIRD COUNTRIES].

22.     After consultation with counsel and understanding the legal consequences of doing so, defendant knowingly and voluntarily waives the right to notice and hearing provided in Title 8, United States Code, Section 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] as described above. Defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act ("INA"), on the question of the Defendant's admissibility into and removability from the United States to [THIRD COUNTRY/LIST OF THIRD COUNTRIES] only. Defendant further understands the rights defendant would possess in a contested administrative proceeding and waives these rights, including his right to examine the evidence against him, to present evidence on his behalf, and to cross-examine the witnesses presented by the Government.

<u>Waiver of Appellate Rights</u>

23.     Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crime(s) to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the Court-determined guidelines range. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255

and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the Court-determined guidelines range.

## Other Terms

24.  This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

25.  Defendant expressly acknowledges that Defendant is not a "prevailing party" within the meaning of 18 U.S.C. § 3006A with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this Plea Agreement. If Defendant is represented by retained counsel, Defendant voluntarily, knowingly, and intelligently waives any rights Defendant may have to seek reasonable attorney's fees and other litigation expenses under 18 U.S.C. § 3006A.

26.  Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

## Conclusion

27. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:25-cr-00115.

28. The defendant and all the defendant's attorneys acknowledge that no threats have been made to cause the defendant to plead guilty.

29. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

30. The defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

31. The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement.

32. <u>The Defendant's Signature:</u> I hereby agree that I have consulted with my attorneys and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorneys. I understand this Plea Agreement, and I voluntarily agree to it.

Date: _____    _____
                   KILMAR ARMANDO ABREGO GARCIA
                   The Defendant

33. <u>Defense Counsel Signature:</u> I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to the defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: _____    _____
                   SEAN HECKER
                   Attorney for the Defendant

Date: _____    _____
                   JENNA DABBS
                   Attorney for the Defendant

Date: _____    _____
                   DAVID PATTON
                   Attorney for the Defendant

Date: _____    _____
                   RASCOE DEAN
                   Attorney for the Defendant

Respectfully submitted,

_____
ROBERT E. McGUIRE
Acting United States Attorney
Middle District of Tennessee

_____

14

JACOB WARREN  
U.S. Department of Justice  
Co-Director, Task Force Vulcan

_____  
CHRIS EASON  
U.S. Department of Justice  
Co-Director, Task Force Vulcan

_____  
JEREMY FRANKER  
U.S. Department of Justice  
Deputy Director, Task Force Vulcan

_____  
JASON HARLEY  
U.S. Department of Justice  
Trial Attorney Task Force Vulcan