IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S STATUS REPORT**

In accordance with the Scheduling Order entered on August 7, 2025 (Dkt. 103), Defendant Kilmar Armando Abrego Garcia, by and through undersigned counsel, respectfully submits this status report and states as follows:

**1.     Mr. Abrego's Review of Discovery**

To date, the government has provided discovery to the defense through three productions—made on July 10, September 10, and September 12, 2025—in addition to exhibits and discovery produced separately in relation to the June 13 and July 16 detention hearings.

Defense counsel continue to review discovery with Mr. Abrego, who has only been able to review a portion of the discovery to date. The belated and incomplete nature of the government's discovery productions, combined with substantial limitations on the defense's ability to meet with Mr. Abrego largely because of the government's decision to arrest him and detain him in the Farmville Detention Center in Virginia ("Farmville"), pending immigration proceedings, have made it difficult for Mr. Abrego to review the discovery in this case.

Pace of the Government's Productions

The government has produced discovery at a slow pace. Defense counsel sent a formal discovery request to the government on July 13 and a follow up on August 27, 2025. The government did not respond to those requests until September 12, 2025, two days after it began producing additional discovery, much of which seemingly should have been produced long before. The defense is continuing its efforts to confer with the government to address several outstanding discovery requests and issues concerning the government's recent productions, and to clarify whether the government anticipates producing any additional discovery. If the parties reach an impasse, the defense may seek relief from the Court.

Complications Created by Mr. Abrego's Detention at Farmville

As the Court is aware, Mr. Abrego has been detained at Farmville since August 25, 2025. Farmville is a CoreCivic detention facility that houses Immigration and Customs Enforcement ("ICE") detainees and is not a criminal detention facility. Several limitations at Farmville are severely prejudicing Mr. Abrego's ability to review discovery and prepare for trial.

First, the government has elected to detain Mr. Abrego at a relatively remote facility hundreds of miles from defense counsel's offices in Nashville and New York. That decision technically complies with an order issued by Judge Xinis in Maryland requiring Mr. Abrego to be detained in a facility within 200 miles of the United States Courthouse in Greenbelt, Maryland—Farmville is about 180 miles from that courthouse—but has the effect of making it both difficult and expensive for counsel to meet with Mr. Abrego.

Second, in-person legal visits can be scheduled for only two hours at a time. This limitation on the length of legal visits impedes the defense's ability to meet with Mr. Abrego to review discovery and prepare for trial. Mr. Abrego has been able to review only a small portion of

discovery during each visit. And under the current Protective Order (Dkt. 77), Mr. Abrego is not permitted to retain the vast majority of discovery materials and is therefore unable to review discovery on his own time.

Third, defense counsel have not been permitted to bring laptops or any electronic devices to in-person visits with Mr. Abrego. As such, Mr. Abrego has been unable to review (and unless Farmville eases this restriction, will likely *never* be able to review) the substantial electronic discovery produced by the government, which includes body-worn camera and dash camera footage, subpoena returns produced only in digital format (e.g., .html files), and approximately 150 hours of recorded jail calls.

Fourth, the defense has been denied adequate private space to meet with Mr. Abrego. At each of the defense's pre-scheduled in-person legal visits so far, counsel have initially met Mr. Abrego in the center of a large common room filled with other detainees, with a detention officer stationed inside the room. Each time, defense counsel have requested private space suitable for a privileged conversation with counsel, and have been permitted to meet privately with Mr. Abrego only on one side of a small non-contact visitation booth connected to the common room by a door with a large glass window. These non-contact visitation booths are divided by a glass panel, and ordinarily the detainee and visitor sit on opposite sides of the glass panel. There is insufficient space on one side of this cramped, non-contact visitation booth for defense counsel to meet with Mr. Abrego and review discovery, which currently must be shown to Mr. Abrego in paper form because electronic devices are not permitted. The non-contact visitation booth also does not allow for adequate privacy for conversations with counsel. Mr. Abrego and his counsel can see and hear detainees in the common room, and counsel have been unable to speak at a normal volume for fear of staff or detainees overhearing privileged conversations. Moreover, at defense

counsel's most recent visit, Farmville staff warned that a non-contact visitation booth might not even be available for the duration of counsel's visit with Mr. Abrego—notwithstanding the fact that counsel had booked a legal visit—because the booth had been booked for another meeting. Defense counsel's meeting with Mr. Abrego was thankfully not interrupted, but counsel remain concerned about their ability to secure even this limited private space for meeting with Mr. Abrego going forward.

The defense has raised these issues with Acting U.S. Attorney McGuire, who in turn has conveyed them to certain unspecified representatives of the Department of Homeland Security ("DHS"). In a normal circumstance, one would expect that a federal law enforcement agency, having been notified by a federal prosecutor that a criminal defendant in its custody does not have adequate access to his criminal counsel, would recognize the significance of the problem and move quickly to remedy it. Unfortunately (and unsurprisingly, given the government's illegal conduct towards Mr. Abrego over the past six months), DHS did no such thing here, and has instead taken the position that it will not modify any of the procedures for ICE detainees at Farmville so that Mr. Abrego—who is of course also a federal criminal defendant—can prepare for trial in this case. DHS's inflexible and uncooperative approach to this issue defies reason, not to mention Judge Holmes' explicit order that "the United States, specifically, but without limitation, ICE authorities, Department of Homeland Security officials, and/or Department of Justice officials, shall ensure that, while Abrego remains in ICE custody, he has access to his attorneys, both physically and via telephone, to allow Abrego to prepare for trial in this case." (Dkt. 112 at 2).

DHS recently suggested that defense counsel could try to schedule multiple two-hour in-person visits with Mr. Abrego on the same day, but this does not appear to be a viable solution because the page for scheduling legal visits at Farmville warns users that "you may only book a

visit per detainee a day. If you book a visit with a specific detainee more than once a day, the Farmville Detention Center reserves the right to cancel your visit for the day."[1] Given this clear warning, defense counsel are not inclined to attempt to schedule more than one visit with Mr. Abrego per day without further assurance from the government and DHS that multiple visits will be permitted (indeed, Mr. McGuire has conveyed that he does not know whether DHS's suggestion will work in practice).

Although the defense can schedule virtual legal visits with Mr. Abrego over Zoom, these virtual visits are no substitute for in-person meetings and have not been without their own challenges. Virtual legal visits can be scheduled for only one hour at a time, meaning only a small amount of discovery can be reviewed at each meeting. Visitation slots are also booked out well in advance. On one occasion, Mr. Abrego did not show up for a scheduled virtual visit due to issues with Farmville's phone systems. On another occasion, the virtual meeting was mired by internet connectivity issues as the Zoom call often froze, which made it very difficult to review discovery or engage in a substantive conversation with Mr. Abrego.

Because the government has not been able to address these issues adequately, defense counsel seek the Court's assistance in ensuring that Mr. Abrego has access to counsel to allow him to review discovery and prepare for trial. Mr. Abrego respectfully requests that the Court order the government to: (i) permit defense counsel to bring laptops to in-person meetings at Farmville; (ii) allow the defense to schedule, at a minimum, four-hour long in-person visits with Mr. Abrego to maximize visitation time given the significant travel involved to reach Farmville, and two-hour long virtual visits with Mr. Abrego; and (iii) provide a private room, not half of a non-contact visitation booth, suitable for having privileged conversations, reviewing discovery, and preparing

---

[1] *Visitation Scheduling*, Abyon, https://www.abyonllc.com/visitation-scheduling.

5

Case 3:25-cr-00115   Document 124   Filed 09/19/25   Page 5 of 10 PageID #: 1436

for trial. Where, as here, "ICE jeopardizes a district court's ability to try a defendant by placing the defendant in immigration detention or removing him, 'the district court may craft an appropriate remedy.'" *United States v. Calderon-Lopez*, No. CR-19-03027, 2020 WL 2616034, at *3 (D. Ariz. May 22, 2020) (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015)). None of Mr. Abrego's requested accommodations would impose a significant burden on Farmville's operations as a civil detention facility. And without an improvement in Mr. Abrego's ability to access counsel, the defense is concerned that it may not be feasible to complete review of discovery with Mr. Abrego and adequately prepare for the trial given the current trial date of January 27, 2026.

### 2. Defendant's Communication with Counsel

Other than the in-person and virtual visitation issues identified above, Mr. Abrego's communication with counsel has been effective for both Mr. Abrego and his counsel.

### 3. Impediments To Preparation for Trial

As explained above, the primary impediment to Mr. Abrego's preparation for trial is the inability of defense counsel to have adequate time, space, or access to electronic devices to meet with Mr. Abrego, review discovery, and prepare for trial.

### 4. Anticipated Pretrial Motions

Mr. Abrego is evaluating potential pretrial motions and intends to file, at a minimum, pretrial motions including one or more suppression motions, and motions in limine, consistent with the deadlines set forth in the Scheduling Order.

### 5. Additional Issues for the Court

The defense has been monitoring improper extrajudicial statements made by the government since Mr. Abrego filed his Motion in Support of Issuance of Order Requiring Department of Justice and Department of Homeland Security Officials to Refrain From Making

6

Case 3:25-cr-00115   Document 124   Filed 09/19/25   Page 6 of 10 PageID #: 1437

Prejudicial Extrajudicial Statements on August 28, 2025. (Dkt. 118). Recent inflammatory and prejudicial statements include a press release from DHS Secretary Kristi Noem complaining about how CBS edited her interview and thereby "deprived the American people from hearing the truth about MS-13 gang member Kilmar Abrego Garcia"[2]; a post on the official DHS X account stating that Mr. Abrego is a "gang member, human trafficker, serial domestic abuser, and child predator" and that "America is a safer nation without him in it"[3]; and another post on the DHS X account sharing a screenshot of correspondence from Mr. Abrego's immigration proceedings with the caption "Homie is afraid of the entire western hemisphere."[4] The government surely has the ability to ask that DHS remove these improper public statements. Indeed, recently in an opposition to a motion to restrain DHS from making extrajudicial statements signed by Deputy Attorney General Todd Blanche, the United States Attorney's Office for the District of New Jersey stated that it had "communicated with DHS to request that DHS remove the postings to which [the] [d]efendant objects." *United States v. McIver*, No. 25-cr-388 (D.N.J. Sept. 15, 2025), Dkt. 27 at 78. There is no reason the government cannot do the same here. In any event, the government has refused to respond to defense counsel's correspondence seeking information about the government's efforts to comply with the Court's prior orders about Local Criminal Rule 2.01 and requesting retraction

---

[2] Press Release, Dep't of Homeland Sec., CBS Deceptively Edits Secretary Noem's Answers, Cutting More than 23% of Footage from Face the Nation Interview (Aug. 31, 2025), https://www.dhs.gov/news/2025/08/31/cbs-deceptively-edits-secretary-noems-answers-cutting-more-23-footage-face-nation. Assistant Attorney General for the Civil Rights Division Harmeet Dhillon also reposted a tweet by Secretary Noem complaining that "CBS shamefully edited the interview to whitewash the truth about this MS-13 gang member and the threat he poses to American public safety." Secretary Kristi Noem (@Sec_Noem), X (Aug. 31, 2025, at 4:49 p.m.), https://x.com/Sec_Noem/status/1962256536475926676; *see* Harmeet K. Dhillon (@harmeetkdhillon), X (Aug. 31, 2025), https://x.com/harmeetkdhillon.
[3] Homeland Security (@DHSgov), X (Aug. 30, 2025, at 1:25 p.m.), https://x.com/DHSgov/status/1961842724774047906.
[4] Homeland Security (@DHSgov), X (Sept. 5, 2025, at 6:31 p.m.), https://x.com/DHSgov/status/1964094013654397306.

of inflammatory comments made by Secretary Noem. Nor has the government responded to Mr. Abrego's motion within the fourteen-day period to oppose it.[5] Mr. Abrego reiterates his request that the Court issue an appropriate order, for the reasons outlined in the pending motion.[6]

### 6. Status Conference

The defense believes that a status conference is not necessary to address the aforementioned issues and appreciates the Court's attention to these concerns.

Dated: September 19, 2025  
      New York, New York

Respectfully submitted,

/s/ Sean Hecker  
Sean Hecker*  
Jenna M. Dabbs*  
David Patton*  
HECKER FINK LLP  
350 Fifth Avenue, 63rd Floor  
New York, NY 10118  
Telephone: (212) 763-0883  
Fax: (212) 564-0883  
shecker@heckerfink.com  
jdabbs@heckerfink.com  
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)  
SHERRARD ROE VOIGT & HARBISON PLLC

---

[5] The Acting U.S. Attorney has suggested that while he would like government officials to stop making prejudicial statements about Mr. Abrego, the prosecutors on this case cannot control sitting cabinet secretaries and other high-level Executive Branch officials who view making prejudicial (and the defense would add, defamatory) statements about Mr. Abrego as part of their jobs. The question of whether a cabinet secretary's job includes defaming an individual is entirely irrelevant to this federal criminal proceeding and—more importantly—to the question of whether the government is respecting Mr. Abrego's constitutional rights. That is to say, the government's reference to Executive Branch officials' purported jobs does nothing to excuse, or otherwise explain away, its complete disregard for Mr. Abrego's constitutional right to a fair trial and the failure of the prosecutors in this case to do *anything* up to this point to discourage government officials from making prejudicial extrajudicial statements about Mr. Abrego.

[6] Mr. Abrego is willing to file a supplemental submission regarding these developments, in addition to including them here in this status report, should the Court find that would be helpful to resolving his pending motion.

1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker