# Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

shecker@heckerfink.com

July 13, 2025

**BY EMAIL**

Robert E. McGuire
Acting United States Attorney
United States Attorney's Office
719 Church Street
Nashville, Tennessee 37203

      Re:  *United States v. Garcia*, No. 3:25-cr-115 (M.D. Tenn.)

Dear Mr. McGuire,

  Pursuant to the Federal Rules of Criminal Procedure, applicable case law including *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the Court's June 6, 2025 Order pursuant to the Due Process Protections Act, Pub L. No. 116-182, 134 Stat. 894 (2020), and Federal Rule of Criminal Procedure 5(f) (ECF 12) (the "June 6 Order"), and consistent with due process requirements, Defendant Kilmar Armando Abrego Garcia requests the production of all discovery, including, but not limited to, the materials described below. We have received an initial production from the government, we understand that further productions may be forthcoming, and we may have additional requests in the future.

  To the extent that certain of the requests apply to information or disclosures that concern trial testimony or other information that the government does not now have in its possession, custody, or control, we request that such information or disclosures be produced as soon as the government comes into possession, custody, or control of such information or disclosures. Each of the following requests is of a continuing nature and calls for supplementation as soon as the government discovers additional responsive evidence, information, or material.

  1. <u>Mr. Abrego's Prior Record</u>: Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(D), Mr. Abrego requests that the government provide a copy of any prior criminal record of Mr. Abrego, which is within the government's possession, custody, or control or which the government through the exercise of due diligence could know exists.

  2. <u>Mr. Abrego's Alien and EARM Files</u>:  Mr. Abrego requests his complete Alien File or "A-File." Mr. Abrego also requests his complete Enforcement Alien Removal Module File or "EARM File."

3. <u>Statements</u>:

    a. The substance of any relevant oral statements made by Mr. Abrego, before or after arrest, in response to interrogation by a person Mr. Abrego knew was a government agent, if the government intends to use the statement at trial, pursuant to Rule 16(a)(1)(A);

    b. Mr. Abrego's written or recorded statements that are within the government's possession, custody, or control, if the United States Attorney's Office knows, or through due diligence could know, that the statements exist, pursuant to Rule 16(a)(1)(B)(i);

    c. The portion of any written record containing the substance of any relevant oral statement made before or after arrest if Mr. Abrego made the statement in response to interrogation by a person Mr. Abrego knew was a government agent, pursuant to Rule 16(a)(1)(B)(ii);

    d. Mr. Abrego's recorded testimony before a grand jury relating to the charged offenses, pursuant to Rule 16(a)(1)(B)(iii);

    e. Statements of alleged co-conspirators, which the government may assert are admissible under Federal Rule of Evidence 801(d)(2)(E), including, but not limited to, statements of CC-1, CC-2, CC-3, CC-4, CC-5, and CC-6 as identified in the Indictment (ECF 3);

    f. Statements of government witnesses who have testified on direct examination pursuant to, and as limited by, Federal Rule of Criminal Procedure 26.2;

    g. Catch-All Hearsay Exceptions: Federal Rule of Evidence 807 requires notice of hearsay testimony, which an adverse party seeks to offer under the catch-all exception.

4. <u>Documents and Objects</u>: Rule 16(a)(1)(E) requires that the government, upon request, permit Mr. Abrego to inspect and copy any books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items within the government's possession, custody, or control where (i) the item is material to preparing the defense, *i.e.*, it will "help [Mr. Abrego] combat the government's case against him" as to the charged crimes, *see United States v. Harney*, 934 F.3d 502, 508 (6th Cir. 2019); (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to Mr. Abrego.

Pursuant to Rule 16(a)(1)(E), Mr. Abrego requests the opportunity to inspect and copy any items within the government's possession, custody, or control, which fall within the scope of the Rule, including, but not limited to, all records relating to the November 30, 2022 traffic stop, including photographs purportedly taken during that traffic stop and the alleged "passenger roster" created during that traffic stop;

       license plate reader data for the car Mr. Abrego was allegedly driving on November 30, 2022 and any other vehicles the government alleges Mr. Abrego used; records of the purported "law enforcement stop and citation" in Virginia, *see* United States' Motion to Revoke the Magistrate Judge's Order of Release (ECF 70) at 8-9 & n.11; records concerning Mr. Abrego's membership, or lack of membership, in MS-13 or any other criminal organization; and call records.

5. <u>Digital Media</u>: Pursuant to Rule 16(a)(1)(E), Mr. Abrego requests the opportunity to inspect and copy digital media within the government's possession, custody, or control, which fall within the scope of the Rule, including, but not limited to, any digital media collected from co-conspirators, informants, or cooperating witnesses.

6. <u>Reports of Examinations and Tests</u>: Pursuant to Rule 16(a)(1)(F), Mr. Abrego requests the opportunity to inspect and copy the results or reports of any physical or mental examination or scientific test or experiment as provided for in the Rule.

7. <u>Expert Witnesses</u>: Pursuant to Rule 16(a)(1)(G), Mr. Abrego requests disclosure of any expert witnesses, a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C) the bases and reasons for those opinions, the witnesses' qualifications, including a list of all publications authored in the previous 10 years, and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

8. <u>Electronic Surveillance and Recorded Statements</u>: Mr. Abrego requests all evidence derived from electronic surveillance and all statements made by Mr. Abrego and any alleged co-conspirators, including, but not limited to, CC-1, CC-2, CC-3, CC-4, CC-5, and CC-6 as identified in the Indictment (ECF 3), during tape-recorded, wiretapped, or eavesdropped conversations. This request includes disclosure of any logs, tapes, transcripts, notes, and memoranda of any such conversations.

9. <u>Arrest Reports, Notes, or Any Recording</u>: Mr. Abrego requests any arrest or investigation reports, notes, and any recording of his arrests in March 2025 and June 2025 and any questioning.

10. <u>Disclosure of Informants or Cooperating Witnesses</u>: Pursuant to Federal Rules of Criminal Procedure 12 and 16, *Brady*, the June 6 Order, and other applicable case law, Mr. Abrego requests information regarding the informants or witnesses who provided information in this case. This information should include, at a minimum, the identity and location of any informants or cooperating witnesses, including, but not limited to, CW-1, CW-2, NV, CW-3, and CW-4 as identified in the United States' Motion to Revoke the Magistrate Judge's Order of Release (ECF 70).

11. <u>Promises and Plea Bargains of Government Witnesses</u>: Pursuant to Rules 12 and 16, *Brady*, *Giglio v. United States*, 405 U.S. 150, 154 (1972), and the June 6 Order, Mr. Abrego requests disclosure of any promises, whether express or implied, direct

or indirect, written or oral, of any benefit to be conferred on any government witnesses. Such promises include, but are not limited to, any monetary benefit, immigration benefits such as deferred action on deportation, and/or assurance not to prosecute or leniency to such persons and the substance of any statements or discussions regarding leniency, compensation, deferred action on deportation or other immigration benefit, or assurance not to prosecute. *See, e.g.*, United States' Motion to Revoke the Magistrate Judge's Order of Release (ECF 70) at 9 (CW-1 was moved to a halfway house and has been granted deferred action on deportation "so that he would be available as a witness at trial"); *id.* at 11 (NV "had previously been compensated in exchange for providing information to law enforcement"); June 13, 2025 Hearing Tr. 82-83 (CW-2 is applying for deferred action on deportation); *id.* at 74-75, 85 (CW-3 is seeking deferred action on deportation).

12. <u>Disclosure of Information Regarding Government Witnesses</u>: Pursuant to *Brady*, *Giglio*, and related authority, as well as the June 6 Order, and without limiting the requisite disclosures in any way, Mr. Abrego requests the following information regarding government witnesses:

    a. Witness names and addresses;

    b. Evidence of bias or motive to lie;

    c. Impeachment evidence;

    d. Evidence the government may offer pursuant to Federal Rules of Evidence 403 and 404(b);

    e. Evidence of any charges, indictments, criminal investigation, probation, parole, or offenses known to the government for which any witness or potential witness has not been charged;

    f. Evidence tending to show that any prospective witness's perception, recollection, ability to communicate, or tell the truth is impaired.

13. <u>Material Received from DHS</u>: Pursuant to *Brady*, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) and related authority, *see, e.g.*, *United States v. Palma*, No. 19-20626, 2020 WL 6743144, at *7-8 (E.D. Mich. Nov. 17, 2020); *United States v. Mills*, No. 16-CR-20460, 2019 WL 3423318, at *3 (E.D. Mich. July 30, 2019); *United States v. Gregory*, No. 2:05-CR-64, 2006 WL 8439328, at *2-3 (E.D. Tenn. Oct. 6, 2006), Mr. Abrego requests any and all materials received, or which may be received in the future, by your office from the Department of Homeland Security ("DHS") in connection with this matter, including, but not limited to, the April 17, 2025 Homeland Security Investigations Investigative Referral Report and other reports; material concerning Mr. Abrego's membership, or lack of membership, in MS-13 or any other criminal organization; and email, text messages, and other correspondence between DHS and the government, as well as notes or memoranda

of meetings, telephone conversations, video conferences, or any other mode of communication.

14. <u>Material Received from State and Local Law Enforcement Agencies</u>: Pursuant to *Brady*, *Kyles*, and related authority, including *Mills* and *Gregory*, Mr. Abrego requests any and all materials received, or which may be received in the future, by your office from all state and local law enforcement agencies, including, but not limited to, Tennessee Highway Patrol, Prince George's County Police Department, and Putnam County Police Department. Mr. Abrego requests any and all materials in connection with this matter, including, but not limited to, incident reports, email, text messages, and other correspondence between state and local law enforcement agencies and the government, as well as notes or memoranda of meetings, telephone conversations, video conferences, or any other mode of communication.

15. <u>Exculpatory and Impeaching Evidence</u>: Pursuant to *Brady*, *Giglio*, the June 6 Order, and related authority, Mr. Abrego requests any and all material known to the government, or which may become known to the government, or which through due diligence may be learned from the investigating officers of the government or the witnesses or persons having knowledge of this case, that is exculpatory in nature or favorable to Mr. Abrego or that may serve to mitigate punishment.

16. <u>*Jencks* Act Material</u>: Mr. Abrego requests pretrial production of material to which he is entitled pursuant to Rule 26.2 and the *Jencks* Act, 18 U.S.C. § 3500. To the extent *Jencks* Act material contains *Giglio* or other *Brady* material, we remind the government that the June 6 Order provides that such material must be disclosed "reasonably promptly upon discovery."

17. <u>Material Concerning the Inception or Progress of the Investigation and Prosecution</u>: Pursuant to *Brady*, Mr. Abrego requests any and all material concerning the inception and progress of any investigation in connection with this matter and the decision to prosecute this matter, including, but not limited to:

    a. Material concerning the predication and reasons for opening the investigation that led to the indictment, including, but not limited to, communications between the Department of Justice ("DOJ") and DHS, such as email, text messages, and other correspondence;

    b. Communications among DOJ, DHS, the State Department, and/or the White House about the inception or progress of the investigation, such as email, text messages, and other correspondence;

    c. Material concerning the decision made by the Federal Bureau of Investigation ("FBI") and/or Homeland Security Investigations ("HSI") in or around 2022 not to pursue any investigation or prosecution of the November 30, 2022 traffic stop;

    d. Material concerning the government's change in position and decision to prosecute this case;

    e. Material concerning negotiations and the decision to return Mr. Abrego to the United States after he was removed from the United States to El Salvador in March of 2025, including, but not limited to, communications among DOJ, DHS, the State Department, the White House, and/or the government of El Salvador, such as email, text messages, and other correspondence;

    f. Material concerning the departure of Ben Schrader, formerly the Chief of the Criminal Division of the U.S. Attorney's Office in Nashville, Tennessee, whose resignation was reportedly prompted "by concerns" that the instant case "was being pursued for political reasons."[1] *See, e.g.*, *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (allowing discovery in connection with vindictive prosecution claim); *United States v. Fieger*, No. 07-CR-20414, 2008 WL 205244, at *16 (E.D. Mich. Jan. 24, 2008), *as amended* (Feb. 1, 2008).

18. <u>Material Received from the Salvadoran Government</u>: Pursuant to *Brady*, Mr. Abrego requests any and all material in the government's possession, custody, or control received, or which may be received in the future, from the government authorities of El Salvador that is exculpatory in nature or favorable to Mr. Abrego or that may serve to mitigate punishment, including, but not limited to:

    a. Material concerning Mr. Abrego's detention in El Salvador from on or around March 15 to June 6, 2025, including, but not limited to, documents or communications concerning the conditions of confinement and any abuse, mistreatment, or torture;

    b. Material concerning Mr. Abrego's status as a member or non-member of MS-13 or other criminal organization, including, but not limited to, email, text messages, and other correspondence between the government and Salvadoran authorities, as well as notes or memoranda of meetings, telephone conversations, video conferences, or any other mode of communication[2];

    c. Material concerning negotiations to return Mr. Abrego to the United States after he was removed from the United States to El Salvador in March of 2025.

19. <u>Intelligence Regarding Mr. Abrego</u>: On April 11, 2025, Tom Homan, the White House Border Czar, stated that Mr. Abrego is "an MS-13 gang member, according

---

[1] *Kilmar Abrego Garcia brought back to US, appears in court on charges of smuggling migrants*, ABC News (Jun. 6, 2025), https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122.

[2] Prison officials at the Terrorism Confinement Center in El Salvador ("CECOT") acknowledged that Mr. Abrego's tattoos were not gang-related, telling him "your tattoos are fine." Proposed Amended Complaint ¶ 123, *Abrego v. Noem*, No. 8:25-cv-951 (D. Md. July 2, 2025), ECF 211-3. Unlike 12 individuals with visible gang-related tattoos who were moved to a different cell at CECOT, Mr. Abrego was not moved to that cell. *Id.* ¶ 122.

to our intelligence and even that of the intelligence of El Salvador."[3] Please produce any intelligence reports regarding Mr. Abrego's membership, or lack of membership, in MS-13 or any other criminal organization.

Thank you for your prompt attention to these requests.

                                          Very truly yours,

                                          Sean Hecker

---

[3] *Homan to Newsmax: Abrego Garcia has Himself to Blame*, Newsmax (Apr. 11, 2025), https://www.newsmax.com/newsmax-tv/homan-abrego-garcia/2025/04/11/id/1206624/.