IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:25-cr-00115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| | ) | |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

## GOVERNMENT'S STATUS REPORT

COMES NOW the United States of America, by and through Robert E. McGuire, Acting United States Attorney, and submits the following Status Report[1] pursuant to this Court's prior Order (DE # 140).

The United States submits that, after receipt of defense counsel's letter of July 17, 2025 (DE # 131-1 at 5-6), the United States previously responded, within the context of Rule 16 of the Federal Rules of Criminal Procedure, to Paragraph 17 as follows:

a. *Material concerning the predication and reasons for opening the investigation that led to the indictment, including, but not limited to, communications between the Department of Justice ("DOJ") and DHS, such as email, text messages, and other correspondence*;

- Provided, but noted that this request initially concerned the opening of the investigation in December 2022. All Reports of Investigation (ROIs) from Homeland Security Investigations (HSI) concerning the opening and re-opening of the investigation have been provided.

---

[1] The United States notes that the Court ordered a joint status report. However, after the parties' meet and confer, the parties respectfully submit that they can better frame their respective positions in separate status reports.

1

b. *Communications among DOJ, DHS, the State Department, and/or the White House about the inception or progress of the investigation, such as email, text messages, and other correspondence*;

- Not previously provided as not required under Rule 16 and subject to various privilege assertions.

c. *Material concerning the decision made by the Federal Bureau of Investigation ("FBI") and/or Homeland Security Investigations ("HSI") in or around 2022 not to pursue any investigation or prosecution of the November 30, 2022 traffic stop;*

- Provided.

d. *Material concerning the government's change in position and decision to prosecute this case;*

- The Government has previously provided HSI ROI's related to the closing of the case in 2025, materials related to the date the case was reopened by HSI, all ROIs concerning that reopening, and provided an affidavit describing the decision by the Acting United States Attorney to seek charges in this case. (DE # 121-1.)

e. *Material concerning negotiations and the decision to return Mr. Abrego to the United States after he was removed from the United States to El Salvador in March of 2025, including, but not limited to, communications among DOJ, DHS, the State Department, the White House, and/or the government of El*

2

*Salvador, such as email, text messages, and other correspondence*;

- Not previously provided under Rule 16 discovery and subject to various privilege assertions. However, the affidavit provided addresses that the Acting U.S. Attorney had no role in these international discussions. (DE # 121-1, ¶ 18.)

f. *Material concerning the departure of Ben Schrader, formerly the Chief of the Criminal Division of the U.S. Attorney's Office in Nashville, Tennessee, whose resignation was reportedly prompted "by concerns" that the instant case "was being pursued for political reasons."*

- Not previously provided under Rule 16 discovery, but information not subject to work product privilege will be provided. (See below for details.)

Based on the foregoing, and in light of the materials already provided to the Defendant, the United States submits that the following are areas which the United States believes are discoverable and prepared to produce (or aver that they do not exist by affidavit):

- The resignation email and resignation letter from Ben Schrader regarding his resignation from the U.S. Attorney's Office for the Middle District of Tennessee on May 21, 2025;
- The lack of correspondence (email, text, calls, etc.) between the undersigned Acting United States Attorney and the White House, the Secretary of Homeland Security, the Attorney General and/or the Office of the Attorney General, Deputy Attorney General, and the then-Principal Associate Deputy Attorney General.

3

- A supplemental affidavit from the undersigned about the contacts (if any) with senior DHS officials, senior DOJ officials, the government of El Salvador, and/or the White House at any time during this prosecution.

To this end, the Government submits that it is preparing an addendum to the affidavit previously filed which intends to response to some of the concerns raised in the Court's October 3rd order allowing discovery and an evidentiary hearing.

The parties met and conferred on October 7, 2025. The United States submits that the areas of disagreement regarding discovery include the following:

- Email, text, and other correspondence involving the Secretary of Homeland Security, the Attorney General, the Deputy Attorney General and/or the White House concerning the investigation into the Defendant's conduct and subsequent prosecution.
- Email, text, and other correspondence involving the Secretary of State, the Secretary of Homeland Security, the Attorney General, the Deputy Attorney General, and/or the White House with the government of El Salvador regarding the return of the Defendant from that country.

The United States would respectfully submit that most, if not all, of these documents will fall under the ambit of one or more privileges—*e.g.* attorney work product privilege, deliberative process privilege, executive privilege—that the United States would assert if ordered to produce these documents. *See generally Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534 (6th Cir. 2001); *Schell v. U.S. Dep't of Health & Human Servs.,* 843 F.2d 933, 939 (6th Cir. 1988); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *United States Fish & Wildlife*

4

*Serv. v. Sierra Club, Inc.,* 592 U.S. 261 (2021); *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997); *Trump v. Thompson*, 20 F.4th 10, 25-26 (D.C. Cir. 2021); *Judicial Watch, Inc. v. Department of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004). However, the United States also respectfully submits that they are not discoverable based on the Court's present inquiry.

As an initial matter, the Court's order setting the forthcoming status conference twice described the discovery on this issue to be one of a "narrow scope". (DE # 140.) The Court's order granting discovery also used the phrase "narrow scope" in describing discovery. (DE # 138, PageID # 1528.) The Government agrees that the scope of discovery should be narrow, not simply because of the issues of privilege at play, but because of the heart of what is at stake in the inquiry. The Court noted, for example, that comments by senior government officials "may come close to establishing actual vindictiveness, they fall short on the record before the Court because they require an inference tying them to the actual decisionmakers." *Id* at 1528. The United States submits that the undersigned Acting United States Attorney was the 'actual decisionmaker' here.

With that in mind, and to the Court's point, discovery should therefore focus narrowly on the communications (or lack thereof) between senior government officials (the Attorney General, the Deputy Attorney General, the Secretary of Homeland Security, etc.) and the Acting U.S. Attorney about the prosecution. A communication, for example, from the Secretary of Homeland Security (or her designee) directing the Acting United States Attorney to charge the case, threatening him with consequences if he did not, cajoling him, inveighing him, or otherwise attempting to inappropriately sway his judgement in prosecution matters would be discoverable (and highly probative).[2] Such communication, however—whether written, electronic, or oral—

---

[2] The Court notes: "The lesson from *Adams* is that the vindictive prosecution analysis is not so limited as to Acting U.S. Attorney McGuire, nor is it only limited to the DOJ." (DE # 138, PageID # 1525.) The United States submits that this is a true statement and took the Court to be conveying that there may be evidence of animus elsewhere in the wider Government and, correspondingly, some link between the actor expressing that animus – in DHS, DOJ, the

5

does not exist. Respectfully, the United States submits that any communications between senior government actors themselves about this case, but which did not influence the Acting United States Attorney because they did not reach him or were not communicated to him (i.e. not "tied to the actual decisionmaker"), would not be discoverable under the relevant Sixth Circuit case law, separate and apart from the privilege issues surrounding such communications.

Even under *United States vs. Adams*, which the Court cited with approval, the defense has to show, short of showing actual vindictiveness by the undersigned (which the defendant has already conceded is not the case), that someone "was able to prevail upon [the Acting U.S. Attorney] to institute a prosecution that would not have been undertaken" but for the Defendant's exercise of his right to sue. *Adams*, 870 F.2d 1140 (6th Cir. 1989). In short, malevolent intent by any other actor in desiring a vindictive charge is irrelevant under *Adams* if there is no evidence that such an actor actually "prevail[ed] upon" the prosecutor to bring the charge. The Court used the example "fruit of the poisonous tree" (DE # 138, PageID # 1525) as an illustration. However, to use the Court's example, if there is no proof that the "fruit" was connected to "the tree" nor suffered whatever "poison" existed in its branches, then it cannot carry any of the poisonous taint.

The United States respectfully submits that the discovery in this case should focus on *that* question, which was central in *Adams*: was the undersigned "prevailed upon" by another entity (the Department of Homeland Security, senior Justice Department officials, the President of the United States, etc.) to seek an indictment that otherwise would not have been brought? Undersigned counsel has already substantially answered that question—in a sworn affidavit—in the negative. (DE # 121-1, ¶ 48.) To the extent that the defense seeks to test that statement in order

---

White House, wherever – and the Acting U.S. Attorney, which would be relevant and probative. The Government agrees that if it is in possession of documents directing, imploring, bargaining, or threatening the Acting U.S. Attorney to prosecute this case, such a document would be discoverable and critical to the Court's inquiry. But if none exists, other communications unlinked to that decisionmaker, would not be.

6

to establish that, despite undersigned counsel's sworn statement, the true facts are that he was "prevailed upon" to seek an indictment in this case, the United States submits that the discovery the Government proposes would accomplish that. If there are emails, text messages, or the other communications from someone else (i.e. DHS, the White House, etc.) *directing* the undersigned to charge this case (or threatening him with consequences if he did not), then United States submits that they would be responsive to that inquiry. Undersigned counsel has already stated before this Court that he got no such direction (or threat) from the Department of Justice. However, undersigned counsel intends to submit a supplemental affidavit that he has had no such communications from any source: the Department of Homeland Security, the White House, or anyone.

    Undersigned counsel hopes that this Report will assist the Court in setting a "narrow scope of discovery" that is responsive to the Defendant's claims, protective of well-documented privileges, and assists the Court in appropriately deciding the inquiry.

Respectfully Submitted,

 /s/ Robert E. McGuire
ROBERT E. McGUIRE
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN 37203

 /s/ Jason Harley
JASON HARLEY
Task Force Vulcan

7