IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:25-cr-115 |
| KILMAR ARMANDO ABREGO GARCIA, | Judge Waverly D. Crenshaw, Jr. |
| *Defendant.* | |

**DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S RESPONSE TO THE GOVERNMENT'S STATUS REPORT**

This morning, the government filed a status report making arguments seeking to narrow or eliminate the discovery the Court granted on defendant Kilmar Armando Abrego Garcia's vindictive-prosecution motion. (Dkt. 147). Most of the government's arguments can be addressed in person, at our status conference before the Court tomorrow. We respectfully submit this response to address a single point raised in the government's submission, to advise the Court of relevant case law in advance of tomorrow's conference, in the hopes of making the conference more efficient.

The government claims that "most, if not all," of the documents relevant to Mr. Abrego's vindictive-prosecution motion "will fall under the ambit of one or more privileges—*e.g.* attorney work product privilege, deliberative process privilege, executive privilege—that the United States would assert if ordered to produce these documents." (Dkt. 147 at 4). These privileges are unavailable here as a matter of law, so the government's assertion that it will assert privilege should be rejected out of hand.

As an initial matter, none of those privileges are absolute. They are all so-called "qualified privileges" that can be—and are here—overcome. Indeed, many of the cases the government itself cites make clear that the asserted privileges do not apply under the circumstances of this case.

The work-product doctrine shields materials prepared by attorneys "in anticipation of litigation." *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir. 1976). But it gives way where (as here) the party seeking the materials has a "substantial need" for the materials and cannot obtain them through other means. *Id.*; *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii).

The deliberative process privilege is a form of executive privilege that protects certain government agency documents that are "predecisional," meaning "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," meaning they "reflect[] the give-and-take of the consultative process." *Norwood v. Fed. Aviation Admin.*, 993 F.2d 570, 576 (6th Cir. 1993) (cleaned up). The privilege is overcome "by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). And although the government's notice cited the D.C. Circuit's opinion in *In re Sealed Case* (Dkt. 147 at 5), it failed to note key language from the opinion about perhaps the paradigmatic showing of need for internal government deliberative documents: a preliminary showing of government misconduct. As that case explains: "[W]here there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *In re Sealed Case*, 121 F.3d at 738 (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)).

Finally, the executive privilege is a privilege "held by the Executive Branch…for the benefit of the Republic," and "safeguards the public interest in candid, confidential deliberations

within the Executive Branch." *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (internal quotation marks and citations omitted). As noted in *Thompson*—which the government relied on (Dkt. 147 at 5)—this too is a "qualified" privilege, that "may give way in the face of other strong constitutional values, such as the fundamental demands of due process of law in criminal trials." *Id.* (cleaned up). The law has long been clear that executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial." *United States v. Nixon*, 418 U.S. 683, 713 (1974).

Consistent with the qualified nature of these privileges, courts that have taken the rare step of ordering discovery into claims of vindictive or selective prosecution allegations have found that these privileges do not apply. For instance, in *United States v. Jarrett*, No. 03 Cr. 87, 2010 WL 1577670, at *3 (N.D. Ind. Apr. 20, 2010), the district court ordered discovery on a vindictive prosecution claim, rejecting the government's assertions of "deliberative process privilege, the work product doctrine, and attorney-client privilege." The court rejected the exact argument the government raises here, that the defendant was "barred from uncovering evidence" of the motives for the prosecution "due to various discovery privileges," reasoning that:

> Here, the Court is faced with an alleged constitutional violation; vindictive prosecution presents potential prejudice of great magnitude to Jarrett. The allegations Jarrett makes, for which this court has already found a "colorable" basis, are allegations founded on governmental misconduct. And thus, while the privilege has a sound basis in theory, that theory must be overridden in an instance such as this where the sole way for a defendant to prove his allegation of government misconduct (absent a public statement from the government) is through its recordkeeping and documents typically protected by the privilege.

*Id.* at *3-4; *see also United States v. Fieger*, No. 07 Cr. 20414, 2008 WL 205244, at *12-14 (E.D. Mich. Jan. 24, 2008) (finding for vindictive prosecution discovery that the "deliberative process [privilege] is overcome—the privilege is routinely denied—where there is a reason to believe the

documents sought may shed light on government misconduct" (internal quotation marks and citation omitted)).

More to the point, if these privileges could foreclose discovery in vindictive prosecution cases, they would operate to do so in every case, by definition—the discovery is *always* into the government's internal, deliberative process, conducted in anticipation of litigation, that led to criminal charges. *See United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (ordering discovery into "whether the EEOC, acting on an improper motive, induced the Department of Justice to institute a prosecution that would not otherwise have been undertaken"); *United States v. Zakhari*, 85 F.4th 367, 383-84 (6th Cir. 2023) (remanding for a "searching inquiry," and "full development," into government's charging decision). The Court noted this precise language from *Adams* in its order granting discovery in this case. (Dkt. 138 at 11-12). In the ordinary course, the discovery called for in *Adams* and *Zakhari* would almost certainly be subject to the deliberative process privilege and the work product doctrine (and potentially other privileges) as a technical matter, but for the Court's order authorizing discovery of those materials. If the *Adams* panel thought that such documents would be protected from discovery, it would have said so.

Likewise, in *Zakhari*, the Sixth Circuit ordered discovery into an allegedly vindictive charging decision—discovery plainly implicating the very same privileges the government seeks to assert here—concluding that the government bore the burden of rebutting the presumption of vindictiveness with objective, on-the-record explanations, subject to defense testing. *Zakhari*, 85 F.4th at 383-84. The government's position that it can claim privilege to avoid such disclosures is wholly inconsistent with the holdings of *Adams* and *Zakhari* and would require the Court to abdicate any oversight, in favor of deferring to the government's word. But the law is precisely the opposite: as Judge Kethledge explained in *Zakhari*, "[t]he prosecution is entitled to no

4

Case 3:25-cr-00115     Document 148     Filed 10/09/25     Page 4 of 6 PageID #: 1557

deference on questions of fact. Instead, the prosecution must come forward with evidence—which the district court, in the first instance, can find credible or not." *Zakhari*, 85 F.4th at 385 (Kethledge, J., concurring).

* * *

Ultimately, as the defense explained in its Status Report, to the extent the government maintains its position that it will not produce the relevant discovery, under a claim of privilege or otherwise, the government cannot rebut Mr. Abrego's demonstrated, *prima facie* case of vindictiveness, making dismissal of this case the only proper remedy. (Dkt. 146 at 3-4).

Dated: October 9, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker