IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
KILMAR ARMANDO ABREGO GARCIA'S MOTION TO STRIKE
SURPLUSAGE FROM THE INDICTMENT**

# **PRELIMINARY STATEMENT**

Kilmar Armando Abrego Garcia is charged in this case with conspiracy to transport undocumented aliens and transporting undocumented aliens. The Indictment, however, alleges much more: it includes paragraph after paragraph of irrelevant and inflammatory (and unfounded) allegations regarding Mr. Abrego's purported gang membership; narcotics and firearms trafficking; and abuse of female undocumented aliens. As Mr. Abrego has explained elsewhere, these allegations—some of which the Court has already rejected as "border[ing] on the fanciful" (Dkt. 95 at 32)—are part of the government's broader retribution campaign against Mr. Abrego, which has sought to paint him to the public as a "gang member" and "violent criminal" whom the government was right to unlawfully deport to El Salvador. (*See* Dkt. 138 at 4-5 (quoting statements by Executive Branch officials)). In this, the Indictment may serve the government's public-relations aims. But these irrelevant and prejudicial allegations have no place in this prosecution. They are quintessential surplusage and should be stricken.

"[T]he practice in this District is to read the Indictment to the jury and provide them with a copy." *United States v. Johnson*, 256 F. Supp. 3d 755, 762 (M.D. Tenn. 2017) (Crenshaw, J.). But providing *this* Indictment to the jury, which contains inflammatory surplusage, would unduly prejudice Mr. Abrego. He therefore respectfully requests that the Court strike from the Indictment: (1) allegations concerning MS-13 and Mr. Abrego's purported membership therein in paragraphs 5, 6, 7, 11, 16, 17, and 18; (2) allegations concerning narcotics and firearms trafficking in paragraphs 14 and 15; and (3) allegations of reports of Mr. Abrego's abuse of female undocumented aliens in paragraph 27.

## BACKGROUND

On May 21, 2025, Mr. Abrego was charged in a two-count Indictment. Count One charged Mr. Abrego with conspiring to transport aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and Count Two charged him with unlawfully transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). (Dkt. 3). Count One alleges that Mr. Abrego conspired with "CCs-1 through 6…to knowingly and in reckless disregard of the fact that certain aliens had come to, entered, and remained in the United States in violation of law, transport and move said aliens within the United States…with intent to further the unlawful presence of the aliens…for private financial gain." (*Id.* ¶ 9). Count Two alleges that on November 30, 2022, Mr. Abrego "knowing[ly] and in reckless disregard of the fact that certain aliens had come to, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States…with intent to further the unlawful presence of the aliens in the United States." (*Id.* ¶ 32).

The ten-page Indictment is riddled with allegations that have no relevance to those charges.

First, the Indictment alleges that Mr. Abrego was a "member and associate of the transnational criminal organization, La Mara Salvatrucha" ("MS-13"), and describes MS-13 in the following way:

> MS-13 was a criminal enterprise engaged in, among other activities, acts and threats involving murder, extortion, narcotics trafficking, firearms trafficking, alien smuggling, and money laundering. MS-13 operated throughout North and Central America, including in El Salvador, Guatemala, Mexico, the United States, including in Texas, Maryland, New York, Tennessee, and elsewhere.

(*Id.* ¶¶ 5-6). The Indictment alleges that Mr. Abrego "used his status in MS-13 to further his criminal activity," because "the co-conspirators…transported thousands of undocumented aliens…many of whom were MS-13 members and associates." (*Id.* ¶ 7; *see id.* ¶ 17). The Indictment further alleges that "undocumented aliens supplied by CC-6 included MS-13 members

and associates," (*id.* ¶ 11), that "[o]n some occasions, members and associates of MS-13 in Maryland accompanied [Mr. Abrego] on his trips to transport undocumented aliens," (*id.* ¶ 16), and that MS-13 members who were transported refused to pay CC-2 for transportation services but "generally treated [Mr. Abrego] with respect and also paid him for his transportation services," (*id.* ¶ 18).

Second, although Mr. Abrego is charged only with conspiracy to transport aliens and transportation of aliens, the Indictment alleges that Mr. Abrego also engaged in transporting firearms and narcotics. The Indictment alleges that Mr. Abrego, CC-1, and CC-2 "occasionally and simultaneously transported firearms illegally purchased in Texas for distribution and resale in Maryland," (*id.* ¶ 14), and that Mr. Abrego also "occasionally and simultaneously transported undocumented aliens and narcotics purchased in Texas for distribution and resale in Maryland," (*id.* ¶ 15).

Third, the Indictment contains allegations about Mr. Abrego's purported abuse of female undocumented aliens during smuggling trips. The Indictment alleges that CC-6 "received reports from undocumented aliens that [Mr. Abrego] had abused some of the female undocumented aliens" during trips, that CC-6 "reported these allegations of abuse…to both CC-1 and CC-2," and that "CC-6 directed CC-1 and CC-2 to cause [Mr. Abrego] to stop the abuse." (*Id.* ¶ 27).

## ARGUMENT

### I. Applicable Law

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Rule 7(d) authorizes the court to "strike surplusage from the indictment or information," Fed. R. Crim. P. 7(d), and "serves to 'protect the defendant against immaterial or irrelevant allegations in an indictment,…which may…be prejudicial,'" *Johnson*, 256 F. Supp. at 759 (quoting *United States*

3

*v. Berroa*, 856 F.3d 141, 157 (1st Cir. 2017)). The decision to "strike language from an indictment rests within the sound discretion of the district court." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).

Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). As the Court has held, a motion to strike surplusage from an indictment "should be granted only where it is clear that the allegations contained in the Indictment are not relevant to the charge made *or* contain inflammatory and prejudicial matter." *Johnson*, 256 F. Supp. at 759 (emphasis added). Although language in the indictment containing "information which the government hopes to properly prove at trial…cannot be considered surplusage," that language must still be "legally relevant." *See United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (quotations omitted).

The elements of the two counts contained in the Indictment are as follows. Count One requires that the government prove that: (1) two or more persons agreed to commit the crime of transporting aliens; (2) the defendant knowingly and intentionally became a member of the conspiracy; and (3) the defendant acted for the purpose of private financial gain. *See* 8 U.S.C. § 1324 (a)(1)(A)(v)(I) & (a)(1)(B)(i). Count Two requires that the government prove that: (1) an alien entered or remained in the United States in violation of the law; (2) the defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of the law; (3) the defendant transported the alien within the United States with intent to further the alien's unlawful presence; and (4) the defendant acted for the purpose of private financial gain. *See* 8 U.S.C. § 1324 (a)(1)(A)(ii) & (a)(1)(B)(i); *United States v. Mateo-Lucas*, No. 3:17-cr-79 (M.D. Tenn. July 15, 2025), Dkt. 141 at 108:22-109:15.

**II. The Court Should Strike Irrelevant Allegations and References to MS-13**

The defense moves to strike allegations and references to MS-13 throughout the Indictment, specifically in paragraphs 5, 6, 7, 11, 16, 17, and 18, because allegations of Mr. Abrego's purported MS-13 membership are both wholly irrelevant to the charged alien smuggling offenses and highly prejudicial.

The Sixth Circuit instructs trial courts to "treat evidence of gang affiliation with care since most jurors are likely to look unfavorably upon a defendant's membership in a…gang." *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001). Evidence of gang affiliation is "inadmissible if there is no connection between the gang evidence and the charged offense." *United States v. Ford*, 761 F.3d 641, 649-50 (6th Cir. 2014) (quoting *United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009)).

To be sure, in a conspiracy case, "[e]vidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case." *Id.* at 649. But Mr. Abrego's alleged membership in MS-13 has no connection whatsoever to the existence of the charged conspiracy or the relationship among the co-conspirators in this case. None of the co-conspirators are even alleged to be members of MS-13, or to have ever been involved in any MS-13-specific activity of the type referenced in paragraphs 5 and 6 of the Indictment. Indeed, there is no allegation that MS-13 members participated in the charged conspiracy to transport undocumented aliens. As a result, this case is unlike those in which the Sixth Circuit has held that gang membership is probative of the existence of the charged conspiracy and defendant's participation in that conspiracy. *See United States v. Williams*, 158 F. App'x 651, 653-54 (6th Cir. 2005) (evidence of defendant's gang membership was admissible as to drug trafficking conspiracy where government's theory was that "all gang members were engaged in the drug-trafficking conspiracy" and that "membership in the Vice Lords was synonymous with

5

membership in the conspiracy"); *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (gang affiliation was relevant where members of the gang were also involved in the charged drug trafficking conspiracy). Mr. Abrego's purported membership in MS-13 and details of MS-13's "criminal enterprise" are irrelevant where there are no allegations that "[the] gang was in any way involved in the crime[s]" charged. *United States v. Hendrix*, 52 F.3d 326, 1995 WL 218472 at *2 (6th Cir. Apr. 12, 1995) (unpublished table decision) (holding that photograph purportedly showing subjects making gang signal was irrelevant to firearms and narcotics offenses because there was no evidence that gang was involved in those crimes).

Allegations that Mr. Abrego and the co-conspirators transported MS-13 members are minimally relevant, if at all, to the charged offenses. The Indictment alleges that, on some occasions, some of the undocumented aliens transported by Mr. Abrego and his co-conspirators included MS-13 members and associates, and that MS-13 members "treated [Mr. Abrego] with respect and also paid him." (Dkt. 3 ¶¶ 16-18). These allegations are irrelevant to whether Mr. Abrego knowingly and intentionally joined a conspiracy to transport aliens and whether he did in fact transport aliens with the intent to further their unlawful presence. In contrast to *Johnson*, where the Court declined to strike allegations about gang membership with respect to firearms charges because the government asserted that two codefendants were members of the gang, and "their membership in that gang provided them with access to the…pistol," there are no allegations that Mr. Abrego's gang affiliation established his "opportunity to commit a crime." 256 F. Supp. 3d at 760 (quotations omitted). There is no claim, for example, that Mr. Abrego's purported MS-13 affiliation allowed him superior access to undocumented aliens to be smuggled—to the contrary, the Indictment alleges that "CC-6 was one of the primary sources of supply of undocumented

aliens for the conspiracy," and does not allege that CC-6 was a member of MS-13 or in any way affiliated with MS-13. (Dkt. 3 ¶ 11).

Given the vindictive nature of this prosecution, and the numerous extrajudicial statements of high-ranking officials falsely claiming that Mr. Abrego is a gang member, it is clear that the Indictment's allegations about MS-13 were included, wholly improperly, to inflame the jury and the public. Courts must "balance the probative value of the gang evidence as to opportunity against its potential for substantial prejudice." *United States v. Jobson*, 102 F.3d 214, 221-22 (6th Cir. 1996) (reversing conviction and remanding for new trial where "jury improperly considered the gang evidence on the direct issue of defendant's guilt"). Here, the allegations of MS-13 membership are no doubt highly prejudicial and inflammatory. The Indictment alleges that MS-13 was engaged in "murder, extortion, narcotics trafficking, firearms trafficking,…and money laundering" throughout North and Central America (Dkt. 3 ¶ 6), which bears no relevance to the charged alien smuggling offenses. *See United States v. Rios*, 830 F.3d 403, 421 (6th Cir. 2016) ("[T]here is a 'substantial risk of unfair prejudice attached to gang affiliation evidence,' for 'gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior.'" (quoting *United States v. Irvin*, 87 F.3d 860, 864-65 (7th Cir. 1996))). Allegations of MS-13 affiliation and criminal activities would "have a significant tendency to obscure and overwhelm the essential elements of the [human smuggling] charge[s]" and result in "substantial unfair prejudice" to Mr. Abrego. *United States v. Hamilton*, 574 F. Supp. 3d 461, 468 (E.D. Mich. 2021) (excluding evidence of gang affiliation). The Court should strike these allegations from the Indictment.

### III. The Court Should Strike Irrelevant Allegations of Transporting Firearms and Narcotics

The Court should strike paragraphs 14 and 15 of the Indictment because the allegations that Mr. Abrego, CC-1, and CC-2 transported illegally purchased firearms and narcotics are irrelevant to the charged offenses and are highly prejudicial.

In *Johnson*, this Court struck language referencing an uncharged murder from the indictment, because homicide was "not an essential element" of the charged crime of felon in possession of a firearm and would "only serve to inflame the passions and/or prejudices of the jury." 256 F. Supp. 3d at 761-62. Here, Mr. Abrego has not been charged with transportation of illegally purchased firearms or narcotics (or, for that matter, any firearm or narcotics-related offense), nor is the transportation of firearms and narcotics an essential element of conspiracy to transport or transportation of aliens. *See United States v. Woods*, 877 F.2d 477, 481 (6th Cir. 1989) (holding allegation in indictment that was not essential element of offense was surplusage). Moreover, just as "[u]ncharged murder evidence is highly prejudicial for obvious reasons," so too is evidence of narcotics and firearms trafficking likely to "inflame the jury" in a case that charges neither. *Johnson*, 256 F. Supp. 3d at 762; *see also United States v. Torres-Gonzalez*, 526 F. Supp. 2d 210, 212 (D.P.R. 2007) (striking references to prior conviction for a firearms offense from indictment because they served "no relevant purpose" and "if presented to the jury could color the jury's perception of [d]efendants' character"); *United States v. Miller*, 26 F. Supp. 2d 415, 420 (N.D.N.Y. 1998) (striking from indictment uncharged allegations of "confrontations" between "paramilitary group" and law enforcement, which were irrelevant to charged tobacco and cigarettes smuggling conspiracy, "highly prejudicial," and "improperly implie[d] defendants['] involvement in uncharged acts of violence"); *United States v. Daniels*, 95 F. Supp. 2d 1160, 1167 (D. Kan. 2000) (striking "highly prejudicial" information about prior investigation of defendant's

8

partner that does not "relate[] to any of the specific counts of fraud" and "is not directly relevant to any of the charged conduct").

The Court should strike these irrelevant and highly prejudicial paragraphs from the Indictment.

### IV. The Court Should Strike Irrelevant Allegations of Abuse of Female Undocumented Aliens

Those portions of paragraph 27 alleging that CC-6 received reports that Mr. Abrego "had abused some of the female undocumented aliens," that CC-6 reported those allegations of abuse to CC-1 and CC-2, and that "CC-6 directed CC-1 and CC-2 to cause [Mr. Abrego] to stop the abuse" should also be struck. (Dkt. 3 ¶ 27). Reports that Mr. Abrego abused female undocumented aliens are irrelevant to whether Mr. Abrego transported aliens, and allegations that CC-6 reported this purported abuse to CC-1 and CC-2 is only minimally probative of Mr. Abrego's connection to an alien smuggling conspiracy involving CC-1, CC-2, and CC-6. By contrast, reports of abuse of female undocumented aliens are "inflammatory," "distracting," and "more lurid…than the evidence surrounding the actual charges." *See United States v. Stout*, 509 F.3d 796, 801 (6th Cir. 2007).

Courts have exercised their discretion to strike similarly irrelevant and lurid allegations from indictments. In *United States v. Presgraves*, for example, the court struck as surplusage allegations describing the sexual harassment of victims by a defendant charged with racketeering, among other crimes, because the "allegations do not form the basis of, and are not necessary to prove, any of the twenty-two counts charged in the first indictment," and were "likely to inflame the jury and unduly prejudice the defendant." 658 F. Supp. 2d 770, 784 (W.D. Va. 2009); *see also United States v. Chase*, No. 6-cr-65, 2006 WL 3780007, at *2 (D. Nev. Dec. 14, 2006) (striking "highly prejudicial" references to defendant's prior conviction for a sex offense because it is "not

9

Case 3:25-cr-00115    Document 158    Filed 10/10/25    Page 10 of 13 PageID #: 1689

an element of the crimes charged in either count, nor material or relevant to factual circumstances underlying the charge"); *Rucker v. Commonwealth*, 521 S.W.3d 562, 569-70 (Ky. 2017) (holding that admission of defendant's "Facebook messages, images, and sexually graphic audio recordings…carried…an overwhelming potential for prejudice" and warranted vacatur of the defendant's conviction).

The Court should strike this language in paragraph 27 of the Indictment to "prevent undue and seemingly unnecessary prejudice" to Mr. Abrego. *Johnson*, 256 F. Supp. 3d at 761.

## CONCLUSION

For the foregoing reasons, Mr. Abrego respectfully requests that the Court strike from the Indictment: (1) allegations concerning MS-13 and Mr. Abrego's purported membership therein in paragraphs 5, 6, 7, 11, 16, 17, and 18; (2) allegations concerning narcotics and firearms trafficking in paragraphs 14 and 15; and (3) allegations of reports of Mr. Abrego's abuse of female undocumented aliens in paragraph 27.

Dated: October 10, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker