IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**MOTION TO COMPEL DISCOVERY CONSISTENT WITH THE COURT'S MEMORANDUM OPINION GRANTING DISCOVERY ON KILMAR ARMANDO ABREGO GARCIA'S MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION**

# PRELIMINARY STATEMENT

Kilmar Armando Abrego Garcia respectfully moves to compel the government to comply with the Court's order and to produce discovery relevant to his motion to dismiss for vindictive and selective prosecution. (Dkts. 104, 138, 140). Even as the defense has focused its requests in light of the Court's order requiring a "narrow scope of discovery" (*see* Dkt. 138 at 15), the government has refused to produce almost any discovery at all. It has instead continued to cling to its position that only Mr. McGuire's motives matter in this case, and that its discovery obligations extend no further than two handpicked documents and a supplemental affidavit from him. But the Court already carefully analyzed and rejected this argument. The government should not be permitted to resuscitate it to avoid its discovery obligations.

Mr. Abrego has met his burden of making a "prima facie showing" that this prosecution was vindictive. (*Id.* at 9, 15). That showing was based *not* on the line prosecutors' motivations, but instead on "remarkable statements" made by Deputy Attorney General Todd Blanche, as well as direct and circumstantial evidence of the conduct of the Executive Official Defendants[1] and their respective subordinates (*e.g.*, *id.* at 7-8, 10). To allow the Court to assess whether this prosecution was, as it appears to be, vindictive—and for the government to even attempt to meet its burden of rebutting the presumption established by Mr. Abrego—more is needed than the government's cabined discovery into Mr. McGuire's motives.

The defense therefore moves to compel the production of communications and documents, between March 24, 2025 and June 6, 2025, among the federal officials, at all levels, who had input into the reopening of the investigation into Mr. Abrego and the decision to charge him.

---

[1] The Court defined the term Executive Official Defendants to refer to the officials, including DHS Secretary Kristi Noem, Attorney General Pamela Bondi, and Secretary of State Marco Rubio, whom Mr. Abrego sued in Maryland. (Dkt. 138 at 4).

1

## BACKGROUND

### I. The Court's Opinion and Order

On October 3, 2025, the Court ordered discovery and a hearing on Mr. Abrego's motion to dismiss for vindictive and selective prosecution. In its opinion, the Court held that Mr. Abrego had established a presumption of vindictiveness, which shifted the burden to the government to prove that its prosecution of Mr. Abrego was not vindictive. (Dkt. 138 at 15). The evidence the Court relied on in making that finding included: (1) Deputy Attorney General Todd Blanche's "remarkable statements," made on the same day Mr. Abrego was arrested and brought to this district from El Salvador, that the government began "investigating" Mr. Abrego after "a judge in Maryland…questioned" the government's decision to deport him, and that Mr. Abrego was not returned "for any other reason than to face justice" (*id.* at 7); (2) the government's stake in Mr. Abrego's civil case, which had created "a significant burden on and embarrassment to the Executive Branch" (*id.* at 10); and (3) the timing of Mr. Abrego's indictment, filed only 58 days after Mr. Abrego filed suit in Maryland (despite the 832 days the initial investigation into Mr. Abrego remained pending) (*id.* at 14). All this, the Court held, created a presumption of vindictiveness even if Mr. McGuire's motives were "pure," because "others' motives, like fruit from a poisonous tree, may taint this prosecution." (*Id.* at 12; *see also id.* at 13 ("The timing of Abrego's indictment suggests a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit.")). The cost to "the Attorney General and various DHS officials" of "defending themselves in Abrego's successful civil suit provides a plausible rationale for HSI reopening its investigation into Abrego," and "must be considered with Deputy Blanche's possible admission connecting the two." (*Id.* at 14-15). Accordingly, the Court ordered discovery and a hearing to explore these issues and determine whether the government can meet

its "burden of rebutting the presumption with 'objective, on-the-record explanations.'" (*Id.* at 15 (quoting *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021))).

## II. The Parties' Meet and Confers, Status Reports, and Conference

The parties promptly met and conferred four days later. At that meeting, the defense proposed discovery that was materially narrowed from Paragraph 17 of its initial discovery letter, which the Court "believe[d]…[was] a good place to start." (*Id.* at 15 & n.2). The government responded that it would not commit to providing any documents or communications whatsoever, and suggested that the only documents the defense might expect to eventually receive would be a subset of those communications sent to Mr. McGuire directly. The parties agreed that, given how far apart they remained, they should file separate status reports before the status conference on October 10, and did so. (Dkts. 146, 147).

While the defense laid out in its status report substantially the same requests as those made in this motion, (*see* Dkt. 146), the government's status report committed only to provide two documents: a letter and an officewide email from the former Chief of the Criminal Division in the Middle District of Tennessee regarding his resignation on May 21, 2025—the date of the indictment against Mr. Abrego—and a supplemental affidavit from Mr. McGuire. (*See* Dkt. 147 at 3-4). All other materials, the government argued, were either subject to various privileges or irrelevant to the Court's inquiry, a position that amounted to a motion for reconsideration of the Court's opinion. (*Id.* at 4-7).

After the status conference on October 10, the parties met and conferred again, as the Court suggested. The government reiterated its position that, other than the two documents from the former Chief of the Criminal Division, all other documents and communications in the possession of the U.S. Attorney's Office were privileged. At this meet and confer, Mr. McGuire disclosed that

3

these allegedly privileged communications included approximately twelve emails in his possession with the Deputy Attorney General's office "through May 21" and multiple emails from the former Chief of the Criminal Division expressing concerns about Mr. Abrego's case. These materials are highly likely to be probative of whether this prosecution was vindictive and the result of improper motives. The government's refusal to produce them—to say nothing of the other highly relevant documents sought in this motion—suggests a fundamental misunderstanding of the appropriate scope and nature of discovery here.

With respect to documents and communications in the possession of the rest of the DOJ— including the office of the Deputy Attorney General—the government indicated its intention to assert privilege over all of their documents and communications. But Mr. McGuire disclosed that he did not know whether any such documents or communications existed, or what they contained, because no one from the DOJ, including the Deputy Attorney General's office, had responded to his inquiries.[2] Mr. McGuire also said that he had not spoken to "agency counsel" in connection with Mr. Abrego's motion; he did not mention producing any discovery from DHS.

## ARGUMENT

The government's representations about privilege and the scope of its discovery obligations, both at the parties' meet and confers and in its status report, are incorrect and entirely at odds with the Court's opinion and controlling Sixth Circuit law.

---

[2] The government has made something of a habit of stonewalling when it comes to Mr. Abrego. *Cf. Abrego Garcia v. Noem*, No. 8:25-cv-00951, 2025 WL 2062203, at *2 (D. Md. July 23, 2025) ("For three months after this Court issued the injunction, Defendants disclaimed any authority to facilitate his return and disregarded court orders. Defendants' defiance and foot-dragging are, to be sure, the subject of a separate sanctions motion.…The Court will not recount this troubling history in detail, other than to note Defendants' persistent lack of transparency with the tribunal adds to why further injunctive relief is warranted.").

## I. The Government's Privilege Assertions Fail as a Matter of Law

First, the privileges the government has indicated it will assert—deliberative-process privilege, executive privilege, and the attorney work-product doctrine—simply do not apply. As Mr. Abrego's response to the government's status report already explained, all three are "qualified," as opposed to absolute, privileges. They give way, as a general proposition, upon a showing of substantial need—which Mr. Abrego has already made here. And they also give way in a criminal case where they are necessary to establish a defense—as they are here. Moreover, they cannot be invoked to shield evidence of government misconduct in the face of an order seeking discovery to assess the nature and extent of that misconduct. (*See generally* Dkt. 148).

Second, even if the government had some theoretical privilege claim over some subset of the documents that could survive the analysis just discussed, asserting privilege requires more than the mere blanket assumption that all relevant materials would be privileged without so much as collecting or glancing at them. The party asserting the privilege bears the burden of establishing its applicability. *See, e.g.*, *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450-51 (6th Cir. 1983). This requires, at a basic level, the collection and review of the documents at issue and the creation of a detailed privilege log that explains the basis for any asserted privilege. *See In re Search Warrant Executed at L. Offs. of Stephen Garea*, 173 F.3d 429 (6th Cir. 1999) (table decision), 1999 WL 137499, at *1 (stating that "conclusory statements contained in the [privilege] log before [the Court] do not satisfy even th[e] minimal requirement" of "explaining the nature of the legal issue for which advice was sought" to demonstrate attorney-client privilege); *EEOC v. Texas Hydraulics, Inc.*, 246 F.R.D. 548, 552 (E.D. Tenn. 2007) (requiring that "if an agency is to receive the protections of the deliberative process privilege," it must "provide fairly extensive identification and description for each document, to facilitate the court's application of the

balancing test" (quotations omitted)); *Est. of Fahner ex rel. Fahner v. County of Wayne*, No. 8 Civ. 14344, 2009 WL 4644788 (E.D. Mich. Dec. 3, 2009), *aff'd*, 2010 WL 374174 (E.D. Mich. Jan. 25, 2010) ("To the extent that Defendants assert any privilege including executive privilege, to the investigative files and investigation reports, Defendants must produce a detailed privilege log in compliance with Fed. R. Civ. P. 26(b)(5)…."); *see also* Fed R. Civ. P. 26(b)(5)(A)(ii). The line prosecutors in this case cannot claim privilege over documents they have never seen. And if and when the government claims privilege over communications that it has collected and reviewed on a document-by-document basis, it then must be held to the same standard as any other litigant to allow the Court and the defense to assess those claims.

> **II.     The Government's Proposal to Evade Discovery Is at Odds with the Court's Opinion and Sixth Circuit Law**

Critically, the government's status report shows that it has, at best, misapprehended the Court's conclusions in its opinion, and the scope of the ordered discovery that naturally follows. More likely, the government has simply disregarded the Court's directions. As the Court has held, the government now "bears the burden of rebutting the presumption with 'objective, on-the-record explanations,'" and to do so, it must produce discovery. (Dkt. 138 at 15 (quoting *Howell*, 17 F.4th at 687)). The government has offered to produce a "supplemental affidavit" about Mr. McGuire's own "contacts (if any) with senior…officials" and an "addendum to the affidavit" Mr. McGuire previously filed to "respon[d] to some of the concerns" raised by the Court in allowing discovery and an evidentiary hearing. (Dkt. 147 at 4). But this is plainly insufficient under *United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023), to say nothing of the Court's own unambiguous order. Under Sixth Circuit precedent, the government must "rebut 'the presumption with objective, on-the-record explanations,'" and Mr. Abrego must be permitted to "test" the government's assertions. *Id.* at 383 (quoting *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013)); *see also id.* at 385

(Kethledge, J., concurring) ("The prosecution is entitled to no deference on questions of fact."). It is not just Mr. McGuire's assertedly "pure" motives that require on-the-record explanation and adversarial testing, but rather, "others' motives"—the motives of the more senior officials who (whether directly or indirectly from the shadows) demanded that this case be brought. (Dkt. 138 at 12). Adversarial testing requires the production of communications and documents, as well as witnesses for the hearing on November 3, extending beyond Mr. McGuire.

The government's argument that only Mr. McGuire's account of this case matters, and that therefore only his communications are relevant, effectively reargues a position the Court already rejected. The government emphasizes the Court's statement that the comments by government officials underlying Mr. Abrego's claim of actual vindictiveness "fall short on the record before the Court because they require an inference tying them to the actual decisionmakers" (Dkt. 147 at 5 (quoting Dkt. 138 at 8)), and claims that because Mr. McGuire "was the 'actual decisionmaker' here," the only documents and communications that matter are ones involving Mr. McGuire himself (*id.*) Not so. The Court's opinion did not, in fact, place Mr. McGuire's state of mind at the center of this inquiry. It did the opposite: It held that "the vindictive prosecution analysis is not so limited as to [Mr.] McGuire, nor is it limited only to the DOJ," but instead "implicates the Executive Official Defendants, their respective subordinates, and the totality of actions and statements surrounding Abrego." (Dkt. 138 at 12). Even ascribing to Mr. McGuire "pure" motives in bringing this prosecution (*see id.*), the means by which the case appeared on his desk—a mere 17 days after the Supreme Court affirmed an order requiring Mr. Abrego to be returned to the United States—is a subject this discovery and hearing must resolve. This is because Mr. Abrego has presented "a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (*albeit unknowingly*) to criminally charge Abrego in retaliation for his

7

Maryland lawsuit." (Dkt. 138 at 13 (emphasis added)).

Similarly, the government's reliance on language from *United States v. Adams*—about whether the EEOC "prevail[ed] upon the Department of Justice to institute a prosecution that would not have been undertaken" otherwise—unduly cabins *Adams*'s inquiry. 870 F.2d 1140, 1146 (6th Cir. 1989). At issue in *Adams*—and in this case—is "how this unusual prosecution came about" and whether "a prosecution…would not have been undertaken but for [the defendant's] exercise of [his] [rights]." *Id.* In ordering discovery on remand, the Sixth Circuit indicated that "it does not seem to us that [the] EEOC's motivation is irrelevant," *id.*, which makes clear that the vindictive prosecution inquiry goes beyond the line prosecutors and even the DOJ writ large. As such, the question here is not whether Mr. McGuire's motives were "pure" and whether he was induced to bring this prosecution "unknowingly." The question is whether the taint started farther up the chain at DOJ or at DHS, including prior to Mr. McGuire ever receiving the case—whether "others' motives, like fruit from a poisonous tree, may taint this prosecution." (Dkt. 138 at 12). Discovery cannot be limited to Mr. McGuire's knowledge and intentions when Mr. Abrego's evidence—and the Court's conclusions—demonstrate that Mr. McGuire made the decision to charge this case long after the "actual decisionmakers" had set in motion the requisite conditions for him to do so.[3]

---

[3] The parties' meet and confer after Friday's conference uncovered more evidence of such vindictiveness by said "actual decisionmakers." At that meeting, Mr. McGuire noted that he had reached out to the supervisory agent on the case at HSI Baltimore, John VanWie, to ask why he had reopened the case on April 17. Mr. McGuire reported that Mr. VanWie told him that he was getting "a ton of information requests from Headquarters," which required reopening the case, and that this investigation was "directed by Headquarters." This indicates precisely the type of link—likely one of many—the Court flagged in its opinion, between high-level officials at DHS and the reopening of the investigation that ultimately led to the presentation of the case to Mr. McGuire. It is these types of documents and communications—both between and from the "Executive Official Defendants" and their subordinates—that Mr. Abrego seeks in this motion.

8

And this must be the case. It cannot be that, so long as an official in Washington can find a prosecutor willing to charge a case that otherwise has all the indicia of a vindictive prosecution, that prosecution is vindictive only if there is a discoverable communication directly to that prosecutor communicating or making plain the motives behind the prosecution. Certainly—as the Court's opinion contemplates—it is sufficient that the vindictiveness starts above, even if it is not present below. As a consequence, discovery into this matter should encompass the vindictiveness above and not be shielded, as the government argues, by any assertions of purity below.

Accordingly, Mr. Abrego moves to compel the production of relevant documents and communications not only from Mr. McGuire and Mr. Schrader, but also among those federal officials who directed the reopening of the investigation into Mr. Abrego and the charges in this case. Mr. Abrego has not yet been able to identify all of the relevant officials, but they include, at a minimum, Mr. Blanche and his subordinates at the DOJ, and leadership at DHS involved in directing investigative actions by HSI Baltimore and HSI Nashville. Mr. Abrego's request is for narrow subject matter: it includes only documents, communications, and records relevant to the investigative or charging decisions in Mr. Abrego's case. It is for a narrow time period, spanning the few weeks between March 24, 2025 and June 6, 2025.[4] And it fully comports with the Court's order granting discovery in this case.

---

[4] This time period covers the date on which Mr. Abrego filed suit challenging his unlawful deportation (March 24) through the date on which his indictment was announced and he was brought back to the United States (June 6). The Court has recognized that statements post-dating the May 21 indictment are relevant to the vindictiveness inquiry, such as the Deputy Attorney General's remarks on June 6. (*See* Dkt. 138 at 7-8). So too are communications of the speakers and their subordinates on or around that date.

## **CONCLUSION**

For the foregoing reasons, Mr. Abrego's motion to compel should be granted.[5]

Dated: October 13, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

---

[5] To ensure that the parties and the Court have sufficient time to reach a decision on this motion, exchange discovery, and prepare for the hearing on November 3, the defense has proposed that the government respond to this motion by Friday, October 17, and the defense reply by Monday, October 20. The government has not yet responded to the defense's proposed briefing schedule. In any case, this motion will require a compressed timeframe for the government to fully collect and produce discovery, and the longer the parties take to brief this issue, the more difficult it will be to maintain the hearing date.

10

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker