# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-CR-00115** |
| | ) | |
| **KILMAR ARMANDO ABREGO** | ) | |
| **GARCIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

Comes now the Plaintiff, the United States of America, by and through Robert E. McGuire, Acting United States Attorney, et al., and makes the following response to Defendant Kilmar Abrego Garcia's Motion to Compel Discovery on Defendant's Motion to Dismiss for Vindictive and Selective Prosecution. ECF No. 159 (Mot.); *see* ECF Nos. 104, 113. The United States has made various disclosures in response to Defendant's discovery requests, contrary to Defendant's portrayal, *see* Mot. 1, 4 n.2, and the government is prepared to provide further information at the forthcoming evidentiary hearing on Defendant's claim, including through the testimony of the Acting U.S. Attorney. But Defendant's motion to compel now asks this Court to authorize an open-ended fishing expedition into internal governmental documents and communications that would never be subject to discovery in the normal course, *see* Fed. R. Crim. P. 16(a)(2), and that are shielded from disclosure by various components of executive privilege. He seeks such extraordinary and intrusive discovery, moreover, in furtherance of a claim of vindictive and selective prosecution that is meritless on its face: the relevant prosecutorial decision-maker, the Acting U.S.

1

Attorney, has explained on the record that this prosecution was not brought for vindictive or discriminatory reasons, ECF No. 121, Ex. 1 (Aff.), and even if the motives of other Executive Branch officials were relevant, their public statements about Defendant reflect punitive and public-safety concerns that are plainly consistent with a legitimate motivation to prosecute him. The motion to compel should be denied.

## BACKGROUND

### A.     The Court's Order Authorizing Discovery

After a grand jury sitting in this District indicted him for smuggling illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v), and (B)(i), Defendant moved to dismiss the indictment on grounds of selective and vindictive prosecution, ECF No. 104. He accused the government of prosecuting him in retaliation for filing a lawsuit challenging his removal to El Salvador. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025); *see generally* ECF No. 105. On October 3, this Court entered an order deferring decision on Defendant's motion and concluding that he is entitled to discovery and an evidentiary hearing (scheduled for November 4, 2025) on his vindictive-prosecution claim. ECF No. 138 (Order).

Under Sixth Circuit precedent, the Court explained, a defendant claiming vindictive prosecution must establish either: (a) "actual" vindictiveness, by providing direct evidence of a prosecutorial motive to punish the defendant for exercising some protected right; or (b) "presumptive" vindictiveness, by showing that a reasonable person would find a reasonable likelihood of vindictiveness in light of the prosecutor's stake in the defendant's exercise of his rights and the reasonableness of the prosecutor's actions. Order 2. The Court first found that Defendant has not made a sufficient showing of actual vindictiveness. The Court emphasized a statement made on television by the Deputy Attorney General the day after Defendant's arrest explaining that the government had investigated

Defendant after the district judge handling Defendant's civil suit had "questioned" the legality of Defendant's removal to El Salvador. *Id.* at 7 (citation omitted). But the Court found that that statement and others made about Defendant by other Executive Branch officials "fall short on the record before the Court because they require an inference tying them to actual decisionmakers," *i.e.*, the actual "day-to-day prosecutors in this case." *Id.* at 7, 10.

The Court went on to conclude, however, that Defendant has made a sufficient showing of presumptive vindictiveness to warrant discovery and a hearing. *See* Order 8-15. The Court found sufficient evidence that various Executive Branch officials, including the Attorney General and the Secretary of Homeland Security, had a "stake" in Defendant's civil suit and thus a reason to retaliate against him. *Id.* at 12. The Court viewed those officials' potential motives as sufficient to justify discovery "[e]ven assuming the individual motive" of the actual decision-maker, "Acting U.S. Attorney McGuire[,] was pure." *Ibid.*; *see also id.* at 10-12 (discussing *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989)). Turning to the reasonableness inquiry, the Court noted that the timing of the reopening of the Homeland Security Investigations (HSI) investigation of Defendant for human trafficking—days after the Supreme Court ruled that the district court handling Defendant's civil suit had properly ordered the government to facilitate Defendant's release from custody in El Salvador, *see Abrego Garcia*, 145 S. Ct. at 1018—"suggests a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit." Order 13.

Having concluded that Defendant "has carried his burden of demonstrating some evidence that the prosecution against him may be vindictive," the Court placed on the government "the burden of rebutting the presumption with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility." Order 15 (internal

3

quotation marks omitted). The Court directed the parties to "meet and confer on the proper narrow scope of discovery," using paragraph 17 of a July 13 letter from Defendant to the government—except for subparagraph (e), requesting material related to Defendant's return to the United States from El Salvador—as a starting point. *Ibid.*; *see id.* at 15 n.2.

## B. The Government's Disclosures

On October 7, the parties met and conferred on discovery in accordance with the Court's order. As it explained in a subsequent status report, ECF No. 147, and detailed below, the government has disclosed a number of documents that are responsive to paragraph 17 of Defendant's July 13 letter. *Contra* Mot. 1 (claiming that "the government has refused to produce almost any discovery at all").

> 1. *Paragraph 17(a): Material concerning the predication and reasons for opening the investigation that led to the indictment, including, but not limited to, communications between the Department of Justice ("DOJ") and DHS, such as email, text messages, and other correspondence*

The government has provided all of the reports of the investigations (ROIs) from HSI initially opening this case in December of 2022. Additionally, the Government has provided all the ROIs from HSI Baltimore closing the investigation on April 1, 2025, after Defendant was deported. Thus, the government has provided all the ROIs relating to the initial opening, subsequent closing, and reopening of the investigation in this case (Bates numbers P000546-P000648).

The government has also provided a detailed summary of the reopening of the investigation, by way of an affidavit signed by Acting U.S. Attorney McGuire and members of DOJ's Joint Task Force Vulcan (JTFV) who assisted with the investigation of Defendant (ECF No. 121, Ex. 1). The affidavit details the conversations that Mr. McGuire participated in concerning the opening of the investigation in the Middle District of Tennessee. *Ibid.* In addition, the affidavit described a phone

4

call between Mr. McGuire and Special Agent Rana Saoud, the HSI Special Agent in Charge (SAC) for in the Middle District of Tennessee, on April 27, 2025. That call was the first time Mr. McGuire learned of the reopening of the investigation into Defendant. Mr. McGuire will also be available as a witness at the forthcoming evidentiary hearing to answer questions from the Court and defense counsel.[1] As noted in the initial affidavit (Aff. 1), JTFV first learned of the reopening of the investigation into Defendant from Mr. McGuire.

> 2. *Paragraph 17(b): Communications among DOJ, DHS, the State Department, and/or the White House about the inception or progress of the investigation, such as email, text messages, and other correspondence*

In his supplemental affidavit, the Acting United States Attorney makes clear that he never had any communication, whether orally or in writing, about the inception or the progress of the investigation with the Attorney General, the Deputy Attorney General, anyone at the White House, anyone at the State Department, nor anyone higher-ranking in HSI than Special Agent Saoud. (Supp. Aff.). Mr. McGuire and the JTFV members do have email and text-message communications with two attorneys in the Office of the Deputy Attorney General, Associate Deputy Attorney General Aakash Singh and Counselor to the Deputy Attorney General James McHenry, regarding the progress of the investigation, which are not properly subject to disclosure for the reasons set forth below. None of these communications express anything untoward or a desire to prosecute the defendant for improper reasons. *Id.* With respect to communications outside the Department of Justice, any such materials are irrelevant and likewise not subject to disclosure. At the evidentiary hearing, Mr. McGuire will be subject to cross-examination under oath regarding this topic, *i.e.*, whether he was directed to prosecute Defendant by sources from within or outside the DOJ, including from the White House, the State Department, and the Department of Homeland Security.

---

[1] The government intends for Mr. McGuire to answer questions from the Court and defense counsel under oath.

3.    *Paragraph 17(c):  Material concerning the decision made by the Federal Bureau of Investigation ("FBI") and/or Homeland Security Investigations ("HSI") in or around 2022 not to pursue any investigation or prosecution of the November 30, 2022 traffic stop*

These materials have been provided (Bates numbers P00633-P00634).  The government's initial affidavit also addressed this issue with respect to Mr. McGuire's lack of knowledge about the inception and initial closing of the investigation.  Aff.  At the forthcoming evidentiary hearing, the government intends to call HSI Special Agent John VanWie, as a witness. Agent VanWie was and is a supervisory special agent for HSI Baltimore. Agent VanWie signed off on the closing of the initial investigation by HSI Baltimore on April 1, 2025, as well as the re-opening of the investigation on April 17, 2025, and the Government expects he will testify about the reasoning behind each action.

4.    *Paragraph 17(d):  Material concerning the government's change in position and decision to prosecute this case*

The government has provided reports from HSI about the reopening of this case as well as the initial and supplemental affidavits discussed above.  In addition, as noted, Agent VanWie, as well as the Acting United States Attorney, will testify at the evidentiary hearing regarding the reopening of this case.

5.    *Paragraph 17(e):  Material concerning negotiations and the decision to return Mr. Abrego to the United States after he was removed from the United States to El Salvador in March of 2025, including, but not limited to, communications among DOJ, DHS, the State Department, the White House, and/or the government of El Salvador, such as email, text messages, and other correspondence*

In its October 3 order (at 15 n.2), the Court correctly indicated that this request is improper, and the Acting U.S. Attorney has stated that he had no involvement with and was not privy to the negotiations and decision to return Defendant to the United States.  Aff.; Supp. Aff.

6

6. *Paragraph 17(f): Material concerning the departure of Ben Schrader, formerly the Chief of the Criminal Division of the U.S. Attorney's Office in Nashville, Tennessee, whose resignation was reportedly prompted "by concerns" that the instant case "was being pursued for political reasons."*

The government assumes that Defendant will call Mr. Schrader as a witness at the evidentiary hearing. The government has no objection to the Court's issuing a subpoena to Mr. Schrader if necessary. As part of its response to Defendant's request, the Government provided the defense with the departure email sent by Mr. Schrader on May 20, 2025. Although Mr. Schrader was not assigned to work on this case, nor was he asked to prosecute the case or to supervise the prosecution, there are emails between Mr. McGuire and Mr. Schrader regarding the substance of this case and the decision to charge, as well as memoranda on the decision to charge. Specifically, Mr. McGuire drafted a prosecution memorandum summarizing the evidence and the decision to charge, and Mr. Schrader drafted a memorandum detailing his reasons that he (Mr. Schrader) would decline to charge the case. Both of these memoranda, and emails between the Acting United States Attorney and Mr. Schrader, are not properly subject to disclosure for the reasons discussed below.

## ARGUMENT

Contrary to Defendant's depiction of the government "stonewalling" and providing no discovery in response to his requests, Mot. 4 n.2; *see id.* at 1, the government has provided a number of responsive documents—despite the general rule that such material is not subject to disclosure, *see* Fed. R. Crim. P. 16(a)(2)—and is prepared to call the Acting U.S. Attorney and supervisory federal agents at HSI Baltimore and HSI Nashville to testify at the forthcoming evidentiary hearing about their investigation and prosecution of Defendant. Yet contrary to the "narrow scope" of the discovery that this Court contemplated, Order 15, Defendant nevertheless demands "the production of communications and documents, between March 24, 2025 and June 6, 2025, among the federal officials, at

7

all levels, who had input into the reopening of the investigation into [Defendant] and the decision to charge him." Mot. 1. Although Mr. McGuire has stated in a sworn affidavit that he did not bring this case for vindictive reasons and nor was he directed to do so by others in the government, *see* Aff. 3, 6, Defendant simply does not believe him—despite the "the longstanding presumption of regularity accorded to prosecutorial decisionmaking," *Hartman v. Moore*, 547 U.S. 250, 263 (2006)—and seeks to conduct a fishing expedition for evidence supporting a speculative theory of vindictive prosecution.

Defendant's motion to compel should be denied. It is the "rare case[]" where the defendant is entitled to any discovery *at all* on a vindictive-prosecution claim, *United States v. Adams*, 870 F.2d 1140, 1141 (6th Cir. 1989); *see also United States v. Bourgeois*, 964 F.2d 935, 939-40 (9th Cir. 1992), and the discovery sought here would be overbroad, legally improper, and highly damaging.[2] Defendant seeks disclosure of material that is undisputedly encompassed by various components of executive privilege, including the deliberative process and attorney work product privileges. And Defendant cannot come close to showing a need for the material sufficient to overcome the privilege: although the Court previously concluded that Defendant was entitled to some discovery, he has already received an ample amount, and his vindictive-prosecution claim is far too weak to justify the sweeping and intrusive discovery he now demands.

### A. The Motion To Compel Seeks Disclosure Of Internal Executive Branch Materials That Are Protected By Executive Privilege

Defendant seeks disclosure of internal Executive Branch documents and communications that

---

[2] Indeed, it is clear that Defendant is not content to stop with this discovery. On October 20, defense counsel subpoenaed the Deputy Attorney General, Associate Deputy Attorney General, and Counselor to the Deputy Attorney General, as well as two HSI agents, to testify at the evidentiary hearing. The government anticipates that it will shortly move to quash the subpoenas of the three DOJ officials, on the grounds set forth herein and others. *See, e.g.*, *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions").

are protected by executive privilege and therefore presumptively shielded from disclosure. Executive privilege "safeguards the public interest in candid, confidential deliberations within the Executive Branch; it is 'fundamental to the operation of Government.'" *Trump v. Mazars USA, LLP*, 591 U.S. 848, 864 (2020) (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)). "[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *Nixon*, 418 U.S. at 705. This concern is deeply rooted in our Nation's history. During the Constitutional Convention, for example, delegates agreed to keep their deliberations confidential, and the records remained sealed for more than 30 years. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 447 n.11 (1977). The overarching goal of executive privilege is to enhance "the quality of administrative decisions" by shielding frank internal discussions from public disclosure. *See Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014) (Kavanaugh, J.) (citation omitted).

Judicial inquiries into executive decision-making "represent a substantial intrusion into the workings of [a coordinate] branch of government." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). Such intrusions can "distract [the Executive Branch] from the energetic performance of its constitutional duties"—a danger the Supreme Court has cautioned against as a matter of "paramount necessity." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 382 (2004). Accordingly, courts confronting requests for discovery into confidential government files have repeatedly recognized the importance of respecting the separation of powers, the confidentiality interests of the Executive Branch, and the presumption of regularity in executive actions. *See Nixon*, 418 U.S. at 708-13; *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "[I]nformation subject to executive privilege deserves 'the greatest protection consistent with the fair administration of justice.'" *Mazars*, 591 U.S. at 864 (quoting *Nixon*, 418 U.S. at 715).

9

"There are at least five well-recognized, and sometimes overlapping, components of executive privilege:  national security and foreign affairs, law enforcement, deliberative process, attorney-client communications and attorney work product, and presidential communications."  *Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *30 (Jan. 8, 2021) (*Congressional Oversight*); *see, e.g.*, *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (deliberative process privilege "is a form of executive privilege").  "The most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted).  Except for the national-security and foreign-affairs component and aspects of the law-enforcement component, which are absolute privileges, *see Congressional Oversight* at *31 & nn.12-13, executive privilege is generally a qualified privilege that can be overcome by a sufficient showing of need, *see Nixon*, 418 U.S. at 706-07.

Defendant's motion to compel discovery demands disclosure of internal Executive Branch documents and communications that are plainly privileged.  His overall request seeks material that is encompassed by the deliberative process privilege virtually by definition:  he demands "the production of communications and documents, between March 24, 2025 and June 6, 2025, among the federal officials, at all levels, who had *input* into the reopening of the investigation into [Defendant] and the *decision* to charge him."  Mot. 1 (emphasis added).  In other words, Defendant seeks to uncover "predecisional" and "deliberative" communications revealing the decision-making process behind the decisions to investigate and prosecute him—and thus to substantiate his theory that those decisions were driven by a retaliatory motive.  *Fish & Wildlife Serv.*, 592 U.S. at 268 (citation

omitted). The deliberative process privilege fits that category of material like a glove. *See ibid.* And disclosing such material would present exactly the kind of risks and harms to agency decision-making that the deliberative process privilege is intended to prevent. If material of this nature were subject to criminal discovery, prosecutors and other Executive Branch personnel would be chilled from having frank discussions regarding the complex and sensitive decisions that they are duty-bound to make about prosecutorial and related law-enforcement matters, to the detriment of public safety and the sound administration of justice.

Defendant's desired discovery implicates other components of executive privilege as well. For example, the communications between Mr. McGuire and the attorneys in the Office of the Deputy Attorney General regarding the progress of the investigation of Defendant, are covered by the privilege for law-enforcement records, which applies to closed as well as open investigative files. *See Sealed Case*, 121 F.3d at 755; *Congressional Oversight*, 45 Op. O.L.C. at *31 & n.13. The communications between Mr. McGuire and then-Assistant U.S. Attorney Schrader are covered by (in addition to deliberative process) the attorney-client communications and attorney work product component of executive privilege, which "protects executive branch communications and documents that involve legal analysis, legal advice, and other attorney communications or work product." *Congressional Oversight*, 45 Op. O.L.C. at *33. Any responsive materials involving negotiations with El Salvador may also implicate the foreign affairs privilege. *See Nixon*, 418 U.S. at 706 (noting privilege for "military, diplomatic, or sensitive national security secrets"). Thus, even assuming that some of the requested materials were not deliberative (for instance, because they postdated Defendant's indictment and are thus not predecisional, *see* Mot. 9 n.4), they would be privileged in any event (besides irrelevant).

Defendant disputes little of the foregoing. Although he states that executive privilege "simply

do[es] not apply" here, he seems to mean only that he has made a sufficient showing of need to overcome the privilege in light of this Court's October 3 order authorizing discovery on his vindictive-prosecution claim. Mot. 5. But that does not follow. The Court's order did not address the privilege or confidentiality concerns raised by Defendant's motion to compel at all, because Defendant had not yet filed the motion when the order issued. To the extent the Court addressed the extent of discovery, it described the proper scope as "narrow," Order 15—a word that does not describe Defendant's demand for weeks' worth of documents and communications "among the federal officials, at all levels, who had input into the reopening of the investigation into [Defendant] and the decision to charge him." Mot. 1. Defendant errs in suggesting that this Court has already decided that he is entitled to disclosure of a broad category of sensitive internal governmental communications; it decided only that Defendant is entitled to some measure of discovery, and as detailed above, he has already received a substantial amount.

Defendant also contends (Mot. 5) that the government cannot resist discovery on confidentiality grounds unless and until it undertakes "the collection and review of the documents at issue and the creation of a detailed privilege log that explains the basis for any asserted privilege." That is incorrect as well. The Supreme Court rejected essentially the same argument in *Cheney v. United States District Court*, *supra*, in which a district court entered broad discovery orders requiring disclosure of Executive Branch materials related to a White House energy-policy task force. Vacating the D.C. Circuit's denial of a writ of mandamus, the Supreme Court held that the district court was wrong to require the government to prepare a privilege log and make "specific claims of privilege" before the court would consider narrowing the discovery requests in response to the government's confidentiality and separation-of-powers concerns. 542 U.S. at 389. As the Supreme Court noted, the burden of making such particularized objections and privilege assertions itself implicated the

autonomy of the Executive Branch and required that the requested discovery first be narrowed. *See id.* at 388-89.

Here, Defendant seeks a similarly broad category of internal Executive Branch communications; like in *Cheney*, "[t]his is not a routine discovery dispute," 542 U.S. at 385. As explained above, the materials at issue in the motion to compel are protected by executive privilege by virtue of how Defendant has defined the universe of requested materials. And as explained below, Defendant's inability to show a need sufficient to overcome the privilege is clear. There is accordingly no need or sound reason to force the government to undertake the burdensome process of collecting, reviewing, and designating documents in order to resolve Defendant's motions to compel and to dismiss the indictment.

### B. Defendant Has No Legitimate Need For The Requested Materials

Defendant lacks the sort of "demonstrated, specific need" for the requested material that would be necessary to overcome executive privilege. *Nixon*, 418 U.S. at 713. Indeed, much of the material sought is not even legally relevant to Defendant's claim of vindictive prosecution. His claim is based on rank speculation that the Acting U.S. Attorney, contrary to his sworn submission to this Court, Aff. 3, 6, brought this prosecution at the bidding of other Executive Branch officials with purportedly vindictive motives with whom he never communicated. Such speculation does not entitle Defendant to discovery at all,[3] let alone discovery of privileged materials.

### 1. The prosecutor had no stake in Defendant's exercise of his rights

a. As the Court has recognized, the existence of a "realistic likelihood of vindictiveness"

---

[3] The government thus respectfully urges the Court to reconsider and vacate its October 3 order authorizing discovery on the vindictive-prosecution claim. But given that the government has already provided significant discovery and is willing to participate in the scheduled evidentiary hearing, the Court need not grant such reconsideration in order to deny Defendant's motion to compel.

depends on "the *prosecutor's* stake in preventing the assertion of the [defendant's] protected right." Order 8 (quoting *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023)) (emphasis added; internal quotation marks omitted). Here, that means that the Acting U.S. Attorney—who the Court has acknowledged was the "actual decisionmaker[]" with respect to Defendant's prosecution, *ibid.*—must have had a stake in Defendant's civil suit challenging his removal to El Salvador. But as Mr. McGuire and the JTFV members have stated, Aff. 3, 6, Mr. McGuire had no involvement with that proceeding, did not bring this prosecution to punish Defendant for bringing that suit, and was not convinced or urged to do so by others with a stake in that suit. Mr. McGuire and other government witnesses will be available to testify and be cross-examined on the same matters at the forthcoming evidentiary hearing. So even supposing that Defendant made a sufficient showing of presumptive vindictiveness, those "objective, on-the-record explanations" would rebut that showing. *Zakhari*, 85 F.4th at 379 (internal quotation marks omitted). The government is not seeking to debunk Defendant's theory of prosecutorial vindictiveness with "mere assertions in its briefs." *Id.* at 385 (Kethledge, J., concurring in part and dissenting in part).

This case looks nothing like other presumptive-vindictiveness cases in which an allegedly vindictive prosecutor was found to have a stake in the defendant's assertion of protected rights. Such cases generally involve the assertion of a right in the context of the criminal case itself, after the initial decision to prosecute. *See, e.g.*, *Zakhari*, 85 F.4th at 380 (claim that the government vindictively added "a new count substantially increasing [the] mandatory minimum" after the defendant engaged in "vigorous motions practice"). Consider the first Supreme Court case recognizing a claim of prosecutorial vindictiveness, *Blackledge v. Perry*, 417 U.S. 21 (1974). The defendant there, after being convicted of a misdemeanor, exercised his state statutory right to a new trial *de novo* in a higher court, and the prosecutor responded by obtaining a felony indictment against the defendant. *See id.*

14

at 22-23. As the Supreme Court explained, the prosecutor had an obvious stake in the defendant's invocation of that review procedure, which would "clearly require increased expenditures of prosecutorial resources." *Id.* at 27; *see United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980) ("Such an appeal meant that the prosecutor had to present his case over again."). Because a prosecutor is far less likely to have a stake in a defendant's exercise of rights unconnected to the prosecution, courts generally require defendants who challenge "the *initial* decision to prosecute," like Defendant here, to provide "proof … that a vindictive motive *actually* exists," rather than evidence supporting a mere presumption of vindictiveness. 4 Wayne R. LaFave et al., *Criminal Procedure* § 13.5(a) (Nov. 2024) (LaFave) (footnotes omitted; second emphasis added); *see United States v. Goodwin*, 457 U.S. 368, 381 (1982) ("a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision"). And as the Court has recognized, Defendant's allegations of actual vindictiveness "fall short on the record before the Court because they require an inference tying them to actual decisionmakers" in this case. Order 8.

b.      In its prior order, this Court suggested that it was sufficient for Defendant to show that the "government" or the "Executive Branch" writ large—encompassing the Attorney General, Secretary of Homeland Security, and other officials—rather than the prosecutor, Mr. McGuire, had a stake in Defendant's civil suit challenging his removal to El Salvador. Order 9-10. But even if that theory were strong enough to entitle Defendant to some discovery (a proposition with which the government still respectfully disagrees), it is certainly insufficient to justify the broad and intrusive discovery that Defendant now demands. *Blackledge* and other precedents make clear that the relevant question is whether the *prosecutor* was vindictive or could be presumed to have been vindictive in bringing the relevant prosecution. 417 U.S. at 27-28; *see Maddox v. Elzie*, 238 F.3d 437, 447 (D.C. Cir. 2001) (refusing to impute an alleged vindictive motive to a different "independent decision

15

maker"); *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) ("In all but the most extreme cases, it is only the biases and motivations of the prosecutor that are relevant."). Indeed, even the motivations of individual fellow prosecutors—even ones in the *same office*—are not imputed to each other for these purposes. *E.g.*, *United States v. Mathis*, 173 F.3d 857 (Tbl.), 1999 WL 98465, at *2 (6th Cir. Jan. 29, 1999) ("The participation of different prosecuting personnel tends to negate a claim of vindictive prosecution.") (citing *Hardwick v. Doolittle*, 558 F.2d 292, 301 (5th Cir. 1977)); *accord United States v. Chappell*, 779 F.3d 872, 880 (8th Cir. 2015) (no basis for presumptive vindictiveness where "a different prosecutor" added counts after the defendant impeached the government's main witness); *United States v. Wilson*, 262 F.3d 305, 319-20 (4th Cir. 2001) (similar). The presumptive-vindictiveness inquiry cannot be conducted on an office-wide or departmental basis, much less an Executive Branch–wide basis.

Supreme Court precedent on judicial vindictiveness, from which the prosecutorial-vindictive-ness concept was derived, *see Blackledge*, 417 U.S. at 25-27, is confirmatory. The Court has held that a defendant who successfully appeals but receives a more severe sentence on remand cannot establish judicial vindictiveness if the second sentence was imposed by a different judge or jury. *See Colten v. Kentucky*, 407 U.S. 104, 116-18 (1972); *Chaffin v. Stynchcombe*, 412 U.S. 17, 27 (1973). That is because vindictiveness claims require a showing that the relevant decision-maker had a "*personal* stake" in the defendant's exercise of his rights. *Chaffin*, 412 U.S. at 27 (emphasis added); *accord Goodwin*, 457 U.S. at 383. It is not enough for the defendant to ascribe vindictive motives to other officials to whom the decision-maker is institutionally related.

In its prior order, this Court viewed the foregoing line of analysis as inconsistent with *United States v. Adams*, *supra*, in which the Sixth Circuit held that the defendants were entitled to discovery on their claims that they were prosecuted by DOJ in retaliation for having filed a discrimination suit

against the Equal Employment Opportunity Commission (EEOC). 870 F.2d at 1141, 1146. But the defendants in *Adams* supported their discovery request with exactly the kind of evidence that Defendant here lacks: evidence indicating that EEOC personnel had in fact prevailed upon DOJ to prosecute the defendants. *See, e.g.*, *id.* at 1144 (defendants submitted the affidavit of a former EEOC official stating that "he was aware of the existence of various confidential memoranda from the head [EEOC] attorney and others regarding the government's investigation of [defendant] and was also aware of contacts between the Department of Justice and" another EEOC official). The whole point of Defendant's motion to compel is to search the government's files for something substantiating a similar dynamic underlying this prosecution. But whereas the *Adams* defendants supported their discovery request with affirmative evidence supporting the imputation of EEOC's alleged vindictiveness to DOJ, Defendant brings his motion to compel with nothing but speculation that other officials prevailed upon Mr. McGuire to bring this prosecution. *See* Mot. 7. If such speculation were enough to warrant intrusive discovery into privileged government documents and communications, there would be no end to such discovery, fueling more meritless vindictive-prosecution claims and undermining the presumption of prosecutorial regularity. Defendant's showing of the Acting U.S. Attorney's stake in Defendant's civil suit—the source of the purported vindictive motive underlying this prosecution—is far too weak to support the broad and intrusive discovery requested.

> 2.    *The prosecutor's conduct in bringing this prosecution was reasonable*

a.    Nor does the second presumptive-vindictiveness factor, "the reasonableness of the prosecutor's actions," *Zakhari*, 85 F.4th at 379, support Defendant's motion to compel. In addressing that factor in its prior order, this Court emphasized that Defendant was indicted "58 days [after Defendant] filed suit in Maryland" to challenge his removal, and HSI reopened its investigation of Defendant seven days after the Supreme Court ruled that the government had to facilitate Defendant's

release from custody in El Salvador. Order 14. As discussed above, however, the prosecutor here, Mr. McGuire, had no stake in those other proceedings, so the timing of the prosecution is not suggestive of vindictiveness.

The same would be true even if the relevant actor were (erroneously) deemed to be the entire government or Executive Branch, rather than Mr. McGuire himself. There is no basis for a presumption of prosecutorial vindictiveness when the charging decision "is attributable to legitimate reasons," including "'changed or altered circumstances which properly bear on prosecutorial discretion.'" *United States v. Esposito*, 968 F.2d 300, 305 (3d Cir. 1992) (quoting *United States v. Griffin*, 617 F.2d 1342, 1348 (9th Cir. 1980)). And here, Defendant's challenge to his removal—and particularly the Supreme Court's order requiring the government to facilitate his release—presented changed circumstances that clearly provided legitimate, non-vindictive reasons for reinvestigating and prosecuting Defendant. *See id.* Central to the government's opposition to Defendant's civil suit was its determination that he is a criminal whose "return to the United States would pose a threat to the public." *Abrego Garcia*, 145 S. Ct. at 1018. At the time that the investigative and prosecutorial decisions were made here, there was a possibility and increasing likelihood that Defendant *would* return to the United States as a result of that civil litigation. Consistent with the Deputy Attorney General's television statement, *see* Order 6, 14-15, Defendant's civil suit seeking his return to the United States thus gave the government strong, non-vindictive reasons for investigating and prosecuting Defendant in order to ensure that he would not pose a threat to the public in the event of his return to this country. The timing of this prosecution provides no basis for finding a realistic likelihood of vindictiveness.

This Court also highlighted public statements made about Defendant by other Executive Branch officials, such as the Secretary of Homeland Security's description of Defendant as a "gang

member, human trafficker, and serial domestic abuser," and the Attorney General's statement that Defendant would be found guilty in this case. Order 6 (citation omitted). But those statements similarly reflect a legitimate, non-vindictive desire to prosecute Defendant. Because "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings," "[t]he presence of a punitive motivation … does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity." *Goodwin*, 457 U.S. at 372-73. Public statements characterizing an individual as a dangerous criminal indicate a permissible "punitive motivation," *ibid.*, not a vindictive one.

b. Defendant's motion to compel fails for the additional reason that he has failed to make an evidentiary showing that similarly situated individuals have not been prosecuted. In *United States v. Armstrong*, *supra*, the Supreme Court held that a defendant claiming selective prosecution must make such a showing in order to surmount the "rigorous standard" for obtaining discovery on such a claim. 517 U.S. at 464-65, 468-69. That "significant barrier" to discovery reflects that "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," and they are entitled to a presumption that "they have properly discharged their official duties." *Id.* at 464 (citations and internal quotation marks omitted). "Were the law otherwise all enforcement proceedings could be turned into subjective expeditions into motive without the stabilizing, objectively verifiable, element of an unequal pattern of enforcement." *People v. Walker*, 200 N.E.2d 779, 780 (N.Y. 1964) (Burke, J., dissenting). "The defendant's main protection against the bringing of unfounded criminal charges … is through the institution of the grand jury," *United States v. Suarez*, 263 F.3d 468, 481 (6th Cir. 2001), not through claims requiring courts to probe the mental processes and motivations of prosecutors (let alone the motives of sundry other Executive Branch

officials, as Defendant would have it).

*Armstrong*'s "similarly situated" requirement applies to claims of selective and vindictive prosecution alike, which are simply two versions of the same claim that the prosecutor violated "constitutional constraints" on "[s]electivity in the enforcement of criminal laws." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (citation omitted); *see, e.g.*, *Adams*, 870 F.2d at 1145-46 (emphasizing the absence of similar prosecutions in holding that defendants were entitled to discovery on vindictive prosecution). The same reasons justifying the imposition of that requirement in *Armstrong*, including the presumption of prosecutorial regularity, apply to vindictive prosecution. If the requirement did not apply, defendants with meritless claims of selective prosecution could easily reframe them as claims of vindictive prosecution.

Defendant cannot show that similarly situated individuals have not been prosecuted for the offenses charged here, and he has not tried—he has only claimed that other defendants were charged more quickly. *See* D. Ct. Doc. 105, at 22-23 (Aug. 19, 2025). But no defendant is prosecuted in precisely the same fashion as another, and "prosecutors are entitled to great leeway in their reasons for investigative delay," *United States v. Martinez*, 785 F.2d 663, 670 (9th Cir. 1986) (citing *United States v. Lovasco*, 431 U.S. 783, 792-96 (1977)). Defendant is required to show "that similarly situated individuals … were *not prosecuted*," not that they *were* prosecuted but more slowly, more quickly, with more or fewer counts or codefendants, or with any of the other countless variations that can be identified between prosecutions. *Armstrong*, 517 U.S. at 465 (emphasis added). For that reason as well, Defendant cannot show a sufficient need to overcome the government's privilege concerns. He is not entitled to further discovery on his flawed claim of vindictive prosecution.

### C. At A Minimum, The Discovery Request Should Be Narrowed And A Protective Order Should Be Entered

At the very least, Defendant's requested discovery should be considerably narrowed, consistent with the "proper narrow scope" of discovery contemplated by this Court and by Supreme Court precedent. Order 15; *see Cheney*, 542 U.S. at 390. Again, Defendant seeks "the production of communications and documents, between March 24, 2025 and June 6, 2025, among the federal officials, at all levels, who had input into the reopening of the investigation into [Defendant] and the decision to charge him." Mot. 1. That request is extremely overbroad—on its face, it is not even limited by subject matter to materials *related to this case*. Any disclosure order should at a minimum be limited to communications and documents sent to or from the Acting U.S. Attorney, on or before the date of Defendant's indictment, which pertain to the decision to charge Defendant. Even assuming that other officials' motives were relevant to Defendant's vindictive-prosecution claim, contrary to the authority discussed above, their views could only possibly matter if they were somehow communicated to Mr. McGuire, the "actual decisionmaker[]" here, before the indictment, Order 8. Similarly, documents and communications related only to "the reopening of the investigation" into Defendant, Mot. 1, are likewise immaterial; no authority recognizes a claim of "vindictive investigation," and this Court did not authorize discovery in support of such a claim.

Even were discovery so narrowed, some of the responsive documents would still be privileged and highly sensitive—for example, the above-referenced prosecution memoranda and related emails prepared within the Office of the U.S. Attorney. It goes without saying that such materials are privileged and highly sensitive and should not be subject to disclosure to a criminal defendant unless absolutely necessary. *See, e.g.*, *United States v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000) (applying the deliberative process and attorney work product privileges to prosecution memos); *Wood v. FBI*, 432 F.3d 78, 83-85 (2d Cir. 2005) (Sotomayor, J.) (similar). For that reason, any compelled disclosure should be limited to review by the Court *in camera*, which the Sixth Circuit

has identified as an appropriate means of mitigating the government's confidentiality concerns in this context. *See United States v. LaDeau*, 734 F.3d 561, 573 n.4 (2013).

Finally, the government respectfully requests, in the event the Court grants Defendant's motion to compel in whole or in part, that the government be afforded a reasonable time (at least seven days) to achieve compliance with the Court's order or to seek relief in the court of appeals.

## CONCLUSION

The United States has produced significant discovery materials, including all reports that have been generated in this case, two detailed prosecution affidavits about the internal decisions made to bring this prosecution, and additional documents requested by the defense beyond the July 13, 2025, discovery letter. Additionally, the Acting United States Attorney—the sole decision maker in bringing this prosecution—will testify at the evidentiary hearing. Despite the significant evidence made available to the defense, they have now asked the Court to order the government to produce material that is clearly privileged under well-established precedent. The defendant's legal reasoning strains the bounds of all the relevant federal law on this issue.

Defendant's motion for additional discovery related to his motion for vindictive or selective prosecution should be denied.

Respectfully submitted,

 */s/ Robert E. McGuire*
Robert E. McGuire
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, TN  37203

*/s/ Jacob Warren*
Jacob Warren
Co-Director, Task Force Vulcan

22

/s/ Christopher Eason
Christopher Eason
Co-Director, Task Force Vulcan

/s/ Jeremy Franker
Jeremy Franker
Deputy Director, Task Force Vulcan

/s/ Jason Harley
Jason Harley
Task Force Vulcan