IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>*Defendant.* | No. 3:25-cr-115<br><br>Judge Waverly D. Crenshaw, Jr. |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S
MOTION TO COMPEL**

The government's attempt to circumvent this Court's previous order should be rejected. If it will not produce appropriate discovery, then the case must be dismissed. The Court held "that there is a realistic likelihood that the prosecution against [Mr. Abrego] may be vindictive," and he "is therefore entitled to discovery and a hearing." (Dkt. 138 at 9). The Court also noted that senior officials' public statements "come close to establishing actual vindictiveness," a conclusion driven, in part, by Deputy Attorney General Todd Blanche's "remarkable statements" that "could directly establish that the motivations for Abrego's criminal charges stem from his exercise of his constitutional and statutory rights." (*Id.* at 7-8).

The government bears the burden of rebutting Mr. Abrego's *prima facie* showing of vindictiveness. And it must produce discovery relevant to that showing. Evidently unwilling to do so, the government is left in the untenable position of defending itself from allegations of "stonewalling" (Dkt. 178 at 7) *while stonewalling*. The reason to stonewall is clear enough: the government confesses that discovery into the communications of officials senior to Mr. McGuire would be "highly damaging." (*Id.* at 8). So the government seeks to limit the scope of the evidence to Mr. McGuire and those below him. Ordinarily, a Deputy Attorney General found by a Court to have made "remarkable" statements possibly showing "actual vindictiveness" would be on the first plane to Nashville, trying to clear his name. Not here. Instead, the government is unwilling to explore, or explain—let alone defend—Mr. Blanche's public remarks. Nor those of the Secretary of DHS. Nor those of the Attorney General. Nor any of their motivations or involvement. In support of that refusal, the government relies on arguments this Court already rejected; arguments it should reject again. The government should produce appropriate discovery. If it will not, then this case should be dismissed based on the government's inability to meet its burden of proof.

1

## I. The Narrow Discovery Required Here Includes Evidence From Senior Officials

The government is laser-focused on cabining discovery so that it includes *only* "communications and documents sent to or from the Acting U.S. Attorney, on or before the date of Defendant's indictment." (Dkt. 178 at 21; *see also, e.g.*, *id.* at 13-20 (rehashing arguments about Mr. *McGuire*'s stake in the prosecution and his conduct)[1]). But the proper scope of "narrow discovery" is much broader than the government claims. As this Court already recognized, discovery must include DOJ and DHS officials senior to Mr. McGuire.[2]

The government concedes, as it must, that the Court found "a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit." (Dkt. 178 at 3 (quoting Dkt. 138 at 13)). That finding dooms the government's opposition. "[A]lbeit unknowingly" explains why: if Mr. McGuire acted unknowingly, then *by definition*, discovery limited solely to him, and to his direct communications, will be insufficient. Insufficient to comply with the Court's order; and more importantly, insufficient to satisfy the government's burden of proof.

The Court has already recognized that the Sixth Circuit decision in *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989), requires rejection of the government's argument. Per the Court:

---

[1] This section of the government's brief doubles as a backdoor motion for reconsideration. (*See* Dkt. 178 at 13 n.3). The government's failure to actually move to reconsider is a telling concession that such relief is unwarranted. Reconsideration is only appropriate if there is (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in law; or (4) a need to prevent manifest injustice. *E.g. United States v. Pate*, No. 09 Cr. 106, 2022 WL 840317, at *1 (M.D. Tenn. Mar. 10, 2022). None of those bases exist here.

[2] The government argues that high-ranking officials may only be called to testify about why they took official actions under "extraordinary circumstances." (Dkt. 178 at 8 n.2 (quoting *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985))). The defense will respond more fully to a motion to quash once filed, but the government would do well not to ignore what is obvious to everyone else: the circumstances of this case *are* extraordinary. *See, e.g.*, *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring) (describing Mr. Abrego's circumstances as "extraordinary").

"The lesson from *Adams* is that the vindictive prosecution analysis is not so limited as to Acting U.S. Attorney McGuire, nor is it limited only to the DOJ." (Dkt. 138 at 12).

In *Adams*, the Sixth Circuit remanded for discovery into "the narrow issue of whether the EEOC, acting on an improper motive, induced the [DOJ] to institute a prosecution that would not otherwise have been undertaken." 870 F.2d at 1146. The scope of the ensuing "narrow" discovery in that case is informative here. The district court, on remand, "did not apply totally the discovery procedures in the Federal Rules of Civil Procedure," but *did* allow discovery including "interrogatories," document discovery, and "discovery depositions"—including a deposition of the "Head Attorney" at the EEOC—and then conducted an evidentiary hearing involving "the presentation of 16 witnesses in person or by deposition." *United States v. Adams*, 832 F. Supp. 1138, 1141-42 (W.D. Tenn. 1993). The discovery sought here is far narrower than that ordered in *Adams*. Because this Court has recognized that Mr. McGuire may have been an (unknowing) instrument of the vindictive motivations of more senior federal officials, it is necessary for discovery to include communications and documents from those officials, relating to the narrow subject matter of the reopening and charging of this case, and from the narrow timeframe running from the filing of Mr. Abrego's Maryland case to the unsealing of the indictment here.

## II. The Government's Executive Privilege Claim Fails

The government's privilege argument is long on uncontroversial hornbook law, but woefully short on applying the law to the facts of this case. The government asserts that for materials relating to the decision-making process in this case, the "deliberative process privilege fits…like a glove." (Dkt. 178 at 10-11). But that is true any time discovery is ordered on a vindictive prosecution motion. As we have explained, discovery on such a motion definitionally entails inquiring into the motives of Executive Branch officials, and therefore always implicates the privilege concerns the government now raises. (*See generally* Dkt. 148; *see also* Dkt. 159 at 5-

3

6). If the government were correct, discovery would *never* be available on a vindictive prosecution motion. This Court already rejected that position.

And that is not the law. The privileges asserted are, as the government concedes, "qualified privilege[s] that can be overcome by a sufficient showing of need." (Dkt. 178 at 10). This Court found that Mr. Abrego made perhaps the quintessential showing of need: he "carried his burden" of showing a "realistic likelihood" that this prosecution "may be vindictive." (Dkt. 138 at 8, 15). A vindictive prosecution is government misconduct: it is "patently unconstitutional," a "due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also, e.g.*, *United States v. Meyer*, 810 F.2d 1242, 1244-45 (D.C. Cir. 1987) (treating prosecutorial vindictiveness as "governmental misconduct"). That is the precise circumstance in which qualified executive privileges yield. "[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (cleaned up). Notwithstanding the privileges the government now cites, the Sixth Circuit has repeatedly ordered discovery into Executive Branch decision-making when defendants have made a *prima facie* vindictiveness showing. *See United States v. Zakhari*, 85 F.4th 367, 383-84 (6th Cir. 2023); *Adams*, 870 F.2d at 1146. The same is appropriate here, and a generalized assertion of executive privilege is no obstacle.[3]

---

[3] The government has confirmed the existence of certain documents that it seems to be asserting privilege over, namely a "memorandum" written by Ben Schrader explaining why he "would decline to charge" Mr. Abrego's case and email exchanges between Mr. McGuire and Mr. Schrader (Dkt. 178 at 7), and has implied that Mr. McGuire has written communications with the Office of the Deputy Attorney General (*see* Dkt. 178-1 ¶ 2 (omitting "the Office of the Deputy Attorney General" from a list of offices with which Mr. McGuire has not communicated directly). Those documents should at the very least be produced *in camera* so that the Court can evaluate whether they are relevant to Mr. Abrego's motion and whether any privilege applies. But these are

4

Nor does *Cheney v. United States District Court*, 542 U.S. 367 (2004), mean what the government claims. In the government's telling, that case—about a civil subpoena to the Vice President—shows that the government can *always* permissibly assert executive privilege on a blanket basis, without having collected or reviewed the relevant documents. (*See* Dkt. 178 at 12-13). But that claim is refuted by clear language from *Cheney*, which distinguished the civil subpoena at issue there from a criminal subpoena. *Cheney*, 542 U.S. at 384 (the "distinction" between criminal and civil cases "is not just a matter of formalism," as the "need for information in the criminal context is much weightier"). "In light of the fundamental and comprehensive need for every man's evidence in the criminal justice system, not only must the Executive Branch first assert privilege to resist disclosure, but privilege claims that shield information from a grand jury proceeding or criminal trial are not to be expansively construed, for they are in derogation of the search for truth." *Id.* (cleaned up). Thus, *unlike* in a civil case, "withholding materials from a tribunal in an ongoing criminal case when the information is necessary to the court in carrying out its tasks conflicts with the function of the courts under Art. III. Such an impairment of the essential functions of another branch is impermissible." *Id.* (cleaned up); *accord United States v. Nixon*, 418 U.S. 683, 713 (1974) (executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial").

Here, the privilege must be construed narrowly and "the Executive Branch [must] first assert privilege to resist disclosure." *Cheney*, 542 U.S. at 384. The standards for doing so are well-known: the government, like any party, must collect and review documents, and assert privilege over them in a log that the defense and the Court can scrutinize. (*See* Dkt. 159 at 5-6). Until it does so, the government's privilege claims should be rejected.

---

not the main documents Mr. Abrego seeks here, as discussed above.

## **CONCLUSION**

For the foregoing reasons, Mr. Abrego respectfully requests that the Court either compel the government to produce discovery or dismiss this case with prejudice.

Dated: October 24, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

      /s/ Sean Hecker