# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:25-cr-00115 |
| KILMAR ARMANDO ABREGO GARCIA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Kilmar Abrego Garcia ("Abrego") has filed a Motion and Memorandum of Law in Support of Issuance of Order requiring Department of Justice (DOJ) and Department of Homeland Security (DHS) Officials to Refrain from Making Prejudicial Extrajudicial Statements, (Doc. No. 118), which is fully briefed. (Doc. Nos. 149; 169). He cites media arising primarily from his civil lawsuit, successfully challenging his deportation to El Salvador, in the District of Maryland, the Fourth Circuit, and ultimately before the Supreme Court. The high-profile nature of his immigration case resulted in government officials and those supportive of Abrego regularly commenting to the media. Now that he has been indicted in this District, Abrego asks the Court to freeze extra-judicial comments to ensure his Constitutional right to an impartial jury.

Abrego rightly notes that he is entitled to trial "by an impartial jury" and that pervasive and inflammatory pre-trial publicity might compromise this fundamental right. See Chandler v. Florida, 449 U.S. 560, 574 (1981); Rideau v. Louisiana, 373 U.S. 723, 726–27 (1963). The Court is mindful that before restraining speech there must be a "clear and present danger" to Abrego's Sixth Amendment right to a fair trial. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 556 (1976). See also United States v. Ford, 830 .2d 596, 598 (6th Cir. 1987). Imposing an order restraining the political speech of executive branch members would be an extraordinary step. That

step is unnecessary here because the Court has a preexisting local rule that applies to all litigants and seeks to harmonize the competing interests of the First and Sixth Amendments. See L. Crim. R. 2.01(a). Because the Local Criminal Rule already prohibits DOJ and DHS employees from making extrajudicial statements that will "have a substantial likelihood of materially prejudicing" Abrego's right to a "fair trial," id., Abrego's Motion will be granted to the extent the Local Criminal Rule already applies to them.

I. **Procedural History and Publicity**

"On March 15, 2025, the United States removed [Abrego] from the United States to El Salvador," due to an admitted "administrative error." Noem v. Abrego Garcia, 604 U.S. ----, 145 S. Ct. 1017, 1018 (2025). Nine days after his removal, Abrego sued DHS Secretary Kristi Noem, Attorney General Pamela Bondi, Secretary of State Marco Rubio, and other DHS officials challenging his removal and seeking an injunction requiring his return to Maryland. Abrego Garcia, 777 F. Supp. 3d at 510. The District Court in Maryland granted relief and ordered the Government to "facilitate" Abrego's return to the United States. Abrego Garcia v. Noem, 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025); as amended, 2025 WL 1085601 (D. Md. Apr. 10, 2025). The United States Court of Appeals for the Fourth Circuit and the Supreme Court of the United States agreed. See Abrego Garcia v. Noem, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025); Abrego Garcia, 145 S. Ct. at 1018. In two unanimous opinions, the Fourth Circuit and the Supreme Court required the Government to "facilitate" Abrego's return. See id.

A few days after the Supreme Court affirmed the District Court's injunction, DHS reopened its criminal investigation into Abrego's November 30, 2022, traffic stop in the Middle District of Tennessee. On April 27, 2025, DHS referred Abrego's November 30, 2022 traffic stop to the U.S. Attorney's Office for possible human smuggling charges. On May 21, 2025, a Middle District of

2

Tennessee grand jury returned a two-count indictment against Abrego. An arrest warrant issued, prompting the United States to return Abrego from El Salvador. Abrego was arrested and brought to this District on June 6, 2025.

Since his arrest Abrego has continued to litigate his immigration case in the District of Maryland, as well as defend himself in the Middle District of Tennessee. Media attention about Abrego started in March 2025 when the United States sent him to El Salvador, months before his indictment in the Middle District of Tennessee. That pre-indictment media consisted of government and Abrego supporters who praised and criticized his removal to El Salvador. While Defendant identifies numerous Executive Officials' comments in August and September 2025, similar comments took place as early as March 2025. These comments, both before and after his indictment, include the following:

- On April 16, 2025, DHS issued a press release entitled, "the Real Story: Kilmar Abrego Garcia is an MS-13 Gang member with a history of violence." See https://www.dhs.gov/news/2025/04/16/kilmar-abrego-garcia-ms-13-gang-member-history-violence. In that release, DHS cited the following "fast facts": (1) "When Garcia was arrested, he was found with rolls of cash and drugs," (2) "[h]e was arrested with two other members of MS-13," (3) "[w]hen arrested, he was wearing a sweatshirt with roles of money covering the ears, mouth, and eyes of presidents on various currency denominations. This is a known MS-13 gang symbol of see no evil, hear no evil, say no evil," (4) "[t]wo judges found that he was a member of MS-13. That finding has not been disturbed," and (5) "[i]ntelligence reports found that he was involved in human trafficking."

- On June 6, 2025, Attorney General Pam Bondi commented directly on Abrego's arrest saying "[t]he grand jury found that over the past nine years, Abrego Garcia has played a significant role in an alien smuggling ring. They found this was his full-time job, not a contractor. He was a smuggler of humans and children and women. He made over 100 trips, the grand jury found, smuggling people throughout our country." See https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122.

- That same day, Attorney General Bondi also stated that Abrego: "trafficked firearms and narcotics throughout our country on multiple occasions, that he "solicited nude videos and photographs of a minor" and that he contributed to "the murder of a rival gang member's mother." See https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia. She concluded that "these facts demonstrate that Abrego Garcia is a danger to our community." Id.

- An August 22, 2025 statement by the DHS Secretary that Defendant is a "MS-13 gang member, human trafficker, serial domestic abuser, and child predator." (Doc. 118 at 3)

- An August 22, 2025 statement by the White House Deputy Press Secretary that Defendant "is a criminal illegal alien, wife-beater, and an MS13 gang member facing serious charges of human smuggling. He will face justice for his crimes." (Id.)

- An August 24, 2025 statement by Border Czar Tom Homan that Defendant is "a criminal alien…a member of MS-13…a wifebeater…a human trafficker…[and] a bad person [who is] not going to be here." (Id. at 4).

- An August 25, 2025 press release from DHS that said, "President Trump is not going to allow this illegal alien, who is an MS-13 gang member, human trafficker, serial domestic abuser, and child predator, to terrorize American citizens any longer." (Id. at 5).

The Executive Branch officials were not alone in feeding the publicity about Defendant. Defendant's lawyers have also contributed to pretrial publicity about Defendant. (See Doc. No. 139). After all, it was defense counsel who publicly disclosed the existence and substance of plea negotiations in the criminal case. (Doc. No. 113). Indeed, the Court's Local Rules specifically prohibit statements by counsel of the "possibility of a plea of guilty to the offenses charged" because such statements will more likely than not have a material prejudicial effect" on the case. L. Crim. R. 2.01(A)(2)(ii). This is obviously prejudicial to Defendant because it suggests to potential jurors that Defendant is guilty, notwithstanding the Constitutional presumption to the contrary.

## II. ANALYSIS

Intense publicity surrounding a criminal proceeding—*i.e.*, "trial by newspaper"—poses significant dangers to a fair trial. See Pennekamp v. Florida, 328 U.S. 331, 359 (1946) (Frankfurter, J., concurring); see also Bridges v. California, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."). "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1075 (1991). Courts must ensure that the jury venire has not been tainted by pretrial publicity in a way that biases the jury against one party or another. See Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979) (Courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.").

To limit potential bias, Defendant asks the Court to apply Local Criminal Rule 2.01(a)(2)(B) to "order that all DOJ and DHS officials involved in this case, and all officials in this supervisory chain, including Attorney General Pamela Bondi and Secretary of Homeland Security Kristi Noem, refrain from making extrajudicial comments that pose a substantial likelihood of materially prejudice this proceeding." (Doc. No. 118 at 2) (citing L. Crim. R. 2.01(a)(2)(B)). That rule reflects the established principle that "although litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in the context of both civil and criminal trials." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32, n.18 (1984). The Local Criminal Rule, as the Constitution demands, restrains speech that may pose a clear and present danger to a fair trial by an unbiased jury. See United States v. Ford, 830 F.2d 596, 598 (6th Cir. 1987) (applying the clear and present danger test to a

5

gag order); see also King v. Parker, 2020 WL 4883014, at *12 (M.D. Tenn. July 20, 2020). The speech restrained in Local Criminal Rule 2.01(a)(2) must constitute a "substantial likelihood of material prejudice" to fair trial rights. Gentile, 501 U.S. at 1075 (the phrases "substantial likelihood of material prejudice" and "clear and present danger" are interchangeable because they both preclude statements that could "grave[ly] prejudice" a defendant's right to a fair trial and impartial jury).

Turning to this case, the Court finds that past statements by government officials about Abrego may violate Local Criminal Rule 2.01(a) because they are statements that the government lawyers in this case are precluded from making. That rule sets forth examples of statements that "more likely than not to have a material prejudicial effect on a proceeding." L. Crim. R. 2.01(a)(2)(B). They include statements about:

> (i) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the attorney or law firm may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, an attorney associated with the prosecution may release any information necessary to aid in apprehension or to warn the public of any dangers presented;
>
> (ii) The possibility of a plea of guilty to the offenses charged or to a lesser offense, the existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement;
>
> (iii) The performance of any examination or tests or the accused's refusal or failure to submit to an examination or test;
>
> (iv) The character, credibility, reputation, or criminal record of a party or the identity, testimony, or credibility of prospective witnesses, except that the attorney may announce the identity of the victim if the announcement is not otherwise prohibited by law;
>
> (v) The identity or nature of physical evidence expected to be presented;

6

(vi) The fact that an accused has been charged with a crime, unless there is included therein a statement that the charge is merely an accusation and that the accused is presumed innocent unless and until proven guilty;

(vii) Any opinion as to the accused's guilt or innocence, or as to the evidence in the case; or

(viii) Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

As discussed above, government employees have made extrajudicial statements that are troubling, especially where many of them are exaggerated if not simply inaccurate. (Doc. Nos. 118 at 2–8; 124). These statements made allegations regarding Abrego's "character or reputation" and expressed government officials' views on Abrego's "guilt or innocence." For example, the DHS Secretary stated that Abrego is a "MS-13 gang member, human trafficker, serial domestic abuser, and child predator." (Doc. No. 118 at 3). That statement, and statements like it, are contrary to L. Crim. R. 2.01(a)(2)(i) and (iv). Similarly, on June 6, 2025, the Attorney General stated that Abrego played "a significant role in an alien smuggling ring … [that] this was his full-time job, not a contractor … [that] [h]e was a smuggler of humans and children and women … [and that] [h]e made over 100 trips." See https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122. This statement is at odds with L. Crim. R. 2.01(a)(2)(vii) because it offers an opinion "as to the evidence in the case." To assist DOJ and DHS employees going forward Government's counsel of record shall provide them a copy of this Memorandum Opinion and Order to understand their obligations under L. Crim. R. 2.01(a). Their compliance will ensure that any future statements will not "pose a substantial likelihood of materially prejudicing this proceeding." With knowledge of the Local Rule, any future statements that pose a clear and present danger to Abrego's fair trial rights may subject the speaker to

sanctions. See United States v. Brinley, 684 F.3d 629, 634 (6th Cir. 2012) (holding that a district court's local rules carry the "force of law.").

Moving forward, "the primary tool for discerning actual prejudice" to a defendant's right to a fair and impartial jury from pretrial publicity "is a searching voir dire of prospective jurors." United States v. Lawson, 535 F.3d 434, 441 (6th Cir. 2008) (quoting Foley v. Parker, 488 F.3d 377, 387 (6th Cir. 2007)). As the parties know, the August 7, 2025 Scheduling Order set in motion initial preparation for voir dire. (Doc. No. 103). The parties have already offered a proposed juror questionnaire that the Court will finalize. The juror questionnaire will save time and focus the Court's and parties' questions to the jury pool to identify jurors who can be unbiased and apply the law to the evidence presented at trial. This will certainly include what publicity potential jurors have been exposed to and what, if any, impact it has on their ability to serve.

On a positive note, the Court understands that the intense media coverage of this case has gradually subsided both nationally and specifically in the Middle District of Tenneessee. See Appendix A. That publicity about Abrego is diminishing over time bodes well for a fair trial because publicity "well in advance of trial pose[s] less of a danger of prejudice." United States v. Koubriti, 305 F. Supp 2d 723, 745 (E.D. Mich. 2003) (citing Gentile 501 U.S. at 1079). However, "damaging and highly inflammatory statements are not so readily cured through the passage of time." Id. That is why it is critically important for both sides comply with L. Crim. R. 2.01 moving forward.

An appropriate order will issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

8

Case 3:25-cr-00115   Document 182   Filed 10/27/25   Page 8 of 11 PageID #: 1841

**APPENDIX A:**





| Row Labels | Count of Title |
|---|---|
| Clarksville Leaf-Chronicle | 9 |
| Columbia Daily Herald | 14 |
| Cookeville Herald-Citizen | 4 |
| Fox 17 | 39 |
| Lebanon Democrat and Wilson County News | 3 |
| Murfreesboro Daily News Journal | 11 |
| Portland Leader | 1 |
| Tennessean | 29 |
| WKRN | 62 |
| WPLN-FM | 9 |
| WSMV | 36 |
| WTVF | 43 |
| **Grand Total** | **260** |



11