# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:25-cr-00115 |
| KILMAR ARMANDO ABREGO GARCIA, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kilmar Armando Abrego Garcia's ("Abrego") Motion to Strike Surplusage from the Indictment. (Doc. No. 158). The Government filed a response in opposition (Doc. No. 177), and Abrego replied (Doc. No. 190). For the following reasons, the Motion will be denied.

## I.  BACKGROUND

On May 21, 2025, Abrego was named in a two-count Indictment, charging him with Conspiracy to Transport Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count One), and Unlawful Transportation of Undocumented Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (Count Two). (Doc. No. 3). Specifically, Count One alleges that between 2016 and 2025 Abrego conspired with "CCs-1 through 6, and others . . . , to knowingly and in reckless disregard of the fact that certain aliens had come to, entered, and remained in the United States in violation of law, transport and move said aliens within the United States . . . with intent to further the unlawful purpose in the United States and for private financial gain." (Id. ¶ 9). Count Two alleges that on November 30, 2022, Abrego "knowing[ly] and in reckless disregard of the fact that certain aliens had come to, entered, and remained in the United States in violation of law, did transport and move

said aliens within the United States . . . with intent to further the unlawful presence of the aliens in the United States and for private financial gain, and did aid and abet the same." (Id. ¶ 32). The thirty-two-paragraph Indictment describes the elements of these two offenses, but it also includes "introductory allegations" and background information involving Abrego's conduct "[i]n addition to transporting undocumented aliens." (See id. ¶¶ 14–15).

Abrego now moves to strike allegations from the Indictment regarding his "purported gang membership; narcotics and firearms trafficking; and abuse of female undocumented aliens." (Doc. No. 158). He argues that these "irrelevant and inflammatory (and unfounded) allegations . . . are quintessential surplusage and should be stricken." (Id. at 1). The Government takes the opposition position, contending that these allegations "are relevant to the charge and are not inflammatory and prejudicial and should therefore not be stricken as surplusage." (Doc. No. 177 at 2).

## II. LEGAL STANDARD

The Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). If the Indictment does not meet these criteria, the Court, "[u]pon the defendant's motion, . . . may strike surplusage from the indictment[.]" Fed. R. Crim. P. 7(d). The primary purpose of this rule is "to protect the defendant against immaterial or irrelevant allegations in an indictment, which may be prejudicial." United States v. Johnson, 256 F. Supp. 3d 755, 759 (M.D. Tenn. 2017) (citations, internal quotation marks, and ellipses omitted); see also Gambill v. United States, 276 F.2d 180, 181 (6th Cir. 1960) ("Unnecessary allegations are 'surplusage' and can be ignored."). "The decision whether to strike language from an indictment rests within the sound discretion of the district court." United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001); accord United States v. Williams, 158 F. App'x 651, 664 (6th Cir. 2005).

The Court may exercise its discretion to strike surplusage from the Indictment only if the disputed language is: (i) irrelevant to the charges against the defendant, *and* (ii) prejudicial or inflammatory. Johnson, 256 F. Supp. 3d at 759 (collecting cases); see also United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974). "Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand[,] and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) (quoting United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989)).

### III.  ANALYSIS

Abrego asks the Court to "strike from the Indictment: (1) allegations concerning MS-13[1] and [his] purported membership therein in paragraphs 5, 6, 7, 11, 16, 17, and 18; (2) allegations concerning narcotics and firearms trafficking in paragraphs 14 and 15; and (3) allegations of reports of [his] abuse of female undocumented aliens in paragraph 27." (Doc. No. 158 at 1, 10). He argues that these three categories of information constitute "surplusage" under Rule 7(d) because they are irrelevant to the charged alien smuggling offenses and highly prejudicial to his defense.

The Government is correct that "the critical portion of the analysis" is whether the disputed language is relevant to the crime or crimes charged in the Indictment. (Doc. No. 177 at 5). An indictment by its very nature is prejudicial to the defendant, so it would not make sense for the

---

[1] According to the Indictment, MS-13 is a "transnational criminal organization" otherwise known as "La Mara Salvatrucha." (Doc. No. 3 ¶ 5).

Court to strike language from an Indictment just because it is prejudicial. So long as the "government hopes to properly prove" the allegations at trial, and the allegations appear "legally relevant," the Court will not strike them from the Indictment as surplusage. See Moss, 9 F.3d 543 at 550.

The Government's explains its theory of the case and how the three challenged categories of information are relevant to Abrego's charges. First, the Government intends to offer evidence of Abrego's alleged MS-13 membership to provide "context" for the conspiracy and its overall goal "to earn money from transporting undocumented aliens." (Doc. No. 177 at 7–8). The Government asserts that Abrego's alleged association with MS-13 affected his potential travel routes and his unique ability to collect profits from other MS-13 members for transporting undocumented aliens. (Id.). Second, the Government intends to prove that "guns were transported while the defendant was also transporting the undocumented aliens," which impacted the conspiracy's "normal methods of transportation" and "how best to achieve the goals of the conspiracy without detection." (Doc. No. 177 at 9–10). The Government will also try to prove that Abrego's co-conspirators distrusted him because he sometimes transported drugs, and this led to CC-1 and CC-2 installing tracking devices on his vehicle. (Id. at 11). Third, the Government will attempt to prove that Abrego's alleged abuse of female undocumented aliens during the conspiracy upset his co-conspirators because they believed "it could severely impact their operations and profits." (Id. at 13). All of this, according to the Government, will provide context for how the conspiratorial "organization operated, where they placed their priorities, and what the leaders did in situations where someone, like the defendant, did things in addition to his assigned tasks that could impact profits." (Doc. No. 177 at 13).

Abrego responds that the Government charged him with "an alleged conspiracy to transport aliens," and "not some sweeping racketeering conspiracy, and therefore his "purported membership in MS-13" does not make "the existence of the conspiracy or his participation in it more probable." (Doc. No. 190 at 2). He further contends that MS-13 is irrelevant in this case because there is no evidence that any co-conspirators were members of MS-13 or that any other MS-13 members participated in the conspiracy. (Id.). As for the allegations about "transporting narcotics and firearms and abusing female aliens," Abrego argues that the only reason the Government wants to offer this evidence is to "dirty up" his character, "not because it is legitimately relevant" to the alien smuggling conspiracy. (Id. at 4).

Having considered the parties' arguments, the Court finds good cause to believe that Abrego's alleged MS-13 membership, his alleged narcotics and firearms trafficking, and his alleged abuse of female undocumented aliens are at least matters the Government "hopes to properly prove at trial." Moss, 9 F.3d 543 at 550. Even if these contextual allegations are not essential elements the Government must prove at trial, that does not mean they are clearly irrelevant to Abrego's charges. As this Court held in Johnson, "[t]he mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." 256 F. Supp. 3d at 760 (citation omitted); see also United States v. Sittenfeld, 128 F.4th 752, 780 (6th Cir. 2025) (noting that the "indictment may include significant background information and circumstantial evidence" even if the "indictment does not charge everything it describes"). Although these topics are sensitive and potentially prejudicial to Abrego's defense, that is not enough for the Court to strike these allegations under Rule 7(d). Moss, 9 F.3d at 550; see also, e.g., United States v. Jiminez, 824 F. Supp. 351, 370 (S.D.N.Y. 1993) ("If the evidence of

the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken.").

To be clear, the Government still has the burden to prove the Indictment's allegations at trial based on *admissible* evidence. Abrego will have a full and fair opportunity to contest that evidence through cross-examination or otherwise. If the Government does not prove its allegations regarding Abrego's purported MS-13 membership, narcotics and firearms trafficking, or abusive conduct, or if it fails to connect those allegations to the charges in the Indictment, then the Court can also revisit this issue. For now, however, the Court finds that it would be premature to strike the Indictment's challenged language without considering the evidence presented at trial.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Abrego's Motion to Strike Surplusage from the Indictment (Doc. No. 158) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE