IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:25-CR-115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

### NOTICE BY THE UNITED STATES OF INTENT TO USE 404(B) EVIDENCE IN THE GOVERNMENT'S CASE IN CHIEF

COMES NOW the United States of America, by and through the undersigned Acting United States Attorney Robert E. McGuire and provides notice to opposing counsel and this Court of the Government's intent to offer evidence concerning other acts or wrongs under Rule 404(b) of the Federal Rules of Evidence.

To begin with, the United States intends to offer evidence at trial to prove all the allegations in the Indictment. Such evidence is inextricably intertwined with the alleged offenses, and, as such, does not fall under Rule 404(b). Indeed, the Court has already determined, in denying the defendant's motion to strike this language from the Indictment, that (presuming the Government can prove them at trial): "[e]ven if these contextual allegations are not essential elements the Government must prove at trial, that does not mean they are clearly irrelevant to Abrego's charges." (DE # 192, at 5.)

With respect to actual Rule 404(b) evidence, as detailed below, the Government would be willing to enter into factual stipulations with the defense that would obviate the need for the Rule 404(b) evidence proffered herein.

.

1

# LEGAL ARGUMENT

## I. Inextricably Intertwined Evidence Does Not Implicate Rule 404(b)

Rule 404(b) does not apply to *res gestae* evidence consisting of "other acts that are inextricably intertwined with the charged offense . . . the telling of which is necessary to complete the story of the charged offense." *United States v. Olds*, 309 F. App'x 967, 974 (6th Cir. 2009) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748 (citation omitted); *see also United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005).

In this case, the Government intends to offer evidence that the defendant transported illegal aliens as part of a wide-ranging, long running criminal conspiracy designed to turn a profit. As the United States has previously described, the defendant committed other criminal acts during the course of this conspiracy. (DE # 177, 7-13). The United States submits that this kind of evidence provides needed context and understanding about the scope of the conspiracy and the relationship between co-conspirators. *Id.* at 13. For instance, the defendant's membership in MS-13 was used by co-conspirators when the defendant was deployed to seek payment from recalcitrant illegal alien passengers who the co-conspirators believed to be gang members. It was the defendant's gang affiliation, the co-conspirators will testify, that made him the appropriate choice to transport these passengers because the organization had issues collecting fees in the past from gang members. Similarly, the defendant's alleged abuse of female aliens was discussed among the conspirators because of how the defendant's actions affected the financial bottom line of the conspiracy and caused a divide between the defendant and members of the conspiracy because of

2

the potential fallout. This testimony illustrates the depth and relationship of the conspiracy and provide additional proof of its existence.

The United States submits that all the allegations as described in the Indictment are appropriately *res gestae* evidence under the relevant federal case law. Importantly, while *res gestae* evidence is routinely referred to as "background" evidence, such evidence does not need to pre-date the charged offenses to be properly admissible. Even later statements made about a past crime have been determined by the Sixth Circuit to be *res gestae*:

> Such evidence certainly "arises" from the charged conduct and is "directly probative" of the charged offense, as Peete's statements directly relate to the altercation and, indeed, describe in detail Peete's admitted possession of the firearm. Moreover, we have implicitly approved of the admission of a co-defendant's statements relating to a previous criminal event as res gestae. *See United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (concluding that testimony from a co-defendant's cell-mate that the co-defendant had made incriminating statements about a past drug conspiracy involving the defendant was admissible res gestae to prove the past drug conspiracy).

*United States v. Peete*, 781 F. App'x 427, 435 (6th Cir. 2019).

The Sixth Circuit has already ruled that the United States is entitled to put in *res gestae* evidence in such a way that allows the jury to hear all of the evidence and not a sanitized version of it. In a possession of a firearm case, for example, the United States would be allowed to establish that witnesses saw the defendant actually fire the firearm as a way to establish possession as opposed to having witnesses simply say they saw the defendant holding and pointing the firearm.

> Such a retelling, however, unreasonably sanitizes the witnesses' testimony and, more importantly, would likely lead the jury to question the credibility of witnesses who would be unable to explain precisely how they observed Peete allegedly possessing a weapon or whether they were sure the firearm was even real. *See Gibbs*, 797 F.3d at 424 (noting that the defendant was not entitled to a sanitized description of the events underlying the charged conduct); *see also Old Chief*, 519 U.S. at 188, 117 S.Ct. 644 (explaining that jurors may inappropriately draw negative inferences against a party that is unable to provide context for important evidence).

*Id.* at 434–35.

3

Case 3:25-cr-00115   Document 223   Filed 11/13/25   Page 3 of 10 PageID #: 2025

Context, the Sixth Circuit has ruled, is critical to the United States' right to a fair trial. The Sixth Circuit has consistently ruled that these are important considerations for this Court in making the decision about admitting *res gestae* evidence.

## II. Evidence the Government intends to offer under the Rule 404(b) (absent a factual stipulation from the defense)

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of "Crimes, Wrongs, or Other Acts". FED.R.EVID. 404. The rule contains a general prohibition on the admission of other crimes, wrongs, or acts to prove a person's character in order to show that they acted in conformity with that supposed character trait. *Id*. However, an exception to the Rule allows the admission of such evidence for another purpose such as proving intent, plan, absence of mistake, or lack of accident. *Id*. The Rule requires that the United States provide reasonable notice of the general nature of the evidence the United States intends to present to the court and opposing counsel. *Id*.

Under the relevant federal law, this Court should follow a three-step process in evaluating the admissibility of prior-acts evidence under Rule 404(b):

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012).

### A. Evidence concerning phone numbers used by the defendant.

Over the course of the conspiracy, the defendant used multiple different cellphone numbers to communicate with co-conspirators. For example, during 2022, the defendant was using a cellphone assigned a call number ending in 5996 (the "5996 Cellphone") to communicate

4

frequently with Jose Hernandez-Reyes ("Reyes"). In 2022 alone, the 5996 Cellphone had more than 500 calls with a cellphone utilized by Reyes and another co-conspirator. During 2019 and 2020, the defendant was using a different cellphone, which was assigned a call number ending in 5187 (the "5187 Cellphone"), to communicate with co-conspirators.

At trial, the Government intends to offer expert testimony from the FBI's Cellular Analysis Survey Team ("CAST") concerning the cellular cellphone location of the 5996 Cellphone, that demonstrates numerous trips the defendant made in 2022 and 2023 between Maryland and Texas. On November 30, 2022, the location information for the 5996 Cellphone shows the phone move up from Texas in the early morning hours and stop in Putnam County, Tennessee at the time the defendant was pulled over by the Tennessee Highway Patrol (THP), which was recorded on body worn camera footage (BWC).

At 8:01 p.m. on the BWC footage, the defendant tells the THP Officer that he (the defendant) is going to call his "boss"—the owner of the vehicle the defendant was driving that was occupied by nine other passengers. Call detail records from Verizon show a phone call from the 5996 Cellphone to a cellphone used by Reyes at 8:01 p.m. at the exact time the defendant said he was going to call his boss. After the traffic stop the call detail records show that the defendant continued to travel Northeast through Tennessee, Virginia, and Maryland.

The Government also intends to offer at trial the contacts list from a cellphone that was seized from Reyes when Reyes was arrested in December 2019 for alien smuggling. In that contact list, Reyes had the 5187 Cellphone listed as "Kitmar Chofer."

Both the 5187 Cellphone and the 5996 Cellphone were subscribed in the name of the defendant's wife. In advance of trial, the Government would be willing to enter into a factual stipulation with the defense that the defendant was using the 5187 Cellphone and the 5996

5

Cellphone during the relevant time periods described above. Without such a stipulation, the Government would intend to offer Rule 404(b) evidence to establish the defendant's use of both cellphones. With respect to the 5187 Cellphone, the Government intends to offer a domestic violence petition filed by the defendant's wife in the District Court of Maryland for Prince George's County in August 2020. The domestic violence petition, filed by the defendant's wife, lists the 5187 Cellphone as being used by the defendant. Similarly, in May 2021, the District Court for Prince George's County issued a temporary protective order against the defendant for the allegations of domestic violence made by the defendant's wife. The temporary protective order issued in May 2021 lists the 5996 Cellphone as the contact information for the defendant.

While these pieces of evidence are prejudicial to the defendant, they are important pieces of evidence the Government has establishing that *the defendant* – not the subscriber (the defendant's wife) – was using the 5187 Cellphone and the 5996 Cellphone during the relevant time periods. With respect to the *Clay* analysis, and absent a factual stipulation that does not refer to the domestic violence petition filed by the defendant's wife, the Government would submit that all three prongs are met here.

The first prong of the *Clay* analysis is easily met here. The Court must determine if the prior act actually occurred. Here, the relevant inquiry is not if the defendant committed the abuse that his wife accused him of, but if his wife provided the identification information that the defendant was using the cellphones in question. The evidence is clear that the defendant's wife- the closest person to him at the time - would know how to communicate with him. Similarly, she sought to provide that information to the Government at a time she was seeking court intervention to keep her safe, the circumstances of the abuse petition provide necessary context to demonstrate that she had a motive to provide accurate information.

The second prong of the *Clay* analysis asks the Court to review the Government's motive for introducing the information, noting that it cannot be impermissible character. Here, the Government motive is clear and within a well-established exception to Rule 404(b), the evidence will be introduced as identity evidence. The cellphone records show that the subscriber information for the cellphones in question were in the defendant's wife's name. It is common in a criminal conspiracy that the participants use other individual's names in an effort to conceal the identity of the actual user of a device. The defendant did so here. The Government is entitled to use all identity evidence available to show that the defendant was using these devices, including the domestic violence petitions. The evidence that the devices in question link not only to the co-conspirators but also to numerous trips across the country is some of the most powerful evidence that the Government will introduce at trial. The evidence shows that not only did the defendant transport illegal aliens across the country during the time period of the November 30, 2022 traffic stop, but that he did so routinely, just at the indictment alleges.

With respect to the third prong of the *Clay* analysis, the Court must conduct a traditional Fed. R. Evid. 403 balancing test. The Court must find that the probative value of the evidence is not substantially outweighed by its prejudicial effect. Here, it is not. The probative value of the Government identifying that the defendant was the user of the cellphones in question is an important component of the Government's case. The evidence is prejudicial, but not impermissibly so. Additionally, the Government is willing to enter a stipulation that the defendant was the user of the cellphones in question during the relevant time periods of this case and forego introduction of the domestic violence petitions. A stipulation of course would completely eliminate any potential prejudice from the admission of domestic violence petitions.

### B. Pornographic messages between the Defendant and a Government Witness.

One of the Government's witnesses ("Witness-1") at trial – someone not involved in the alien smuggling conspiracy charged in the Indictment – will testify that the defendant attempted to recruit Witness-1 to join the alien smuggling conspiracy during the timeframe of the conspiracy charged in the Indictment. The witness will testify that the defendant invited her to come on the smuggling trips. The statements made by the defendant to Witness 1 are clearly admissions against interest related to the charged conspiracy and not Rule 404(b) evidence at all. However, the defendant did engage in other acts with Witness 1 that could potentially qualify as 404(b) evidence.

When Witness-1 was 15 years' old – and the defendant was 25 years' old– Witness-1 and the defendant exchanged pornographic messages and videos with each other via a messaging application. Additionally, the defendant asked for pornographic images of Witness 1, a minor at the time of the solicitation. The Government does not intend to offer these messages as evidence during Witness-1's direct testimony. The Government can foresee, however, multiple lines of cross examination that would open the door to these messages being admitted on re-direct examination. If the defendant were, for example, to attack Witness-1's personal knowledge of the defendant or Witness-1's close relationship with the defendant, the Government should be allowed to offer these messages at trial. In this context, the evidence would clearly be admissible under the *Clay* analysis.

Under the first prong of the *Clay* factors, it is easy for the Court to determine that the prior act occurred. The Government has previously twice admitted screenshots of messages between an account associated with the Defendant and Witness-1 and submitted testimony about the same. (DE # 53-1, Ex. 3; DE # 92). Under the second prong of *Clay*, the Government would move to introduce the evidence to show the close relationship between the defendant and Witness-1, and

8

Case 3:25-cr-00115   Document 223   Filed 11/13/25   Page 8 of 10 PageID #: 2030

not as character evidence, because the evidence gives context to the levels of trust and familiarity the defendant had with Witness-1. Finally, the messages would clearly not be excluded under a Rule 403 analysis. The probative value is not substantially outweighed by unfair prejudice to the Defendant.

## CONCLUSION

The United States provides this notice as required under Rule 404(b). The Government notes that none of the allegations described in the Indictment are "prior bad act" evidence but, rather, are *res gestae* and a complete story of the crime. With appropriate factual stipulations as described above, the Government does not intend to offer the domestic violence petitions filed by the defendant's wife. Without those factual stipulations, the Government should be allowed to offer its best evidence showing that the defendant was, in fact, using the 5187 Cellphone and the 5996 Cellphone during the relevant time periods.

With respect to Witness-1, the Government does not intend to offer during its direct examination of Witness-1 certain pornographic messages exchanged between Witness-1 and the defendant; however, if the defendant opens the door during cross examination of Witness-1, the Government should be allowed to offer those messages to establish the relationship that Witness-1 did have with the defendant. In both those instances, Rule 404(b) is not violated because the Government's proposed evidence is not being offered for a prohibited purpose, has a significantly high probative value and that value is not substantially outweighed by unfair prejudice to the Defendant.

Respectfully Submitted,

*/s/ Robert E. McGuire*
ROBERT E. McGUIRE
Acting United States Attorney

719 Church Street, Suite 3300
Nashville, TN  37203


 */s/ Jason Harley*
JASON M. HARLEY
Trial Attorney, Joint Task Force Vulcan
*Pro Hac Vice*
719 Church St., Suite 3300
Nashville, TN 37203