# EXHIBIT A

# Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

shecker@heckerfink.com

November 7, 2025

**BY EMAIL**

Robert E. McGuire
Acting United States Attorney
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, Tennessee 37203

     *Re:*  *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn.)

Dear Mr. McGuire:

   We write concerning the government's ongoing efforts to collect documents relevant to Mr. Abrego's motion to dismiss for vindictive and selective prosecution, pursuant to the Court's orders dated October 27, 2025 and November 3, 2025. (Dkts. 186, 208).

   As you are aware, these orders require the production of five categories of documents by November 14, 2025, including "all documents that reflect individuals who directed the Government's change in position from 'deport but not prosecute' to 'prosecute and then deport';" as well as "all documents that reflect the circumstances that motivated that change in position." (Dkt. 186 at 1; Dkt. 208 at 1).[1] The Court rejected the government's attempts to cabin discovery collection to only those communications within or to the U.S. Attorney's Office for the Middle District of Tennessee, requiring it to produce discovery relevant to "[t]he motivations of the people who place[d] the file on [Mr. McGuire's] desk," since those motivations are "highly relevant when considering a motion to dismiss for vindictive prosecution." (Dkt. 185 at 2-3). At the court conference on October 31, 2025, the Court ordered the government to "be ready to . . . explain to the Court that at a minimum [the government has] engaged in the conduct and the search necessary to show a good faith due diligence to find documents." (Dkt. 206 at 19-20). Such a memorialization would ensure that the government has been approaching its collection in a "business-like manner," in compliance with the Court's discovery orders. (*Id.*)

   To ensure that the defense has a meaningful ability to assess whether the government's collection process complies with the Court's orders (*see* Dkts. 186, 191, 208), we request that the

---

[1] The remaining categories include: "any emails between the Deputy Attorney General's Office and the Office of the United States Attorney for the Middle District of Tennessee between March 24, 2025 and June 6, 2025, that the Government has apparently already identified, (Doc. No. 178 at 5); . . . emails or any other documents drafted by Ben [Schrader] about the Abrego case that the Government has apparently already identified, (id. at 7); and . . . all documents received or sent by [HSI] Baltimore Agent John VanWie between March 24, 2025 and June 6, 2025, that the Government has apparently already identified." (Dkt. 186 at 1).

government provide the defense with the memorialization of its collection and methods it promised the Court at the October 31 conference. (Dkt. 206 at 20-21). To ensure that the government is approaching collection in the "business-like manner" the Court expects, (*see* Dkt. 206 at 20), the government's documentation should include, at a minimum, the following:

1. A list of the individuals the government has contacted who may have access to documents and communications that "reflect the government's change in position" regarding the prosecution of Mr. Abrego, including in Main Justice (including the Office of the Deputy Attorney General, the Office of the Attorney General, and the Office of Immigration Litigation), DHS (including the Office of the Secretary of Homeland Security), and the White House (including the Homeland Security Council).

2. A list of the relevant custodians from whom documents and communications have been or will be collected, which should include, at a minimum, those senior officials at DOJ, DHS, and the White House who were involved in deciding to reopen the investigation that led to this case.

3. A detailed explanation of the process of collecting documents and communications from the identified custodians.

   a. Any such collection should include, at a minimum, all responsive documents and communications, whether located on work or personal devices or cloud storage, including, but not limited to, emails, call and meeting notes, text messages, direct messages on social media accounts (e.g., X, Truth Social), and communications on ephemeral messaging applications (e.g., Signal).[2]

      i. With respect to Signal usage, any document collection process should confirm and record the autodelete settings used by any custodians with respect to relevant communications, and what government policies, if any, apply to the communications at issue.

4. An explanation of the process by which the government has conducted its review of collected documents and communications, using a date range between March 12, 2025 and June 6, 2025, applying all search terms relevant to Mr. Abrego.

5. The search terms that the government has applied to identify documents and communications responsive to the categories identified by the Court.

---

[2] Recent public reporting indicates that DHS "has stopped using software that automatically capture[s] text messages and saved trains of communication between officials," and that "the agency began in April to require officials to manually take screenshots of their messages to comply with federal records laws." Minho Kim, "To Preserve Records, Homeland Security Now Relies on Officials to Take Screenshots," *N.Y. Times* (Nov. 6, 2025), https://www.nytimes.com/2025/11/06/us/politics/homeland-security-foia.html. We therefore remind you that the government's discovery obligations here require it to collect those screenshots from DHS officials, and to confirm whether officials likely to possess records relating to the re-opening of the Abrego investigation, including in the Office of the Secretary, complied with DHS's policy requiring them to maintain screenshots of their electronic communications. We note also that, to the extent those screenshots are not text-searchable, that would not be a basis for the government's failure to collect, review, and produce them.

6. For each document produced to the Court for *in camera* review but not turned over to the defense, the production of a document-by-document privilege log identifying each document by custodian, sender and recipient(s), date, and a brief description of its subject matter and the privilege asserted, to allow the defense to assess the government's privilege assertions.

Such documentation, if only provided to the Court and not the defense, would create significant appellate risk. As a rule, the Sixth Circuit has expressed its "strong disapproval of ex parte approaches in criminal cases." *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) (quoting *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992)). *Ex parte* communications "can only be justified and allowed by compelling state interests," *Minsky*, 963 F.2d at 874, and "[t]he [g]overnment bears a heavy burden in showing that the defendant was not prejudiced when his counsel was excluded from these communications." *United States v. Barnwell*, 477 F.3d 844, 851 (6th Cir. 2007). While Mr. Abrego has no objection at this time to the Court's *in camera* privilege review of documents relevant to his vindictive prosecution motion, excluding the defense from communications explaining the government's collection process for those documents—which, unlike the document production itself, the Court has never ordered should occur *in camera* in the first place—would be "a gross breach of the appearance of justice." *Minsky*, 963 F.2d at 874; *see also Barnwell*, 477 F.3d at 851 ("If *ex parte* communications are to be allowed at all, they must continue no further than the extent to which they are absolutely necessary to protect the state's compelling interest.").

And though the government has claimed privilege as a basis to withhold explanation of its collection process from the defense, information about such methods is not, by itself, privileged. *See, e.g.*, *Ruiz-Bueno v. Scott*, No. 12 Civ. 809, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013) ("[T]here is a vast difference between describing, factually, what a party has done to comply with a document request, and revealing discussions between counsel and the client about that process."); *Ferring v. Fera Pharms., LLC*, No. 13 Civ. 4640, 2016 WL 5396620, at *3 (E.D.N.Y. Sept. 27, 2016) (holding that "search terms and list of document production topic areas" are not entitled to work-product privilege where the opposing party "is entitled to know the methodology and manner of the ESI production undertaken by" the producing party). This is particularly true where, as here, the Court has already rejected the government's blanket privilege assertions, necessitating the Court's document-by-document *in camera* review. (*See* Dkt. 185 at 5-7). Those privileges, already rejected for the documents writ large, would even more clearly fail to shield disclosure of the steps the government took to procure them. They certainly cannot serve as a compelling interest to support *ex parte* communications.

Please respond to this letter detailing the government's document collection and review process by **November 14, 2025.** We are available at your convenience to meet and confer regarding your collection process.

Very truly yours,

Sean Hecker