IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

KILMAR ARMANDO ABREGO GARCIA,

*Defendant.*

No. 3:25-cr-115

Judge Waverly D. Crenshaw, Jr.

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT KILMAR ARMANDO ABREGO GARCIA'S
MOTION IN LIMINE TO EXCLUDE PREJUDICIAL EVIDENCE
RELATING TO AN UNCHARGED MASS CASUALTY EVENT,
DRUGS, FIREARMS, AND SEXUAL ABUSE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 1

    I.    Applicable Law .................................................................................................. 1

    II.    Evidence Regarding a Tractor Trailer Accident in Mexico Entirely Unrelated to Mr. Abrego is Unfairly Prejudicial and Not Probative ................................. 2

    III.    Evidence Regarding Drugs is Unfairly Prejudicial and Not Probative ............ 4

        A.    Any Evidence Relevant to Mr. Abrego's Possession or Use of Marijuana Should Be Excluded ................................................................. 4

        B.    Any Evidence Relevant to Mr. Abrego's Alleged Tenuous Connection to a "Convicted Drug Trafficker" Should Be Excluded ........................... 5

        C.    Any Testimony Regarding Marijuana Trafficking During the Alleged Conspiracy Should Be Excluded ............................................................ 6

    IV.    Evidence Regarding Firearms Should be Excluded ........................................ 7

    V.    Evidence Regarding Sexual Abuse is Inadmissible Hearsay, Unfairly Prejudicial and Minimally Probative ................................................................. 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Brubaker v. United States*,
    183 F.2d 894 (6th Cir. 1950) .................................................................................................. 8

*Giordano v. United States*,
    185 F.2d 524 (6th Cir. 1950) .................................................................................................. 8

*United States v. Anderson*,
    No. 19. Cr. 67, 2020 WL 759357 (S.D. Ohio Feb. 14, 2020) ......................................... 9, 10

*United States v. Bonds*,
    12 F.3d 540 (6th Cir. 1993) ..................................................................................................... 2

*United States v. Goliday*,
    145 F. App'x 502 (6th Cir. 2005) ........................................................................................... 8

*United States v. Gonzalez*,
    501 F.3d 630 (6th Cir. 2007) .............................................................................................. 4, 6

*United States v. Haywood*,
    280 F.3d 715 (6th Cir. 2002) .............................................................................................. 5, 7

*United States v. Hazelwood*,
    979 F.3d 398 (6th Cir. 2020) ................................................................................................... 1

*United States v. Johnson*,
    256 F. Supp. 3d 755 (M.D. Tenn. 2017) ................................................................................. 3

*United States v. Jones*,
    945 F.2d 747 (4th Cir. 1991) .................................................................................................. 4

*United States v. Kassir*,
    No. 4 Cr. 356, 2009 WL 976821 (S.D.N.Y. Apr. 9, 2009) ..................................................... 4

*United States v. Lopez-Medina*,
    461 F.3d 724 (6th Cir. 2006) ................................................................................................... 5

*United States v. Newsom*,
    452 F.3d 593 (6th Cir. 2006) ................................................................................................... 2

*United States v. Riley*,
    No. 23 Cr. 139, 2023 WL 7298617 (S.D. Ohio Nov. 6, 2023) ............................................. 10

*United States v. Rios*,
    830 F.3d 403 (6th Cir. 2016) ............................................................................................ 7

*United States v. Smith*,
    70 F.4th 348 (6th Cir. 2023) .............................................................................................. 2

*United States v. Taylor*,
    No. 22 Cr. 137, 2025 WL 1840596 (E.D. Ky. July 3, 2025) ............................................ 10

*United States v. Till*,
    434 F.3d 880 (6th Cir. 2006) ............................................................................................ 7

*United States v. Wheaton*,
    517 F.3d 350 (6th Cir. 2008) ............................................................................................ 8

**STATUTES**

Md. Code § 5-601 ................................................................................................................... 4

8 U.S.C. § 1324 ............................................................................................................... 1, 2, 3

18 U.S.C. § 922 ...................................................................................................................... 3

**FEDERAL RULES**

Fed. R. Evid. 401 ................................................................................................................ 1, 9

Fed. R. Evid. 402 ................................................................................................................... 1

Fed. R. Evid. 403 ........................................................................................................ 2, 10, 10

Fed, R. Evid. 404(b) ..................................................................................................... 4, 6, 8, 9

Fed. R. Evid. 801 ................................................................................................................... 9

# PRELIMINARY STATEMENT

A casual read of the Indictment makes clear that the government intends to put a host of prejudicial evidence, entirely unrelated to the charge of transportation of aliens in violation of 8 U.S.C. § 1324, before the jury to convince them of Mr. Abrego's bad character. Indeed, the Indictment is chock-full of allegations irrelevant to the charged crime (but perhaps included to achieve political purposes), regarding: the distribution of drugs; the transportation of firearms; sexual abuse of the conspiracy's clients; and an uncharged, unrelated tractor trailer accident that killed 50 people. The government is, of course, entitled to present evidence relevant to the charges in the Indictment. But Mr. Abrego should not be required to fend off irrelevant allegations which have little or no probative value and are grossly prejudicial. He therefore asks the Court to exclude prejudicial evidence related to an uncharged mass casualty event, drugs, firearms, and sexual abuse.

# ARGUMENT

I.    **Applicable Law**

Because only relevant evidence is admissible, *see* Fed. R. Evid. 402, a Court must first determine if evidence is relevant with reference to Rule 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401. "In a criminal case, a fact is 'of consequence' if it makes it more or less likely that the defendant committed the charged conduct." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). But even where a fact is relevant, it may not be admissible. Federal Rule of Evidence 403 provides the court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

1

needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice "refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (alteration in original) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "This may occur when the evidence is particularly shocking or inflammatory, or when it otherwise may arouse the jury's hostility or sympathy without regard to the probative value of the evidence." *United States v. Smith*, 70 F.4th 348, 353 (6th Cir. 2023) (cleaned up).

## II. Evidence Regarding a Tractor Trailer Accident in Mexico Entirely Unrelated to Mr. Abrego is Unfairly Prejudicial and Not Probative

The Court should exclude any evidence relating to a tractor trailer accident in Mexico involving CC-6 and no other alleged participants in the charged conspiracy, including Mr. Abrego. (*See* Dkt. 3 ¶ 26).

The Indictment alleges that CC-6 was "involved in the transportation of more than 150 migrants that ended when the tractor trailer carrying them overturned in Mexico, resulting in the deaths of more than 50 migrants and injuring many others." *Id.* CC-6 is charged for this conduct in a separate criminal case in the Southern District of Texas, along with five other individuals, under the provisions of 8 U.S.C. § 1324 relating to bringing aliens into the United States while placing a person's life in jeopardy or resulting in the death of any person.[1] *See* 8 U.S.C. § 1324(a)(1)(A)(i); *id.* § 1324(a)(1)(A)(v)(I); *id.* § 1324(a)(1)(B)(iii); *id.* § 1324(a)(1)(B)(iv). The Indictment here, however, has literally nothing to do with the tractor trailer tragedy: no provisions of 8 U.S.C. § 1324 involving transportation outside of the United States—let alone loss of life or risk thereof—are charged here. The government has not alleged that Mr. Abrego, nor any of the other CCs apart from CC-6, had any role in that tragedy.

---

[1] Mr. Abrego does not cite to that separate case here in order to avoid revealing the identity of CC-6.

Should the government seeks to admit any evidence of this tragedy, it would amount to a blatant attempt to put wildly prejudicial evidence before the jury. This Court has addressed a similar situation where an uncharged murder was alleged in an indictment that charged possession of a firearm under 18 U.S.C. § 922(g)(1). *See United States v. Johnson*, 256 F. Supp. 3d 755, 761-62 (M.D. Tenn. 2017). The Court stated in *Johnson* that "[t]hrowing an uncharged murder into the mix…adds a whole new level of prejudice, which can only serve to inflame the passions and/or prejudices of the jury," and redacted the language referencing the murder from the indictment to "prevent undue and seemingly unnecessary prejudice." *Id.*

That logic applies even more forcefully here. The uncharged mass casualty event in this case is even more remote than the uncharged murder in *Johnson*. At least the firearm purportedly possessed in that case was alleged to have been the weapon used in the uncharged murder. *Id.* Mr. Abrego is not alleged to have transported any of the victims of the tractor trailer accident; none of the CCs were. Instead, CC-6 was somehow "involved" in the tractor trailer accident in Mexico, (*see* Dkt. 3 ¶ 26), and also, apparently unrelatedly, supplied other aliens from outside of the United States to CC-1's transportation business—transportation that is only charged to have occurred *inside* the United States. (*See* Dkt. ¶¶ 11, 30, 32); *see also* 8 U.S.C. § 1324(a)(1)(A)(ii).[2] To the extent evidence related to the tractor trailer accident is even minimally probative of CC-6's involvement in the charged conspiracy here, the "value" of that information "is undercut by the availability of other, less prejudicial evidence that makes the same point." *Johnson*, 256 F. Supp.

---

[2] Although the Court in *Johnson* left open the possibility that evidence related to an uncharged killing might be more probative than prejudicial "in a case where the charge…involve[s] allegations of conspiracy or racketeering," *Johnson*, 256 F. Supp. 3d at 761-62, the conspiracy Mr. Abrego is charged with participating in is not the charged conspiracy that led to the tractor trailer accident. That conspiracy is charged in the Southern District of Texas. The government, of course, cannot argue that the tractor trailer accident is relevant simply because it has charged a different, less serious crime against Mr. Abrego here that is somehow tangentially related to a participant in the Texas conspiracy.

3

3d at 762 (quoting *United States v. Kassir*, No. 4 Cr. 356, 2009 WL 976821, *7 (S.D.N.Y. Apr. 9, 2009)). CC-6's involvement in the conspiracy can be proven in numerous other ways, no less than through the testimony of CC-1 himself. (*See, e.g.*, P000352). Such evidence would be far less prejudicial than an uncharged mass casualty event lacking any relation to Mr. Abrego whatsoever.

**III.     Evidence Regarding Drugs is Unfairly Prejudicial and Not Probative**

We understand that the government intends to offer various evidence linking Mr. Abrego to drugs, notwithstanding that it did not charge him with any drug offenses. Not only is some of this evidence required to be noticed as 404(b), which it was not, it also lacks probative value when weighed against its significant prejudice. As a result, references to drugs found in Mr. Abrego's vehicle unrelated to the charged crime, any links between Mr. Abrego and someone who the government describes as a "known drug trafficker," or references to Mr. Abrego smuggling drugs more generally, should be excluded.

**A.     Any Evidence Relevant to Mr. Abrego's Possession or Use of Marijuana Should Be Excluded**

First, any references to "trace amounts of suspected marijuana and paraphernalia" allegedly found in Mr. Abrego's vehicle when he was arrested by ICE and unlawfully deported in March 2025 should be excluded. (*See* P000625). First, such evidence is clearly 404(b) evidence that the government should have noticed if it sought to admit it; its failure to do so renders it inadmissible. *United States v. Gonzalez*, 501 F.3d 630, 638 (6th Cir. 2007) ("[T]he remedy for an unexcused violation of Rule 404(b)'s notice requirement is exclusion of the evidence."). But even assuming that the government intends to prove that Mr. Abrego transported drugs during the conspiracy, "[t]race amounts" of marijuana—which, in any case, are legal to possess in Maryland, *see* Md. Code § 5-601—are plainly associated with use, not distribution. *See United States v. Jones*, 945 F.2d 747 (4th Cir. 1991) (overturning a conviction for distribution based on defendant's possession

4

of drug paraphernalia and trace amounts of cocaine). And such evidence could "have a powerful and prejudicial impact," *United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002) (cleaned up), especially in a state where cannabis possession remains a crime. Any allegations surrounding Mr. Abrego's possession of personal-use quantities of marijuana are not probative even of drug distribution, let alone transportation of humans, the crime the government has charged.[3]

> B. Any Evidence Relevant to Mr. Abrego's Alleged Tenuous Connection to a "Convicted Drug Trafficker" Should Be Excluded

Second, references to an IRS form found in the abandoned vehicle of a person who resided at Mr. Abrego's former address in Temple Hills, Maryland should similarly be excluded. The government's discovery contains a reference to a "previously convicted drug trafficker" who lived at Mr. Abrego's address after Mr. Abrego had moved away. (*See* P000014). Investigators apparently searched the person's vehicle and found an IRS form addressed to Mr. Abrego. *Id.* The existence of a prior tenant's mail in the belongings of a current tenant—a common occurrence for anyone who lives in a rental—is not remotely probative of any drug trafficking undertaken by Mr. Abrego (which, again, is not the crime charged here). Referencing this abandoned mail at trial would prejudice Mr. Abrego by drawing a tenuous connection to this person, and his drug convictions, in a bare attempt to allude to Mr. Abrego's involvement in those activities without any evidence to support it. *See United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006) (district court abused its discretion by admitting evidence of drug conviction of acquaintance of defendant). Such "guilt by association" evidence—assuming the facts here even rise to the level of "association"— should similarly be excluded.

---

[3] For these same reasons, the Court should also exclude, to the extent the government seeks to admit it, any evidence of marijuana found at the scene of Mr. Abrego's 2019 arrest. (*See* P000397).

### C. Any Testimony Regarding Marijuana Trafficking During the Alleged Conspiracy Should Be Excluded

Finally, the government's cooperators have made vague, unsupported statements that Mr. Abrego was selling drugs. CC-1, after four prior proffers during which he made no mention whatsoever of Mr. Abrego using or selling drugs, suddenly purported to remember a one-off occasion when he observed Mr. Abrego allegedly transporting marijuana in Houston and "confronted" him about it. (*See* P000352). CC-2, in his first interview, said that he "did not like to be around [Mr. Abrego] because he believed he was involved in narcotics smuggling based on individuals he would associate with," (*see* P000343), but in his second interview, CC-2 expanded his observations to include transporting drugs during the alleged scheme (even though CC-1 never stated he observed anything similar). (*See* P000358). CC-3 contradicted both of them, saying that she never heard drugs being discussed and did not see any drugs. (*See* P000032). And in the central incident in this case—the November 30, 2022 traffic stop—Trooper Brawner brought his dog around the SUV to sniff for drugs, and found none.

The CCs' statements regarding drugs are minimally probative and highly prejudicial. They should therefore be excluded. First, the CCs contradicted themselves and each other as to whether they ever personally witnessed Mr. Abrego transporting drugs, whether their observation had any relationship to the charged conspiracy, or whether they merely believe Mr. Abrego was transporting drugs because he knew others who did so.[4] Only CC-2 purported to observe Mr. Abrego transporting drugs during the scheme, and only formed that opinion during his second interview; CC-1 purports to confront Mr. Abrego for transporting drugs in Houston, and not as a part of the scheme; CC-3 never saw or heard about any drugs at all. Such inconsistent testimony

---

[4] To the extent that the CCs describe Mr. Abrego trafficking drugs outside of the conspiracy—such as CC-1's observation of Mr. Abrego in Houston and the ensuing "confrontation"—that is unnoticed 404(b) evidence, and thus inadmissible. *Gonzalez*, 501 F.3d at 638.

is minimally probative at best, especially considering that drug distribution is not an element of the crime charged. As discussed further below, this is unlike a case in which a firearm-related offense is also charged, and where evidence consistent with drug distribution might be relevant to show a motive for firearm possession. *See, e.g.*, *United States v. Till*, 434 F.3d 880, 883-86 (6th Cir. 2006). There is no similar relationship between narcotics trafficking and the transportation of human beings: In fact, as CC-1, the alleged leader of the scheme, explained, it is antithetical to the crime. In his final proffer interview, CC-1 stated that he "instructed his drivers to . . . not transport narcotics" "out of fear of the penalties of being caught by law enforcement." (*See* P000351). And "branding" Mr. Abrego a drug trafficker would "unquestionably ha[ve] a powerful and prejudicial impact," *Haywood*, 280 F.3d at 723; *see also United States v. Rios*, 830 F.3d 403, 422 (6th Cir. 2016) (holding that a depiction of firearms and drugs on a tattoo was "improperly admitted" because "[t]he potential for unfair prejudice in the form of a propensity inference [was]…quite high").

Accordingly, evidence related to Mr. Abrego's possession or use of drugs, any tangential connection to a "convicted drug trafficker," and uncorroborated, conflicting and irreconcilable testimony about marijuana trafficking during the conspiracy at issue should be excluded.

## IV.  Evidence Regarding Firearms Should Be Excluded

Similarly, though the government did not charge any crime related to firearm possession or transportation, it intends to introduce inconsistent testimony, through its cooperators, linking Mr. Abrego to the smuggling of firearms. As with the government's drug evidence, any evidence that Mr. Abrego ever smuggled firearms is paltry at best. And given the prejudice and confusion that could result from the jury incorrectly believing that Mr. Abrego was charged with any crime related to firearms, such evidence should be excluded.

7

Just like the CCs' stories regarding Mr. Abrego and drugs, the CCs' claims have also shifted when it comes to Mr. Abrego and alleged guns. During his May 7 interview, CC-1 stated that both he and Mr. Abrego liked guns but would not carry them on trips, (*see* P000349), but on May 15, CC-1 suddenly remembered that he "gave or sold one or two pistols" to Mr. Abrego who then carried them on one of his trips to Maryland. (*See* P000351). That same day, CC-2 told a far more fantastical story, claiming that Mr. Abrego had purchased five firearms on three occasions and transported them to Maryland. (*See* P000358). On November 30, 2022, THP officers found no firearms during the stop, which lasted more than an hour.

In the Sixth Circuit, "when a defendant is not charged with a firearms violation and a firearm is not relevant to the crimes charged, a district court abuses its discretion in admitting the firearm." *United States v. Goliday*, 145 F. App'x 502, 506 (6th Cir. 2005) (citing *Brubaker v. United States*, 183 F.2d 894, 898 (6th Cir. 1950)). While courts in this Circuit have consistently held that firearms are relevant to narcotics distribution conspiracies, they have consistently ordered firearms excluded as irrelevant to the charged crime when something else is being smuggled. *See Brubaker*, 183 F.2d at 898 (stolen car); *Giordano v. United States*, 185 F.2d 524 (6th Cir. 1950) (stolen furs). There is no indication that guns are "tools of the . . . trade" in the transportation of aliens in the same way that courts have held them to be so in narcotics conspiracies, *United States v. Wheaton*, 517 F.3d 350, 364 (6th Cir. 2008); in fact, CC-1, in the May 7 proffer, stated the opposite. (*See* P000349 ("CC-1 stated he and [Mr. Abrego] both liked guns but would not carry them when transporting illegal aliens.")).

8

## V. Evidence Regarding Sexual Abuse[5] Is Inadmissible Hearsay, Unfairly Prejudicial and Minimally Probative

Despite not having mentioned allegations of abuse in prior proffers, on May 15—during their interviews on the same day at the USAO in Houston—both CC-1 and CC-2 claimed they had heard from CC-6 about Mr. Abrego "acting inappropriately toward female clients." (P000353; *see also* P000358). This evidence should be excluded both because it is inadmissible and untrustworthy hearsay, and because the danger of unfair prejudice substantially outweighs any minimal probative value.

These allegations contain layers of hearsay: From the female clients to CC-6; from CC-6 to CC-1 and CC-2; and then finally from CC-1 and CC-2 to the agent interviewing them on May 15. The first layer—between unnamed female clients and CC-6—renders this inadmissible hearsay. As the government notes in its 404(b) notice, it is seeking to admit such evidence for its truth. (Dkt. 223 at 2-3). According to the government, only if Mr. Abrego actually did the things he was accused of would his acts "affect[] the financial bottom line of the conspiracy and cause[] a divide between the defendant and members of the conspiracy because of the potential fallout." *Id.* And any such statement between an unnamed female client and CC-6 is not subject to a hearsay exception; the government has already argued in this case that any such female clients would have been victims, not co-conspirators, and thus their statements would not be subject to Rule 801(d)(2). (*See, e.g.*, Dkt. 70 at 19).

Even if admissible under a hearsay exception, the prejudice arising out of evidence of abuse of female aliens substantially outweighs its minimal probative value. *United States v. Anderson*, No. 19. Cr. 67, 2020 WL 759357 (S.D. Ohio Feb. 14, 2020), provides a helpful analogy here. The

---

[5] Mr. Abrego does not address the two pieces of evidence—the domestic violence petitions and messages with Witness-1—the government noticed as 404(b) evidence. Mr. Abrego will address the government's arguments regarding that evidence in its response due on December 4.

defendant in *Anderson* was charged with illegally dispensing controlled substances and healthcare fraud, but the government sought to introduce evidence regarding sexual activity with patients during visits. *Id.* at *1. The court explained that even if the evidence could theoretically have a "slight probative value" under Rule 401—the government argued that it showed that Anderson "acted outside the course of usual professional practice," just as he did as a prescriber—it should be excluded under Rule 403, because the "risk of prejudice" arising from the jury hearing about "medically unnecessary examinations of patients' genitalia" was too great. *Id.* at *1-2.

So too here. Like in *Anderson*, Mr. Abrego is charged with no crime that includes sexual abuse as an element. *See United States v. Riley*, No. 23 Cr. 139, 2023 WL 7298617 (S.D. Ohio Nov. 6, 2023) (excluding the fact that the gun charge was precipitated by a 911 domestic violence call in part because the defendant was "not before this Court on charges of domestic violence"). According to the government, the only probative value evidence of any such abuse would have is its effect on the transportation conspiracy's bottom line. (Dkt. 223 at 2-3) And just like in *Anderson*, that probative value is minimal at best compared to the risk of prejudice to the jury hearing—third or fourth-hand, no less—about unproven instances of unspecified sexual abuse against unknown persons. *See United States v. Taylor*, No. 22 Cr. 137, 2025 WL 1840596, at *2 (E.D. Ky. July 3, 2025) (excluding a prior domestic violence charge because "Rule 403 cautions against its use" since "[a]ny probative value of that information is substantially outweighed by the danger of unfair prejudice of revealing the nature of this (highly inflammatory) charge to the jury").[6]

---

[6] It bears noting that the government was likely under significant pressure to corroborate its claims, made in the press prior to Mr. Abrego's return from El Salvador, that he was a "violent illegal alien who abuses women and children." (*See* Dkt. 69 at 4). But the political pressures the government inflicted upon itself do not render such evidence admissible.

10

Case 3:25-cr-00115    Document 233    Filed 11/24/25    Page 14 of 16 PageID #: 4334

**CONCLUSION**

Mr. Abrego respectfully requests that the Court preclude the government from introducing evidence related to an uncharged mass casualty event, drugs, guns, and sexual abuse.

Dated: November 24, 2025
      New York, New York

Respectfully submitted,

/s/ Sean Hecker
Sean Hecker*
Jenna M. Dabbs*
David Patton*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jdabbs@heckerfink.com
dpatton@heckerfink.com

* admitted *pro hac vice*

Rascoe Dean (No. 034209)
SHERRARD ROE VOIGT & HARBISON PLLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
Telephone: (615) 742-4200
Fax: (615) 742-4539
rdean@srvhlaw.com

*Counsel for Defendant Kilmar Armando Abrego Garcia*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Acting United States Attorney, Robert E. McGuire, 719 Church Street, Suite 3300, Nashville, Tennessee 37203; Assistant United States Attorney, Jason Harley, 210 Park Avenue, Suite 400, Oklahoma City, Oklahoma 73102.

/s/ Sean Hecker