IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:25-CR-115 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| KILMAR ARMANDO ABREGO GARCIA | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

On the morning of December 12, 2025, the Defendant stood on the steps of a federal government building in Baltimore, attacked the Government and proclaimed his innocence during a rally in his honor covered by national news outlets.[1] He was followed by an activist from CASA, an advocacy group for "Black, Latino/a/e, Afro-descendent, Indigenous, and Immigrant communities,"[2] who, while standing next to the Defendant, exalted his assembled sympathizers as "freedom fighters" and lauded them for continuing the fight for "freedom and justice."[3] She continued, saying, "We know this Administration continues to oppress our working class and immigrant families, and they have, time and time again, continued to retaliate against people who stand up and demand their constitutional rights, their due process as Kilmar has . . . This hate, this Administration, will not win. Love will win." *Id.* And a United States Congressman present at Mr. Abrego Garcia's rally called the "The Trump Administration's behavior . . . nothing less than shameful," saying that the Defendant was "kidnapped," and while putting his arm around the Defendant, condemned the Government for bringing "fake charges down in Tennessee." *Id.* The

---

[1] *Kilmar Abrego-Garcia and Advocates Speak to Reporters*, C-SPAN (Dec. 12, 2025), https://www.c-span.org/program/news-conference/kilmar-abrego-garcia-and-advocates-speak-to-reporters/670405.

[2] "About," *CASA* (accessed Dec. 29, 2025), https://wearecasa.org/about.

[3] *Kilmar Abrego-Garcia and Advocates Speak to Reporters*, *supra* note 1.

1

Congressman then celebrated the Court, saying that "a judge stood up in Tennessee and said he should be here," before predicting that this Court would dismiss the present Indictment. *Id.*

The Defendant then gave his own public remarks, speaking through the CASA activist who translated his remarks for the crowd and press pool. He vowed that he "will continue to fight and stand firm against all of the injustices this government has done upon" him and proclaimed the holiness of his cause: "I want to tell everybody who is also suffering family separation, God is with you. This is a process. Keep fighting . . . Know that this is something called injustice and you will win. . . . I believe that this injustice will come to an end. Keep fighting."[4]

The Defendant's remarks were covered by national news outlets.[5] His remarks were also reported on locally in the Nashville area where they could more easily be seen by potential jurors.[6] And his immigration attorneys conducted interviews with national news outlets after the Defendant's release from immigration custody.[7] One of those immigration attorneys, Mr. Sandoval-Moshenberg, went so far as to exhort the crowd that the "Trump Administration has tried to use this case to stand for the principle that they get to do whatever they want whenever they want . . . And when the government breaks laws, they need to be held to consequences." *Id.*

---

[4] *Id.*

[5] Adam Thompson, *Kilmar Abrego Garcia speaks at Baltimore rally after release from ICE custody: "Keep fighting,"* CBS News (Dec. 12, 2025), https://www.cbsnews.com/baltimore/news/abrego-garcia-maryland-baltimore-ice-released/.

[6] Michael Kunzelman, *Federal judge issues order to prohibit immigration officials from detaining Kilmar Abrego Garcia*, WSMV Channel 4 (Dec. 12, 2025), https://www.wsmv.com/2025/12/12/federal-judge-issues-order-prohibit-immigration-officials-detaining-kilmar-abrego-garcia/.

[7] *Following his release, Kilmar Abrego Garcia's lawyer shares what's next for the case*, National Public Radio (Dec. 12, 2025), https://www.npr.org/2025/12/12/nx-s1-5640887/following-his-release-kilmar-abrego-garcias-lawyer-shares-whats-next-for-the-case.

Even more, the Defendant's attorneys in *this* case have played fast and loose with the rules. Just ten days ago, defense counsel publicly filed a brief that coincidentally failed to redact an out-of-context quote from this Court's sealed opinion that bolstered its public narrative. Doc. No. 272 (Dec. 19, 2025). It filed a corrected version the next day, Doc. No. 275 (Dec. 20, 2025), but inexplicably did not move to strike its "accidental" filing until two days later, Doc. No. 276 (Dec. 22, 2025), conveniently allowing the Defendant's narrative-shaping publication of the sealed statements to be cached and spread widely on social media.[8]

Against this backdrop, the Defendant now, unironically, moves for sanctions against the Government for statements made by a Customs and Border Protection (CBP) agent who is not involved in the criminal case, either as a witness or an attorney, whose agency is not involved in the case, and who works in a completely unrelated jurisdiction.[9] The Defendant's public, extrajudicial statements, and those of his lawyers and advocates, have a far greater potential to "materially prejudice" a trial and "interfere with a fair trial" than comments by a CBP agent in a faraway district. The Defendant's statements, amplified by federal lawmakers, have far greater reach than two cable-show interviews by someone who, though a government employee, has no role in this case. By casting himself as the victim of injustice that he intends to "keep fighting" while his advocates claim that the present Indictment are "false charges" and are "shameful," the Defendant would do well to keep his own hands clean before claiming that the Government's are somehow dirtied. The defense now accuses the Government of violating the Court's order regarding extrajudicial statements and the Local Rule while the Defendant and his advocates are violating them.

---

[8] *E.g.*, Roger Parloff (@rparloff), X (Dec. 22, 2025, at 02:43 CT), https://perma.cc/X255-PH82.

[9] CBP was not involved in the investigation or prosecution of this matter whatsoever.

Neither of Agent Bovino's statements about which the Defendant now complains even mentioned the Defendant by name. The first statement described in the Defendant's Motion lasted all of about thirty seconds as a part of a larger three-and-a-half-minute story covering other immigration enforcement initiatives. Doc. No. 271 at 5 n.5. This statement references what the speaker believed was a larger critique of the immigration justice system, did not reference the Defendant by name, and ultimately stated that if the Defendant was ordered deported again, he would be deported again, which is legally accurate. Two days later, the same agent made largely similar comments, critiquing the immigration justice system, reiterated that the Defendant would be deported again if he was ordered deported and, again, did not mention the Defendant by name.[10] And, in both instances, Mr. Bovino made his remarks *only after* the Defendant, his lawyers in his civil case, and activists working on his behalf made unduly prejudicial statements at his rally on the steps of the ICE office in Baltimore.

## ARGUMENT

Sanctions are not warranted here because Local Criminal Rule 2.01 does not apply to Mr. Bovino as a non-lawyer in a governmental agency that is not litigating this matter. But, even if the rule did apply to Mr. Bovino, his statements fall squarely within subsection (a)(3)'s carveout for statements necessary to protect a client from substantial undue prejudice. And a holding to the contrary would raise grave First Amendment and separation-of-powers concerns by punishing Mr. Bovino for the content of his speech, creating prior constraints, and muzzling an entire agency that does not even have lawyers appearing in this case.

---

[10] In both instances, the Defendant's name was depicted on the screen while Mr. Bovino spoke. But it goes without saying that Mr. Bovino does not have editorial control of news chyrons.

**I.      Local Criminal Rule 2.01 does not apply to Mr. Bovino.**

By its own terms, Local Criminal Rule 2.01 does not apply to Mr. Bovino because he is not a "partner or employee" of a "government agency or office" with which lawyers involved in this litigation are associated. L. Crim. R. 2.01(d). Local Criminal Rule 2.01 limits extrajudicial statements by a "lawyer who is participating or has participated in the investigation or litigation." L. Crim. R. 2.01(a)(1). Subsection (a)(4) extends this restriction to "the government agencies or offices" and "the partners and employees . . . with which the lawyer" described in subsection (a)(1) "is associated." L. Crim. R. 2.01(a)(4).

But the only Executive Branch lawyers who have participated in this litigation or investigation are in the Department of Justice (DOJ). No lawyers at Mr. Bovino's agency, CBP, or its parent agency, the Department of Homeland Security (DHS), have appeared in this litigation.[11] Nor did they participate in the investigation led by the U.S. Attorney's Office in the Middle District of Tennessee.[12] Because Mr. Bovino is not a DOJ employee, the local rule does not apply to him on its own terms.

---

[11] At most, DHS lawyers' indirect participation in this litigation is limited to their compliance with discovery and private interagency deliberations. Of course, Mr. Bovino was not involved in either of these limited functions. And, to the extent that an overbroad interpretation of the rule would sweep DHS into its purview, such an interpretation would also sweep the Defendant's immigration lawyers and their law firms into its purview.

[12] Neither CBP nor the vast majority of agencies under DHS participated in the investigation. Importantly, Homeland Security Investigations (HSI) conducts investigations into crimes, as here, relating to immigration and human smuggling. Mr. Bovino does not work for HSI. In a department as large as DHS, the actions of one of its agencies should not be imputed to the entire department.

5

## II. Even if Local Criminal Rule 2.01 applies, Mr. Bovino's remarks fall within its exception for statements made to protect a client from substantial undue prejudice.

If Local Criminal Rule 2.01 reaches Mr. Bovino's speech, so too must the well-established caveat that a lawyer may make statements necessary to "protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." L. Crim. R. 2.01(a)(3). As detailed above, the Defendant, his attorneys, sympathetic activists, and even Members of Congress have repeatedly made public statements that eclipse a mere threat of substantial undue prejudice. In the episode described above the Defendant was present for the statements made by others, but for his benefit, at a rally before national news media; those speaker's comments were echoes of his own extrajudicial comments. Platitudes about the Defendant's character and vitriol about the Government's conduct are widespread in the news and social media because of these extrajudicial comments. And the Defendant's defense attorneys *in this very case* contributed to the anti-prosecution prejudice by disclosing this Court's then-sealed comments in a public filing and not bothering to ask the Court to step in until the leaks went viral.

There can be no serious suggestion that the Executive Branch is not entitled to respond to the Defendant's campaigning. Local Criminal Rule 2.01(a)(3) explicitly permits statements necessary to "protect a client"—here, the United States of America and its People—from conduct like the Defendant's and his advocates' that creates a "substantial undue prejudicial effect" in an ongoing proceeding. As the comments to the model rule on which Local Criminal Rule 2.01 is based explain, "When prejudicial statements have been publicly made by others, responsive

statements may have the salutary effect of lessening any resulting adverse impact on the adjudicative proceeding." Model Rules of Pro. Conduct r. 3.6 cmt. 7 (A.B.A. 1983).[13]

Furthermore, Mr. Bovino's remarks are meek compared to the extrajudicial statements made by the Defendant and his lawyers and sympathizers about this prosecution. They have repeatedly made callous remarks about "kidnapping" and "fake charges" and the Government "breaking laws." *Supra* pp. 1–4. They made these statements in the Defendant's presence and for his intended benefit, even holding his arm as they made them before cameras. There can be no doubt that the speakers were acting as the Defendant's agents in communicating the same ideas that he, himself, later personally expressed. By contrast, Mr. Bovino's comments, which do not even refer to the Defendant by name and concern a case neither he nor his agency are a part of, pale in comparison to these wild assertions.

### III. Extending Local Criminal Rule 2.01 to Mr. Bovino would raise grave constitutional concerns.

Extending the *local* criminal rule so broadly as to apply to a non-lawyer employee of a different agency in a faraway district would raise severe First Amendment and separation-of-powers concerns. While the application of the trial-publicity rule limited to attorneys may be appropriate under certain conditions, the extension of that rule to Mr. Bovino would violate Mr. Bovino's First Amendment rights and create an unconstitutional prior restraint on others' speech.[14] It would also encroach on the separation of powers by muzzling Executive Branch officials.

---

[13] Attempting to apply the "reasonable lawyer" standard to a non-lawyer's speech emphasizes just one problem caused by hamfisting non-lawyers' speech into a rule of professional conduct for lawyers.

[14] To the extent Mr. Bovino's speech is regulable government speech, the Executive Branch may establish restrictions on it. But the Judicial Branch—which, unlike the Executive Branch, is not politically accountable to the electorate—may not direct Executive Branch speech.

Local Criminal Rule 2.01 is a content-based restraint on speech because it "applies to particular speech because of the topic discussed or the idea or message expressed."[15] *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted); *see also Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (citing seven cases)). And strict scrutiny applies to content-based restrictions. *Reed*, 576 U.S. at 163–64. A narrow exception exists when rules of professional conduct are applied to attorneys because "courts have historically regulated admission to the practice of law" and "[m]embership in the bar is a privilege burdened with conditions." *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066 (1991) (quoting *In re Rouss*, 221 N.Y. 81, 84 (1917) (Cardozo, J.)). In those cases, courts balance the "First Amendment rights of attorneys in pending cases" and the state's interests in fair trials while requiring viewpoint neutrality and permitting only "narrow and necessary limitations on lawyers' speech." *Id.* at 1075. But that exception does not apply to Mr. Bovino because he is not a lawyer and not subject to the conditions of bar membership.[16]

Accordingly, strict scrutiny would apply if the Court extended Local Criminal Rule 2.01 to apply to Mr. Bovino. And strict scrutiny is almost always "fatal in fact" and "leaves few survivors." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 485 (2025); *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 454 (2002) (Souter, J., dissenting). To survive strict scrutiny, the Court would be required to prove that "the restriction furthers a compelling interest and is narrowly

---

[15] Disparately applying the trial-publicity rule to Mr. Bovino despite the prejudicial publicity in favor of the Defendant and caused by the Defendant and others would likely amount to viewpoint-based restraint.

[16] Nonetheless, expanding the rule to apply to Mr. Bovino would violate that standard because doing so would not be a "narrow and necessary limitation[] on lawyers' speech."

tailored to achieve that interest." *Reed*, 576 U.S. at 171 (quoting *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 563 U.S. 721, 734 (2011)). This the Court could not do.

Extending the rule of professional conduct to a non-lawyer would not further a compelling interest in a narrowly tailored manner. Indeed, the trial-publicity rule is premised on the notion that "[b]ecause lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Gentile*, 501 U.S. at 1074 (citations omitted). Mr. Bovino has no such access or authority. And this end is not served by broadening the rule to prevent a non-lawyer—especially one who is not in the agency conducting the litigation and who does not work in the jurisdictions implicated in this proceeding—from making public comments. Even more, plenty of less restrictive means are available. For example, the Court could evaluate in voir dire whether prospective jurors have been influenced by the myriad inflammatory public statements made by the Defendant and his lawyers, or the isolated remarks made by Mr. Bovino. The Court could also issue jury instructions limiting any reliance on such statements. Therefore, the Court cannot broaden Local Criminal Rule 2.01 to apply to Mr. Bovino without creating an unconstitutional prior restraint that is not narrowly tailored and does not use the least restrictive means available.

Furthermore, the extension of Local Criminal Rule 2.01 to non-lawyers in distant jurisdictions who are not even employees of the agency that is litigating creates an impermissible prior restraint.[17] The term "prior restraint" encompasses "judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur."

---

[17] For the same reasons discussed here, the Court's October 27, 2025, Order (Doc. No. 183) itself creates an unconstitutional prior restraint to the extent it prevents DHS employees who are not attorneys and who have no relationship whatsoever to this case from making public statements.

9

*Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting Melville B. Nimmer, Nimmer on Freedom of Speech § 4.03, at 4–14 (1984)); *see Gentile*, 501 U.S. at 1076 (describing an analogous trial-publicity rule as a "restraint on speech"). And because prior restraints are "the most serious and the least tolerable infringement of First Amendment rights," they are presumptively unconstitutional. *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 559 (1976); *accord. Carroll v. Princess Anne*, 393 U.S. 175, 181 (1968) ("[A] system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Freedman v. Maryland*, 380 U.S. 51, 57 (1965)). This presumption can be overcome only by surviving strict scrutiny. *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008). And, for the reasons discussed above, such a broad interpretation of the rule could not survive strict scrutiny.

And not only would sanctions violate Mr. Bovino's First Amendment rights, so too would they intrude on the separation of powers. An expansive reading of Local Criminal Rule 2.01 as described in the Court's October 27, 2025, Order purports to silence two Executive Branch agencies and several hundred thousand Government employees. The vast majority of these employees are not involved in this litigation. Gagging those employees and the DHS would impair the Executive Branch's obligation to speak on matters of public concern and violate the separation of powers. And, as another court recently explained, a district court may not set itself up as the "supervisor of Chief Bovino's activities." *In re Noem*, No. 25-2936, slip op. at 2 (7th Cir. Oct. 31, 2025). In this instance, his activities demand no supervision because, even if the Local Rule applied to him, he has not violated it.

\*     \*     \*

For these reasons, the Defendant's motion for sanctions should be denied.

Respectfully Submitted,

BRADEN BOUCEK
United States Attorney

*/s/ Robert E. McGuire*
ROBERT E. McGUIRE
First Assistant U.S. Attorney
719 Church Street, Suite 3300
Nashville, TN 37203